IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

MICHAEL LEATHERS,                    )
                                     )
                  Plaintiff,         )
                                     )
         v.                          )          Case No. 08-1213-WEB
                                     )
RONALD LEATHERS,                     )
                                     )
         Defendant /Cross Defendant, )
                                     )
THERESA LEATHERS,                    )
                                     )
         Defendant / Cross Claimant, )
                                     )
JAMES HOLDEN, Trustee of the Dirt    )
Cheap Mine Trust,                    )
                                     )
         Defendant / Cross Defendant. )

MEMORANDUM AND ORDER

Before the court is a Motion for Partial Summary Judgment (Doc. 49) by Defendant

Theresa Leathers (herein after Theresa), Motion for Summary Judgment (Doc. 53) by Plaintiff

Michael Leathers (herein after Michael), and Motion for Summary Judgment Parts 1 and 2 (Doc.

55) by Defendant Ronald Leathers (herein after Ronald) and James Holden, trustee of the Dirt

Cheap Mine Trust.  The Plaintiff has also requested oral argument on the summary judgment

motion.

I.  History of the Case

The Plaintiff, Michael Leathers, filed three separate actions in Haskell County, Kansas

District Court.  The petitioner requested quiet title to real estate located in Haskell County,

Kansas.  Chesapeake Operating, Inc., Oxy USA, Inc., Anadarko Petroleum Company, L.P.,

1

Pioneer National Resources, USA, Inc., Merit Energy Company, and the Internal Revenue Service were all named as parties.  The United States was named as a defendant as they have filed liens with the oil and gas companies, alleging Ronald has unpaid taxes.  The case was removed to Federal Court on July 16, 2008.  On November 18, 2008, the court granted the parties' joint motion for separate trials.  The court ruled that the case should be bifurcated, and the quiet title matter as well as the  counterclaims filed by Defendants Ronald Leathers and James Holden, trustee of the Dirt Cheap Mine Trust, should be tried first.  Following disposition of those issues, all remaining issues, including accounting actions brought against defendant oil and gas operation companies and income tax lien and levy upon real and personal property, will be addressed.

II.  Facts

For the purposes of this Order, the following facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to the nonmoving party.

1.  Louise Florence Leathers had two children, Michael Leathers and Ronald Leathers. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

2.  Prior to December 29, 1973, Louise Leathers owned the following real estate in Haskell County, Kansas: Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. A, General Warranty Deed).

3.  On December 29, 1973, Louise Leathers and her husband, Roy Leathers, conveyed the surface estate of Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven

(11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M.

in Haskell County, Kansas, into a general partnership named Leathers Land Company.  (Plaintiff

Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. A, General Warranty Deed).

4.  Louise Leathers and Roy Leathers reserved ownership of the mineral interests

appurtenant to the land transferred to the Leathers Land Company.  (Plaintiff Exh. 1, Affidavit of

Michael Leathers; Plaintiff Exh. A, General Warranty Deed).

5.  The Leathers Land Company was a partnership agreement entered into between

Louise Florence Leathers and her two children, Michael Leathers and Ronald Leathers.

(Plaintiff Exh. B, Partnership Agreement of Leathers Land Company).

6.  Louise Leathers died on April 2, 1991.  (Plaintiff's Exh. 1, Affidavit of Michael

Leathers).

7.  At the time of her death, Louise Leathers owned the mineral interests appurtenant to

Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in

Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell

County, Kansas.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. C, Partial

Journal Entry of Final Settlement; Plaintiff Exh. D, Journal Entry of Final Distribution of

Estate).

8.  Louise Leathers' will was admitted to probate in the District Court of Pottawatomie

County, Kansas on July 9, 1991.  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

9.  Michael Leathers and Ronald Leathers were co-executors and beneficiaries of the

estate.  The brothers were ordered to attend mediation in an attempt to settle the estate.  (Plaintiff

Exh. 1, Affidavit of Michael Leathers).

10.  A settlement was reached, and Michael Leathers sued Ronald Leathers to enforce the terms of a settlement agreement.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; <u>In the Matter of the Estate of Leathers</u>, 19 Kan.App.2d 803, 876 P.2d 619 (1994)).

11.  The mineral interests appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas were distributed to Michael Leathers and Ronald Leathers, each receiving equal shares.  (Plaintiff Exh. D, Journal Entry of Final Distribution of Estate).

12.  After the death of Louise Leathers, Michael Leathers and Ronald Leathers each owned 50% of Leathers Land Company, which owned 100% of the surface estate of Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. B, Partnership Agreement; Plaintiff Exh. C, Partial Journal Entry of Final Settlement).

13.  On January 2, 1996, Michael Leathers invoked a mutual buy-out provision of the Leathers Land Company Partnership Agreement and purchased Ronald Leathers' share of the assets of the Leathers Land Company.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. B, Partnership Agreement).

14.  Michael Leather filed suit against Ronald Leathers in Pottawatomie County, Kansas, to enforce the partnership buyout provision in the Leathers Land Company Partnership Agreement.  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

15.  Ronald Leathers sued Michael Leathers in Haskell County, Kansas for dissolution of

4

Leathers Land Company.  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

16.  Ronald Leathers' lawsuit was transferred to Pottawatomie County and consolidated with Michael Leathers' action..  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

17.  The District Court of Pottawatomie County, Kansas, entered summary judgment in Michael Leathers' favor, finding that the terms of the Leathers Land Company Partnership Agreement required Ronald Leathers to sell Michael Leathers his interest in the surface estate of Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Doc, 10-3, p. 154- 1710).

18.  As a result of the court's order, Ronald Leathers signed a quit claim deed which states: "Ronald R. Leathers, of Pottawatomie County, Kansas, Quit Claims to Michael R. Leathers of Austin, Texas, all the following described real-estate in the County of HASKELL and the State of Kansas, to-wit: Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. for the Sum of: One Dollar and other valuable consideration."  The Deed is signed by Ronald Leathers, and dated May 11, 1998.  (Plaintiff Exh. E, Quit Claim Deed).

19.  The deed was filed in Haskell County, Kansas on May 29, 1998.  (Plaintiff Exh. E, Quit Claim Deed).

20.  The Quit Claim Deed does not reserve to Ronald Leathers his share of the mineral interests appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff

Exh. E, Quit Claim Deed).

21.  Neither party intended the Quit Claim Deed to convey the mineral interests of Ronald Leathers to Michael Leathers regarding the minerals for Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Defendant Theresa Leathers Exh. A, Michael Leathers Depo., pp. 25-29, 100-102; Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., pp. 96-97).

22.  On June 15, 2000, a Notice of Lis Pendens, relating to a divorce action filed in Pottawatomie County, Kansas by Theresa L. Leathers, wife of Ronald Leathers, was filed with the Register of Deeds in Haskell County, Kansas.  (Plaintiff Exh. F, Notice of Lis Pendens Action).

23.  The Notice of Lis Pendens states that the divorce case was filed on June 9, 2000 and specifically references Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.   (Plaintiff Exh. F, Notice of Lis Pendens Action).

24.  Rodney Vaeth, a representative from Chesapeake Energy Company, told Michael Leathers in September of 2000 that the Quit Claim Deed did not reserve to Ronald Leathers the subsurface or mineral rights appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.   (Plaintiff Exh. 1, Affidavit of Michael Leathers).

25.  In this conversation with Rodney Vaeth, Michael Leathers learned that Rodney was

contacting everyone included in the petroleum pooling unit he was working on, which would have included Ronald Leathers.  Later in 2000 he told Michael Leathers that Ronald Leathers had not responded to his telephone calls or letters.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Defendant Theresa Leathers Exhibit A, Michael Leathers Depo., p. 71).

26.  Michael Leathers received a letter from Anadarko Petroleum Corporation dated October 16, 2001, informing him that a gas well, identified as Weeks Farms A-1, had been completed.  (Plaintiff Exh. G, Anadarko letter dated 10-16-2001).

27.  A division order relating to the Weeks Farms A-1 Well was enclosed with the October 16, 2001 letter, and Anadarko requested in the letter that Michael Leathers make any corrections, sign the division order and return it to them.  (Plaintiff Exh. G, Anadarko letter dated 10-16-2001; Plaintiff Exh. 1, Affidavit of Michael Leathers).

28.  The division order shows that the Weeks Farms A-1 Well will produce petroleum from the mineral interests located on Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, which included petroleum from the mineral interests inherited by Michael Leathers and Ronald Leathers from Louise Leathers.   (Plaintiff Exh. H, Anadarko Division Order; Plaintiff Exh. 1, Affidavit of Michael Leathers).

29.  The division order reflected that Ronald Leathers had "no interest" in the mineral interests described in the division order and that Michael Leathers owned ½ of the mineral interest described in the division order, and Weeks Farms, L.L.P., which owned the South Half (S/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, owned the other half.   (Plaintiff Exh.

7

H, Anadarko Division Order).

30.  Michael Leathers corrected the division order by handwriting on the order his correct share, and Ronald's correct share.  (Plaintiff Exh. H, Anadarko Division Order; Plaintiff Exh. 1, Affidavit of Michael Leathers).

31.  Michael Leathers also sent a letter to Anadarko explaining his understanding of Ronald Leathers' ownership interest in the minerals appurtenant to North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  This letter states that Theresa Leathers and Ronald Leathers were in the process of a divorce, and he understood that half of Ronald Leathers' share of the mineral rights were assigned to his wife in the divorce proceedings.  (Plaintiff Exh. I, Letter dated October 23, 2001).

32.  The letter to Anadarko included the contact information for Theresa Leathers' attorney.  The letter was also mailed to Theresa Leathers' attorney.  (Plaintiff Exh. I, Letter dated October 23, 2001; Plaintiff Exh. 1, Affidavit of Michael Leathers).

33.  Michael Leathers received a letter from Anadarko dated October 25, 2001, acknowledging the information he provided them in his October 23, 2001 letter.  (Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001; Plaintiff Exh. 1, Affidavit of Michael Leathers).

34.  The October 25, 2001 letter from Anadarko states that in order to correct the problem with the Quit Claim Deed, Michael Leathers and his wife would need to quit claim ½ of the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the

Sixth (6th) P.M. in Haskell County, Kansas to Ronald Leathers.  (Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001).

35.  The letter states that Anadarko sent a copy of the letter to Ronald Leathers to notify him of the effect of the Quit Claim Deed.  The letter also stated that Michael Leathers' royalty payments would be placed in a suspense account until Anadarko received the requested documentation.  (Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001).

36.  On October 29, 2001 Michael Leathers left a voice mail with Anadarko asking why his share of the royalty payments, which would have been uncontested, needed to be placed in a suspense account.  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

37.  On October 30, 2001 Michael Leathers spoke with a representative from Anadarko who indicated that Michael Leathers' share of the royalties from the Weeks Farms A-1 Well would be paid to him and would not be placed in a suspense account, but that payment on royalties on production from Ronald Leathers' share of the mineral interests would be suspended.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001).

38.  Michael Leathers received his first check from the Weeks Farms A-1 Well on January 25, 2002.  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

39.  Ronald Leathers stopped receiving his royalty checks from Chesapeake Energy Company in January of 2002.   (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., pp. 16-17, 27-28, 44).

40.  Ronald Leathers called Chesapeake Energy Company in February of 2002 and was advised that there was a title problem with his mineral interests.  (Defendant Theresa Leathers

Exh. B, Ronald Leathers Depo., p. 16-17).

41.   On May 15, 2002 Michael Leathers testified in the divorce trial between Ronald Leathers and Theresa Leathers regarding the value and ownership of the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.

42.   At the trial Michael Leathers testified that Ronald Leathers owned half of the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Plaintiff Exh. K, Testimony of Michael Leathers in Divorce Proceedings, p. 10).

43.   Michael Leathers knew at the time of the divorce trial that there was a title problem, but believed that Ronald Leathers was still the owner of half the mineral rights.  (Defendant Theresa Leathers Exh. A, Michael Leathers Depo., pp. 27-29).

44.   A Journal Entry and Decree of Divorce was filed with the Clerk of the District Court in Pottawatomie County, Kansas on July 5, 2002.  (Defendant Theresa Leathers Exh. F, Journal Entry and Decree of Divorce).

45.   In the Journal Entry and Decree of Divorce, the divorce court awarded Theresa Leathers a one-fourth (1/4) interest (half of Ronald Leathers' interest) in the minerals appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Defendant Theresa Leathers Exh. F, Journal Entry and Decree of

Divorce).

46.  Theresa Leathers advised Ronald Leathers in 2003, and again in 2004, that she was not receiving a royalty check from Chesapeake, and that there was a title problem with respect to Chesapeake.  (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., p. 40-41).

47.  In March of 2004 Anadarko completed a second producing petroleum well, known as the "Weeks Farms A-2 Well" on the North Half of Section Eleven (11) Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

48.  On April 23, 2004, Anadarko sent Michael Leathers the first royalty check for royalties on production from the Weeks Farms A-2 Well, which he deposited into his bank account.  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

49.  Michael Leathers received a letter from Ronald Leathers dated November 2, 2005 in which Ronald Leathers states that he recently discovered the problem regarding the Quit Claim Deed and that it has come to his attention that Michael Leathers has been receiving royalty payments that should have been paid to Ronald Leathers.  (Plaintiff Exh. L, Letter from Ronald Leathers dated November 2, 2005).

50.  On November 11, 2005 Michael Leathers responded to Ronald Leathers' letter, stating they were informed of the quit claim problem in 2001, and that Theresa's attorney was informed later that same year.  Michael Leathers also offered to help investigate any problems with his royalty payments if he provided more specific information and to possibly resolve the problem with another deed that would convey to Ronald Leathers and Theresa Leathers in equal shares the mineral interests appurtenant to  Sections Ten (10) and Fourteen (14) and the North

Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. Michael Leathers also suggested that his attorney would request a release from Ronald Leathers regarding any money that was paid to Michael Leathers in error. (Plaintiff Exh. M, Letter from Michael Leathers, dated November 11, 2005).

51. Michael Leathers never heard from Ronald Leathers regarding Michael's offer to help Ronald investigate the problems with his royalty payments. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

52. On October 20, 2008, Ronald Leathers and James Holden, Trustee for the Dirt Cheap Mine Trust, filed a lawsuit in Travis County, Texas against Michael Leathers, his wife Nancy Leathers, Anadarko Petroleum Corporation, Pioneer Natural Resources, USA, Inc., OXY USA, Inc., and Coastal Petroleum, Inc., in an attempt to reform the Quit Claim Deed, to recover royalty payments that allegedly should have been paid to Ronald Leathers, and to recover damages from Michael Leathers. (Doc. 10-1, p. 93-107, 118-123; Doc. 10-2, p. 1-9, ).

53. The entire case in Texas was dismissed. (Plaintiff Exh. N).

54. On February 26, 2007, OXY USA, Inc. filed an interpleader action in federal court in Houston, Texas, naming Michael Leathers, Nancy Leathers, Ronald Leathers, James Holden, Trustee for the Dirt Cheap Mine Trust, and the Internal Revenue Service as defendants. (Doc. 10-1, p. 111-116)

55. The OXY USA, Inc. interpleader action related to approximately $25,000.00 in suspended royalty payments relating to production from mineral interests inherited by Ronald Leathers from Louise Leathers and which are appurtenant to Sections Ten (10) and Fourteen (14)

and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Plaintiff Exh. 1, Affidavit of Michael Leathers; Doc. 10-4, p. 207-223).

56.  Michael and Nancy Leathers disclaimed any interest in the royalty payments that were the subject of the OXY USA, Inc. interpleader action.  (Plaintiff Exh. 1, Affidavit of Michael Leathers;).

57.  Sometime in 2006, Ronald Leathers assigned his interest in all "choses in action" relating to the mineral interests that he had inherited from Louise Leathers to a trust called the "Dirt Cheap Mine Trust."  (Defendant Ronald Leathers Exh. 1, Holden Depo., pp. 20-23, 29).

58.  James Holden is the trustee of the Dirt Cheap Mine Trust.  (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 4).

59.  James Holden drafted the trust documents.  (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 22).

60.  Ronald Leathers is the beneficiary of the Dirt Cheap Mine Trust.  (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., p. 124).

61.  The Dirt Cheap Mine Trust was created to get back the title and the mineral rights to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.  (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., pp. 120-21, 123).

62.  The Dirt Cheap Mine Trust is set up to recover any money that was mistakenly paid to Michael Leathers, and Mr. Holden and the Trust's attorney will be paid a percentage of what is recovered.  (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo.,  pp. 64, 121).

13

63. If the Dirt Cheap Mine Trust succeeds in the litigation and the trust recovers financial payments, James Holden will receive ten percent of what is recovered. (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 24-25).

64. James Holden is also assisting Ronald Leathers with his problems with the IRS. (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 25-26).

65. The Dirt Cheap Mine Trust does not have a bank account, does not file tax returns, and is not filed of record anywhere. The Dirt Cheap Mine Trust does not have any income or own any property. (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 26-27).

66. In December 2006, Michael Leathers determined that it did not appear that royalty payments were being made by Merit Energy Company to Ronald Leathers or Theresa Leathers for the Weeks Farms A-1 Well or the Weeks Farms A-2 Well. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Defendant Theresa Leathers Exh. A, Michael Leathers Depo., p. 39-41).

67. Michael Leathers believes he has received royalty payments that belong to either Ronald Leathers or Theresa Leathers. (Defendant Theresa Leathers Exh. A, Michael Leathers Depo., p. 39-42).

III. Jurisdiction

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1441 28 U.S.C. § 1332.

IV. Standard of Review

Summary judgment is appropriate when "the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson

14

v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. Wright v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. Faustin v. City & County of Denver, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

V.  Discussion

Michael filed a partial summary judgment motion asking the court to grant summary judgment in the Michael's favor on all of Ronald's counterclaims.   Theresa did not take a position in response to Michael's motion for summary judgment.  Ronald requests that the court deny Michael Leathers' motion.

15

Ronald and James Holden, trustee, request summary judgment on all of Theresa's claims. Ronald also requests summary judgment on Michael's claims. Michael took no position on Ronald's motion relating to claims of Theresa. Michael requests the court deny Ronald's motion as it relates to his claims. Theresa takes no position on Ronald's motion pertaining to Michael. Theresa requests the court deny Ronald's motion as it pertains to her claims.

Finally, Theresa asks for summary judgment on Michael's quiet title claim, requesting the court grant the Michael's claim for quiet title. Specifically, Theresa asks the court to reform the deed to reflect the intention of the parties at the time the deed was created. Michael does not oppose the request for relief by Theresa. Ronald does not oppose the relief requested by Theresa Leathers, of quiet title by reformation of the deed. Ronald does oppose Theresa's attempt to have the divorce decree enforced regarding her half of Ronald's mineral interests.

a.  Theresa Leathers' Motion for Summary Judgement

Theresa requests summary judgment on two issues. First, she requests the court reform the deed due to mutual mistake and to show the intention of the parties at the time the deed was created and executed. Second, she requests the court quiet title to the deed. Michael does not oppose the relief requested by Theresa. Ronald does not oppose the reformation of the deed. However, Ronald objects to the quiet title action to the extent that Theresa Leathers is attempting to modify or amend the divorce decree.

1.  <u>Reformation</u>

Theresa requests the court reform the quit claim deed to reflect the intentions of the parties. In Kansas, equity principles require that a deed can be reformed to conform to the original intention of all the parties to the instruments when a mutual mistake was made in

describing the property.  Schlatter v. Ibarra, 218 Kan. 67, 69, 542 P.2d 710 (1975).  The court in

Schlatter went on to state, "The general rule is that where property has been included by mistake

in a deed which the parties never intended should be conveyed, which the grantor was under no

legal or moral obligation to convey, and which the grantee in good conscience has no right to

retain, a court of equity will interfere and correct the mistake."  Id.  The court also stated, "The

very purpose of an action for reformation is to have an instrument altered to make it state the true

agreements of the parties to it, and the fact the instrument sought to be reformed is couched in

clear and unambiguous language does not preclude inquiry as to whether it expressed the

agreement."  Id., citing Snider v. Marple, 168 Kan. 459, 466, 213 P.2d 984 (1950).

Kansas courts apply a five year statute of limitations to reformation claims.  K.S.A. § 60-

511(5).  The statute "commences to run from the date the mistake is made."  Siegel v. Haclker,

Administrator, 181 Kan. 316, 318, 310 P.2d 914 (1957).   A review of case law in Kansas makes

it clear that the five year period of the statute of limitations applies to reforming a deed based on

mutual mistake.  In Travis v. Glick, 150 Kan. 718, 96 P.2d 624 (1939), the court found that ten

years had elapsed between the time when the statute started to run and the commencement of the

action.  The court found the statute of limitation barred the action, and the statute was not tolled.

Id.

Theresa argues, and no other party disputes, that the parties waived the statute of

limitations.  Theresa relies on In re Estate of Tracy, 36 Kan.App.2d 401, 140 P.3d 1045 (2006).

In Tracy, the Court stated that "a statute of limitations is an affirmative defense and the burden

of pleading and proving its applicability rests on the defendant."  Id. at 404, citing Slayden v.

Sixta, 250 Kan. 23, 26, 825 P.2d 119 (1992).  The Tracy Court also stated that "an affirmative

defense must be pled so that it provides an opponent with fair notice of the nature of the defense." Id., citing 61A Am.Jur.2d, Pleading § 287, p. 244.  Since no party raised the statute of limitations as a defense, the court will consider the statute of limitations waived.

For a court to reform a deed, the party requesting reformation must show a mutual mistake, and that he would be prejudiced by a failure to reform the deed.  Schlatter, 218 Kan. at 70.  Reformation is correct if the instrument did not represent the agreement of the parties at the time it was executed.  Federal Land Bank of Wichita v. Bailey, 156 Kan. 464, 134 P.2d 409, 413 (1943).  The deposition testimony of Michael and Ronald show that when the deed was transferred from Ronald to Michael, the parties intended only to transfer the surface rights of the land, not the mineral and oil rights.  A review of the written opinions arising from the litigation concerning the sale of the surface rights shows the same.  If the deed is not reformed, Ronald would not be entitled to collect the royalty interests from the land.  Further, without reformation, Michael will receive a benefit, the subsurface rights, for which he did not bargain or pay consideration.

"The party asking for reformation must stand upon some equity superior to that of the party against whom he ask redress."  Beams v. Werth, 200 Kan. 532, 543, 438 P.2d 957 (1968).  In Schlatter, the Court found that "the lease described premises which included land not actually owned by the appellees, ... the appellees are in a greater position of equity since they obviously cannot convey the same."  218 Kan. at 77.  The Schlatter court went on to state that the parties made a mutual mistake, the lease described property that was beyond what was the true intent of the parties, and the court could grant equitable relief.  Id.  In the case at hand, the deed described the land without the mineral reservations, and transferred to Michael the subsurface rights, which

18

were not intended to be transferred, and which Michael did not pay any consideration.  The facts

show the parties made a mutual mistake, and equitable relief results in reformation of the deed.

"A written instrument may be reformed to conform with the agreement of the parties

where the evidence establishes there has been a common mistake in its execution."  Jones v.

Crowell, 164 Kan. 261, 263, 188 P.2d 908 (1948).  The court has jurisdiction to correct and

reform a deed which does not conform to the intention of the parties due to mutual mistake.

Claypoole v. Houston, 12 Kan. 324 (1873).

The equitable remedy of reformation is available to the parties to show the intention and

understanding of the parties at the time the deed was created.  The court finds that the deed

should be reformed to reserve to Ronald an undivided one-half interest in and to the oil, gas, and

other minerals lying in and under Section Ten (10) and Fourteen (14) and the North Half (N/2)

of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of

the Sixth (6th) P.M. in Haskell County, Kansas.  "Reformation of an instrument relates back, and

takes effect from, the time of its original execution, and binds all entities except innocent

purchasers for value."  Conner v. Koch Oil Co., a Div. of Koch Industries, Inc., 245 Kan. 250,

255, 777 P.2d 821 (1989), citing 66 Am.Jur.2d.Reformation of Instruments § 11. The

reformation relates back to the date the deed was executed, May 11, 1998, takes effect from that

date, and is binding on all parties.  Theresa's motion for summary judgment on reformation is

granted.

2.  Quiet Title

The court must now determine whether the court can quiet title.  In his petition, Michael

requests quiet title to the interest in all the oil, gas, and other mineral in and under  Section Ten

(10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty

South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas,

as well as quiet title to the surface rights of the described property.  Michael also requests quiet

title to all of the royalties, including suspended royalties, produced from the described real estate

and the wells with which it is unitized.   Theresa requests reformation and quiet title, arguing the

court should find that Ronald and Michael share in the mineral interests and that the divorce

decree awarded her a ½ interest in Ronald's  share.  Although Michael  petitioned the court for

100% ownership interests in the surface and subsurface rights of the land, he filed a response in

which he does not oppose the relief requested by Theresa.

An action to quiet title is an action "brought by any person claiming title or interest in

personal or real property, including oil and gas leases, mineral or royalty interests, against any

person who claims an estate or interest therein adverse to him or her, for the purpose of

determining such adverse claim."  K.S.A. § 60-1002.  The moving party must establish the

validity of his title, and not the weakness of the non-moving party's title.  Beams v. Werth, 200

Kan. 532, 543, 438 P.2d 957 (1968).

None of the parties dispute that the deed is a valid deed, although it contains a mutual

mistake and it did not show the intentions of the parties.  Since the court has reformed the deed,

and determined the deed should have reserved half of the mineral interests to Ronald, the

deposition testimony of the parties show that the relief requested, quiet title, should be granted.

The court grants quiet title, finding Michael holds title to the surface rights, and as of the date of

the execution of the deed, Ronald and Michael each own ½ of the mineral interest appurent to

the land.   As discussed in another section of the opinion, Theresa, pursuant to the divorce

judgment, owns a ½ interest in Ronald's share.  Therefore, Michael owns all the surface rights, ½ of the mineral interests, Ronald owns 1/4 of the mineral interests, and Theresa owns 1/4 of the mineral interests.

b.  Michael Leathers' Motion for Summary Judgment

 1.  <u>Fiduciary Relationship</u>

Michael argues that there was not a fiduciary relationship between himself and Ronald  at the time of the alleged breach of the fiduciary duty, that Ronald cannot assign his breach of fiduciary duty claim, and the statute of limitations bars the breach of fiduciary duty claim. Ronald argues that the partnership was not wound up until the final payment on December 31, 2005 and the fiduciary relationship continued until that time, the breach of fiduciary duty was assignable pursuant to partnership law, and the claim is not barred by the statute of limitations.

To show a breach of fiduciary duty, the claimant must first establish that there was a fiduciary relationship between the parties.  Whether parties have a fiduciary relationship must be determined from the facts in each case.  <u>Wilson v. Wilson</u>, 37 Kan.App.2d 564, 576, 154 P.3d 1136 (2007).  A fiduciary relationship exists by contract or by operation of law "where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."  <u>Reebles Inc. v. Bank of America, N.A.</u>, 29 Kan.App.2d 205, 208, 25 P.3d 871 (2001).  The Kansas Courts have not specifically defined the term "fiduciary relation."  One court defined it generally as "a relation in which, if a wrong arises, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the cestui que trust."  <u>Brown v. Foulks</u>, 232 Kan 424, 431, 657 P.2d 501 (1983).  The Court went on to say that a "fiduciary relation" has

"reference to any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party."  Id.

Kansas recognizes two types of fiduciary relationships, the fiduciary relationship specifically created by contract or by formal legal proceedings, and fiduciary relationship implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions.  Denison State Bank v. Madeira, 230 Kan. 815, 640 P.2d 1235, 1241 (1982).  The existence of a fiduciary relationship in the second category is more difficult to determine.  Linden Place, LLC v. Stanley Bank, 38 Kan.App.2d 504, 509, 167 P.3d 374  (2007).  Conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law.  Rajala v. Allied Corp., 919 F.2d 610, 615 (10th Cir. 1990).

The Kansas Supreme Court stated that a "fiduciary is a person with a duty to act primarily for the benefit of another.  A fiduciary is in a position to have and exercise, and does have and exercise influence over another.  A fiduciary relationship implies a condition of superiority of one of the parties over the other, generally in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary."  Denison State Bank v. Madeira, 230 Kan 684, 692, 640 P.2d 1235, modified on rehearing 230 Kan. 815, 640 P.2d 1235 (1982).  "Some indicia of a fiduciary relationship include the acting of one party for another, the exercising of influence by one party over another, the reposing of confidence by one party in another, the inequality of the parties, and the dependence of one party on another."  Morrison v. Watkins, 20 Kan.App.2d 411, 422, 889 P.2d 140 (1995).

Ronald argues the fiduciary relationship existed due to the partnership agreement between the parties, and the partnership did not wind up until December 31, 2005, the date of the last mortgage payment from the buy-out of the partnership.  In support of this argument, Ronald cites to Dean Operation, Inc. v. One Seventy Associates, 257 Kan. 676, 896 P.2d 1012 (1995).  A review of this case shows it is an alter ego case which applied Missouri law.  Ronald has not shown how this case is applicable to the case at hand.  Ronald also cites to Newton v. Hornblower, Inc., 224 Kan. 506, 582 P.2d 1136 (1978) to show Michael cannot prove fairness and good faith in the payments to him from the oil and gas companies.  The Newton case was a suit by a corporate director against his co-directors.  The Court discussed the "very strict fiduciary duty on officers and directors of a corporation to act in the best interest of the corporation and its stockholders.  The duty imposed by this position of trust requires an officer or director to work for the general interest of the corporation."  Id. at 514.  There is no evidence before the court, nor has Ronald argued, that Michael acted and was under the duties of a director or officer.

The parties agree that a partnership existed between them.  Ronald, Michael, and their mother formed the partnership.  The property of the partnership was the surface land of real estate.  The mineral interests were not part of the partnership agreement.  Ronald testified in his deposition that mineral interests were separated from the real estate and were distributed to him and Michael pursuant to the will of Louise Leathers.  Ronald has not shown how the mineral interests, which were not part of the partnership agreement, should be covered under the duties and obligations of the partnership.

Even if the court did decide the mineral interests were covered under the partnership

agreement, Ronald cites to no Kansas law that would allow the court to find the partnership was

"winding up" until the final payment was made on the sale of the surface rights to the real estate.

The partnership agreement contained the following language: " <u>Duration</u>.  The partnership shall

begin on the date first above written and shall continue until the close of the calendar year in

which final settlement is made of the estate of Louise F. Leathers, provided that this partnership

may be sooner dissolved by the mutual written agreement of all of the partners who have not

assigned their interest or suffered them to be charged for their separate debts."   Louise Leathers'

estate was settled on December 28, 1995.  The District Court of Pottawatomie County, Kansas

decided this issue in a prior case involving Michael  and Ronald.  The Court determined the

Leathers Land Company partnership dissolved on its own terms on December 31, 1995, based on

the language cited above.   More importantly, the Court found,

> "K.S.A. § 56-337 gives a partner a right to request a winding up of a partnership
> if that partner has not wrongfully dissolved the partnership.  In this case, the
> Defendant (Ronald Leathers) has wrongfully dissolved the partnership by
> violating the partnership agreement, when the Defendant did not transfer the
> property that was elected to be purchased under the purchase option exercised by
> the Plaintiff.  Kansas law states that 'in the absence of contract provisions
> specifying a definite term, a partnership may be dissolved at any time at the will
> of any of the partners, so long as dissolution does not violate the partnership.'
> <u>Mildfelt v. Lair</u>, 221 Kan. 557, 563 (1977).  In this case, there is a definite term of
> the partnership to be found in Paragraph 3, and the attempted dissolution by filing
> the suit in Haskell County was in violation of the partnership agreement giving a
> purchase option to the Plaintiff.  Given these two breaches, the Defendant has no
> right under K.S.A. § 56-337 to request a winding up of the partnership."  <u>Leathers
> v. Leathers</u>,   Pottawatomie County District Court Case No. 96 C 8 and 96 C 15,
> filed October 28, 1996).

The court will give full effect to a prior ruling by a state court.  28 U.S.C. § 1738;   <u>Allen v.

McCurry</u>, 449 U.S. 90, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).   The District Court

determined the partnership was dissolved, and that there was no right to a winding up.  Ronald

cannot now argue that the partnership was in winding up mode from 1998 to 2005.  The court

will not relitigate an issue that was litigated in a prior action.  Id. at 96.  Res judicata prevents

litigation on the same cause of action which has been decided and a final judgment has been

issued.  Montana v. United States, 440 U.S. 147, 152, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).   The

partnership was dissolved, and Ronald cannot argue Michael had a fiduciary duty under the

dissolved partnership.

  The court must still consider whether Michael owed Ronald  a fiduciary duty based on

transactions and the relationship of the parties.  The court finds he did not.  Ronald has not

presented evidence that a special confidence was placed in Michael by Ronald.  In fact, the

record clearly shows that the brothers had almost no contact after the partnership was dissolved.

Michael testified for Theresa in the divorce trial in 2002, and then there was an exchange of

letters in 2005.  This limited contact does not support a finding that Michael was in a position of

influence or confidence.  There is also no evidence before the court that Ronald placed property

in the possession of Michael for him to maintain.

  There are Kansas cases which recognize that a fiduciary relationship may exist between

members of the same family where land is deeded by one to the other and a confidence is in

some way violated.  In Staab v. Staab, 160 Kan. 417, 163 P.2d 418 (1945), the court found a

confidential relationship between the father and his sons, as the father was unable to read or

write in English, and he was unable to sign his own name.  Id. at 422.  The Staab Court

recognized that the father placed his trust and confidence in his sons, and he expected they

would do what he wanted done.  Id.   In Overstreet v. Beadles, 151 Kan. 842, 101 P.2d 874

(1940), the court found a confidential relationship between a son and a mother as she depended

upon him for advice and to look after her business.  Id. at 877.  Ronald cannot rely on the family relationship between the parties to show there is a fiduciary relationship.  In the cases that have found a fiduciary relationship between family members, it is due to some inequity between the parties, something that is not shown here by the evidence.

Since the court has found that a fiduciary relationship does not exist between the parties, the court will not address the assignment of the fiduciary relationship, or the statute of limitations, as the arguments are moot.  The court grants Michael's motion for summary judgment on Ronald's claim that a fiduciary duty existed, finding that no fiduciary duty existed.

2. Constructive Trust / Unjust Enrichment

Michael requests summary judgment on Ronald's claim that the court should impose a constructive trust on the payments received by Michael  which allegedly belong to Ronald.  Ronald argues that Michael's breach of his fiduciary duty requires the court to impose a constructive trust.  Since the court has determined there was not a fiduciary duty between the parties, the court must determine to what extent the constructive trust claim will be analyzed.  Michael also requests summary judgment on Ronald's unjust enrichment claim.  Michael argues that Ronald did not confer a benefit on him, the claim is barred by the doctrine of unclean hands, the claim is barred by the statute of limitations, and that Ronald cannot recover because he transferred his interest to the Dirt Cheap Mine Trust.  Ronald argues that based on the fiduciary duty Michael owed to Ronald, the court should find that Michael was unjustly enriched, the claim is not barred by the doctrine of unclean hands or by the statute of limitations, and that the Dirt Cheap Mine Trust can recover his interests.

The court has found that Michael and Ronald did not have a fiduciary relationship.

Therefore, the remedy of a constructive trust based on the relationship between the parties is not available.  Before the Kansas Supreme Court's ruling in  Nelson v. Nelson, 288 Kan. 570, 205 P.3d 715 (2009),  it was a common belief that before the court would impose a constructive trust, the court required a showing of fraud.  See Kampschroeder v. Kampschroder, 20 Kan.App.2d 361, 364, 887 P.2d 1152 (1995) ("An essential element of proving a constructive trust is a showing of fraud.").  However, the Nelson court found, "the narrow view requiring actual or constructive fraud is contrary to the Restatement of Restitution: Quasi Contracts and Constructive Trusts § 160 (1936), and is rejected by commentators who recognize a variety of claims can establish the unjust nature of a defendant's rights to or title in property."  Nelson, 288 Kan. at 589.

A constructive trust arises when "the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title."  Hile v. DeVries, 17 Kan.App.2d 373, 374, 836 P.2d 1219 (1992).   A constructive trust is an equitable remedy, and cannot be a claim in its own right.  Nelson v. Nelson, 288 Kan. 570, 579, 205 P.3d 715 (2009).  In other words, Ronald cannot assert a claim for constructive trust, but can request a constructive trust as a remedy for a separate claim.   The courts have also required that the request for a constructive trust must be timely, the fund or property must be traceable, and the property must still be in existence.  Woods v. Duval, 151 Kan. 472, 99 P.2d 804, 809 (1940) (addressing money passing to heirs by fraud).  The courts will apply a constructive trust to cases in which there has been unjust enrichment.  Unjust enrichment, also called quasi-contracts, are not true contracts, but are obligations imposed by law for the purpose of doing justice.   Ellis v. Berry, 19 Kan.App.2d 105, 108, 867 P.2d 1063 (1993).  No meeting of the minds is required for

27

an unjust enrichment claim.  Schoenholz v. Hinzman, 222 P.3d 1019, 7 (2010).  The elements for unjust enrichment are: (1) a benefit conferred upon the one party by another party; (2) an appreciation or knowledge of the benefit by the receiving party; and (3) acceptance or retention of the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without payment of its value.  Haz-Mat Response, Inc. v. Certified Waste Services Ltd., 259 Kan. 166, 177, 910 P.2d 839 (1996).

Michael argues Ronald did not confer a benefit on him, therefore the first element of unjust enrichment is not met.  Michael's argument fails to take into consideration that the courts have found constructive trusts absent any contractual duty or agreement.  Mai v. Youtsey, 231 Kan. 419, 423, 646 P.2d 475 (1982)(a quasi contract is a legal device used to enforce noncontractual duties.); Schoenholz, 222 P.3d 1019 at 7 (the resolution of this issue is not determined by whether or not Rodney and Janine had an agreement or a misunderstanding...).  Ronald did not need to take any steps to "confer" the benefit, once Michael began to receive the royalty payments, a reasonable jury could find the benefit was conferred.

The second element requires the plaintiff to appreciate or have knowledge of the benefit.  Michael Leathers stated that in 2000 he was told by Rodney Vaeth, a representative from Chesapeake Energy Company, that the Quit Claim Deed did not reserve to Ronald his share in the mineral rights.  Rodney stated he tried to contact Ronald, but his phone calls and his letters received no response.   Michael then learned that a new well had been completed.  Michael informed Anadarko that he owned a ½ interest in the mineral rights, and Ronald owned a ½ interest in the mineral rights.  After correspondence with Anadarko, Michael was told that his share of the mineral rights would be paid, but Ronald's share would be placed in a suspense

account.  Michael received his first check from the Weeks Farm A-1 Well on January 25, 2002.

As described above, Michael took steps to notify the oil and gas companies of the correct share

of his and Ronald's interests, and he thought he was receiving only his share of the payments.  It

was not until December 2006 that Michael became aware that he may have received money

owned to Ronald.  Michael did not have knowledge of the benefit until December 2006.

The third element of an unjust enrichment claim is that retention or acceptance of the

benefit makes it inequitable for the defendant to retain the benefit without payment of its value.

Michael deposited the royalty payments he received, which allegedly belonged to Ronald, into

his bank account.  Michael did not provide consideration to Ronald for any alleged royalty

payments that legally belong to Ronald.

Michael argues that Ronald's  unclean hands prevent the court from granting the

Defendant's  claim for unjust enrichment.  Michael bases his unclean hands argument on

Ronald's attempt to avoid the effect of the divorce decree and property settlement.  Michael

argues that Ronald is attempting to use this lawsuit to avoid the transfer of half his mineral rights

to Theresa.  The "clean hands" doctrine is an equity based defense, and provides that "no person

can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been

guilty of inequitable conduct."  In re Marriage of Jones, 22 Kan.App.2d 753, 759, 921 P.2d 839,

rev. denied 260 Kan. 993 (1996).   Conduct which will render a party's hands unclean so as to

deny him access to a court of equity must be willful conduct which is fraudulent, illegal, or

unconscionable.  Green v. Higgins, 217 Kan. 217, 220-21, 535 P.2d 446 (1975).  The conduct

must bear an immediate relation to the subject matter of the suit, rather than collateral

misconduct.  Id.  Michael does not argue that Ronald had unclean hands in the transaction at

29

issue here, which is the payment of royalty interests.  The court does agree with Michael that Ronald is attempting to use this suit to avoid his obligations set forth in the divorce decree.

Michael also argues Ronald's hands are unclean based on champerty and maintenance. Maintenance has been defined as "an officious intermeddling in a suit which in no way belongs to the intermeddler by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it."  In re Ratner, 194 Kan. 362, 374 (1965), citing 14 Am.Jur.2d, Champerty and Maintenance, § 2.

Champerty is a defense which is not used with any frequency.  Champerty arises when an arrangement is made between two parties to divide the proceeds of litigation between the owner of the litigated claim and the party supporting or enforcing the litigation.  7 Williston on Contracts, § 15:1 (2009).  Historically, champerty was against the public policy, and champerty agreements were found to be void.  14 Am.Jur.2d, Champerty and Maintenance, § 5.   Ronald argues that the courts no longer recognize the legal theory of champerty, citing Security Underground Storage v. Anderson, 347 F.2d 964, 969 (10th Cir. 1965).   In Anderson, the court stated that "the decisional law of today dealing with the subject usually involves the validity of contracts asserted to be violations of the doctrine."  Id. at 969.  The court went on to state that the remedies for such conduct exist through tort actions, such as malicious prosecution, abuse of process, and wrongful initiation of litigation.  Id.

Michael's champerty and maintenance arguments are based on Ronald's transfer of rights to the Dirt Cheap Mine Trust.  Ronald stated in his deposition that he transferred his interest to the subsurface rights to the trust.  James Holden stated in his deposition that for payment, he would receive ten percent of what is recovered from this law suit.  Michael fails to recognize that

the trustee has an interest in the trust property that is transferred to the trust, and can litigate on

that basis.  The trustee must administer the trust to bring the trust portfolio into compliance with

the purposes, terms, and distribution requirements of the trust.  C.R.S.A. § 15-1.1-104.  If the

trustee did not pursue this cause of action to recover the trust property, the trustee would not be

acting according to the terms of the trust agreement, and could possibly violate the duty to the

beneficiaries.  See <u>Kaplan v. Pomerantz</u>, 131 F.R.D. 118, 124 (N.D.Ill., 1990).  The court does

not find Ronald's hands are unclean due to champerty and maintenance.  However, the court

finds that there is evidence before the court on which a jury could find Ronald acted with

unclean hands.

    3.  <u>Statute of Limitations</u>

Michael also argues that Ronald's unjust enrichment claim is outside the three year

statute of limitations.  Ronald and James Holden did not include a response to the statute of

limitations argument.[1]  A claim for unjust enrichment is controlled by the three year statute of

limitations in K.S.A. § 60-512.[2]  Michael relies on <u>Northern Natural Gas Co. V. Nash Oil & Gas,</u>

<u>Inc.</u>, 526 F.3d 626 (10th Cir. 2008).  In that case, the parties argued an unjust enrichment claim,

both parties assuming that the discovery rule applied to unjust enrichment.  The court stated

"they do not cite and this Court has not located any authority to support this proposition."  The

Court assumed for the purposes of the appeal that the claim for unjust enrichment accrued when

---

[1]The Defendant did not provide pages 50-53 of his Reply to the Plaintiff's Motion for Summary Judgment to the court, either in chamber's copy or in the filing on CMECF.

[2]The following actions shall be brought within three (3) years: (1) All actions upon contracts, obligations or liabilities expressed or implied but not in writing.  (2) An action upon a liability created by a statute other than a penalty or forfeiture.  K.S.A. § 60-512

the injury became "reasonable ascertainable."  The Court relied on the language of K.S.A. § 60-513 to describe the "discovery rule" as a cause of action that accrues when the fact of injury becomes reasonable ascertainable to the injured party.  Id. at 630.  This decision is supported in Estate of Draper v. Bank of America, N.A., 288 Kan. 510, 205 P.3d 698 (2009).  In Draper, the court stated that the "action did not accrue until the earliest time the plaintiff had a right to maintain a legal action."  Id. at 534.  However, the Draper court also stated that all the elements of unjust enrichment must be present before the statute of limitations can begin to run.  Id.

The evidence before the court shows that the Ronald was aware he was not receiving royalty payments in January 2002.  Therefore, the fact of injury was reasonably ascertained 2002.  However, when reading the Northern case with the court's decision in Draper, the statute of limitations could not begin to run until Michael had knowledge or appreciation of the misapplied payments, which a trier of fact could find to be January 2006.  The court does not find the statute of limitations prevents the unjust enrichment claim.

The court is well aware that the Ronald had ample opportunity prior to the filing of this law suit to address the problems with the deed.  An individual from Chesapeake Energy Company attempted by telephone and by letter to notify Ronald that there was a problem with his deed in 2000.  Ronald testified that in February 2002 he determined that there was a title problem.  However, with the exception of the lawsuit filed in Texas, which was dismissed, Ronald has not attempted in any manner to correct the deed, or to resolve the problem with his mineral interests, until Michael filed this lawsuit.  Therefore, the court will not provide him with a blank slate to recover his payments.

4.  Transfer of interest to trust

Finally, the Michael argues Ronald cannot recover royalty payments under the theory of unjust enrichment because he transferred his interest in the mineral interests to the Dirt Cheap Mine Trust.  In support of this argument, Michael Leathers cites to the Restatement of the Law on Restitution.  Michael relies on section 141, Rights of Third Persons, which states, "A person under a duty of restitution to another is discharged from his liability to the other for the restitution of the subject matter or its value if subsequent to his receipt of the subject matter the other transfers his entire interest therein to a third person."  Restatement of the Law on Restitution (1937) § 141(2)(a).  The case law regarding this section is very limited, and not helpful to the case at hand.  There is no response from Ronald on this defense.

Michael does not present the court with any case law explaining how a trust can be a "third person."  A trust has been described as "a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee."  Restatement of Law (Third) of Trusts § 2 (2003).   The comments to section two specifically states that the property of a trust may consist of future interest in property.  Id.  comment j.  Ronald may have transferred his interest in the royalty payments to the trust, but as the beneficiary, he still retains a  beneficial interest.  In re Marriage of Rosenblum, 43 Col.App. 144, 147, 602 P.2d 892 (1979).

The Supreme Court recently addressed the issue of assignment of rights in Sprint Communications Co. L.P. v. APCC Services, Inc., 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008).  In Sprint, the Court considered whether an assignee of a legal claim for money could sue when that assignee had promised to give all litigation proceeds back to the assignor.  Id. at 2538.   The

Court found "that where assignment is at issue, courts - both before and after the founding - have always permitted the party with legal title alone to bring suit; and that there is a strong tradition specifically of suits by assignees for collection." <u>Id.</u> at 2541.

The court finds that Michael's reliance on the Restatement is misplaced.  If the jury finds that Michael was unjustly enriched, the remedy at law is a constructive trust.  1 Dobbs, Law of Remedies § 4.3(2), p. 579 (2d ed. 1993).  See also <u>Draper</u>, 288 Kan. at 518.  The proper measure of damages for unjust enrichment is restitution of the value of the benefit conferred upon the defendant.  <u>Peterson v. Midland Nat'l Bank</u>, 242 Kan. 266, 275-76, 747 P.2d 159 (1987).  Michael has not shown the court that the transfer was in any way illegal, and it is clear that a trustee can sue to recover trust property.   Michael's argument that Ronald cannot recover because he transferred his interest is denied.

5. <u>Attorney fees</u>

Michael argues that Ronald is not entitled to attorney fees.  Michael argues that Ronald's request for attorney fees is not is not properly before the court pursuant to a Rule 54 motion.  Michael also argues that section 28 U.S.C. § 2412(a) is not the appropriate statute for a request of attorney fees.

Federal Rule of Civil Procedure 54 provides that a claim for attorney fees should be by motion unless the law requires the fees to be proved at trial as an element of damages.   FRCP 54(d)(2)(A).  The Rule also sets out that the motion should be filed no later than 14 days after the entry of judgment, the grounds entitling the movant to the award, the amount of the fees, and any agreement regarding the fees.  FRCP 54(d)(2)(B).

"Unless expressly prohibited by statute, a court may award reasonable fees and expenses

of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.  The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."  28 U.S.C. § 2412(b).  The United States, although a party, is not involved in this stage of litigation.  Ronald's reliance on this section for attorney fees at this point is misplaced.

      6.  <u>Additional Counter Claims</u>

Michael argues that Ronald should not be allowed at this stage of the litigation to raise additional counter-claims.  Michael argues that Ronald is now asserting claims of conversion and fraud by silence.  A pre-trial order was not issued in this case, but at the pre-trial conference, which was recorded and the court had an opportunity to review, Magistrate Judge Humphreys recognized that these claims were being raised for the first time in the conference.  Michael's counsel was directed to file a motion to refute the claims, or surrender and let the claims go forward.  Michael's counsel stated to the Magistrate Judge that he was concerned that the new claims would not be covered by discovery.  Michael's counsel then stated that if it was covered by discovery then they would surrender, if it was not covered then they would file a motion.  Michael did not file a motion to refute the new claims, but does ask for the court to dismiss the claims in summary judgement.  Michael argues that the statute of limitations bars the claims.  Beyond the statute of limitations defense, Michael does not raise any additional arguments relating to the silence by fraud claim.

Pursuant to Rule 16, the pretrial order controls the course of the action and the claims of the case.  Fed.R.Civ.P. 16(e).  An order entered pursuant to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation.  <u>Hullman v. Board of Trustees</u>, 950 F.2d 665, 668 (10th Cir. 1991).  However, in the case at hand, there is not a pretrial order.  Therefore, to determine the claims that are properly before the court, the court can only look at the pleadings filed by the parties.  The pleading must state a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed.R.Civ.P. 8(a).  The pleadings in this case do not state a claim for silence by fraud or conversion.  Therefore, the two issues are not properly before the court and the court cannot issue a ruling on them.

In summary, Michael's request for summary judgment on Ronald's fiduciary duty claim, the attorney fees, and the additional counter claims is granted.  Michael's motion for summary judgment on Ronald's claim for unjust enrichment and constructive trust is denied.  There remains a material issue of fact, based on the circumstances of the parties, whether Michael was unjustly enriched, and whether a constructive trust exists.  Michael's motion for summary judgment on the transfer of interest to the trust is denied.

c.  Motion for Summary Judgment - Ronald Leathers and James Holden, Trustee for the Dirt Cheap Mine Trust

Ronald has requested summary judgment on all of  Theresa's claims for relief, and summary judgment on all of Michael's claims.  Specifically, Ronald argues Theresa's claims are barred by the statute of limitations, nunc pro tunc relief is unavailable, and this court does not have jurisdiction to examine the court documents filed in the divorce case between Ronald and Theresa.  Ronald then argues that quiet title relief and reformation is not available to Theresa,

which is in controversy with the response he filed to Theresa's Motion for Summary Judgment (See Doc. 51). It appears that Ronald agrees that the deed should be reformed and title should be quieted, but does not agree to its applicability to Theresa.

Ronald also requests summary judgment on his claims, which were addressed by Michael in his Motion for Summary Judgment. The court took the arguments of Michael and Ronald into consideration in the analysis above of claims raised in both motions, and they will not be addressed again here. Ronald also seeks summary judgment on the issue of attorney fees, conversion, and the validity of the trust.

1. Theresa Leathers' claims

Ronald requests summary judgment on Theresa's claim that the court reaffirm her interest in the mineral rights. Ronald argues that since the quit claim deed transferred his mineral interests to Michael in 1998, he did not own any mineral rights at the time of the divorce. Therefore, the divorce court was without jurisdiction to award half his mineral interests to Theresa. This court has found that the equitable remedy of reformation is available to the parties to show the intention and understanding of the parties at the time the deed was created. Schlatter v. Ibarra, 218 Kan. 67, 69, 542 P.2d 710 (1975). The court found the deed should be reformed to reserve to Ronald an undivided one-half interest in and to the oil, gas, and other minerals lying in and under Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. Furthermore, since the reformation relates back to the date the deed was executed, May 11, 1998, and takes effect from that date, Ronald did own mineral rights at the time of the divorce and the divorce judgment. See Conner v. Koch Oil

37

Co., a Div. of Koch Industries, Inc., 245 Kan. 250, 255, 777 P.2d 821 (1989), citing 66

Am.Jur.2d.Reformation of Instruments § 11.

Ronald argues that Theresa cannot use this federal suit to set aside the divorce decree.  A

review of Theresa's claims show she is not asking the court to set aside the divorce decree.

Ronald argues that this court does not have jurisdiction to reopen the divorce, redistribute

the property, or distribute real property.  This court agrees.  However, a review of Theresa's

motion shows she does not ask the court to reopen the divorce, or to distribute property.  Theresa

asks the court to reaffirm the divorce decree.  Section 28 U.S.C. § 1738 generally requires

federal courts to give preclusive effect to state court judgments whenever the courts of the State

from which the judgments emerged would do so.  Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct.

411, 66 L.Ed.2d 308 (1980).  The state court judgment will not be given collateral effect if a

party did not have a full and fair opportunity to litigate the claim or issued decided by the first

court.  Id.  A review of the facts, and the divorce judgment show Ronald and Theresa both

participated in the divorce proceedings.  The state court found that it had personal jurisdiction

over the parties, and that subject matter jurisdiction was proper.  The state court conducted a

divorce trial, in which both parties were present, and both parties were permitted to present

evidence.  This court finds that both parties were provided an opportunity to litigate their claims.

To the effect that Ronald argues the divorce court was without jurisdiction to award his

mineral rights to Theresa Leathers, and he is attempting to relitigate that issue in federal court,

his claim is barred by res judicata..  The Full Faith and Credit Clause requires that "Full Faith

and Credit shall be given in each State to the Judicial Proceedings of every other State."  U.S.

Const. Art. IV, s 1.  Full faith and credit must be given by federal courts to state court

judgments.  Davis v. Davis, 305 U.S. 32, 40, 59 S.Ct. 3, 83 L.Ed. 26 (1938).  In this case, Ronald is precluded from relitigating the issue of property distribution in the divorce, as that issue was decided by the state court.

Ronald argues that the statute of limitations bars Theresa from bringing an action to set aside a divorce decree.  Ronald fails to address the fact that Theresa is not attempting to set aside the divorce decree, but she is asking the court to enforce the divorce decree.  The statute of limitations is not applicable as Theresa Leathers is not attempting to obtain relief from the final judgment of the divorce court.

Ronald argues that nunc pro tunc relief is unavailable to Theresa.  Theresa replies that she has not raised a claim for nunc pro tunc relief.  After a review of the pleadings, the court agrees that Theresa is not requesting nunc pro tunc relief.

Ronald argues that the domestic relations exception bars the court from amending or correcting the legal errors of the divorce decree.  The domestic relations exception divests the federal courts of power to issue divorce, alimony, and child custody decrees.  Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).  Since Theresa is not attempting to amend, correct, or modify the divorce decree, the exception is not applicable in this case.  Ronald Leathers also argues the divorce decree is void.  Pursuant to the domestic relations exception, the court is not permitted to make determinations regarding state court decrees of divorce, alimony, or child custody, including a determination of whether or not a decree is void.  See Wigington v. McCarthy, 124 F.3d 219 (10th Cir. 1997).

To the effect that Ronald argues the divorce decree is void because the divorce court did not have subject matter jurisdiction over the mineral rights awarded in the divorce decree

because Ronald Leathers did not own the mineral rights at the time of the divorce, the court dismisses this argument under the law of reformation, as the reformation of the quit claim deed relates back to the date of the deed, which occurred before the divorce judgment.

Ronald's  request for summary judgment on the claims brought by Theresa is denied.

2.  <u>Michael Leathers' Claims and Defenses</u>

Ronald requests summary judgment on Michael's defense of the statute of limitations. As discussed above, if Michael received royalty monies that belong to Theresa Leathers or Ronald Leathers, the Defendants will be able to recover payments made to Michael Leathers.

Ronald requests summary judgment on Michael's defense of champerty and maintenance.  As discussed above, the court found that the Defendant's hands were not unclean due to champerty and maintenance.  The Defendant's motion for summary judgment on champerty and maintenance is granted.

Finally, Ronald and James Holden argue that they are entitled interest on any payments that were made to Michael that do not belong to him.  In support of this argument, Ronald and James Holden rely on <u>Schindler v. Ross</u>, 182 Kan. 277, 320 P.2d 813 (1958).  In <u>Schindler</u>, the appellant did not know she was being overpaid, and the court found that "where money has been paid and received through mutual mistake of fact, without fraud or misconduct on the part of him to whom the money was paid, interest does not begin to run and will not be allowed until the mistake has been discovered and demand for repayment made."  <u>Id.</u> at 284.  <u>Schindler</u> was an action on implied contract to recover money paid under a mistake of fact.  In the case at hand, there was not a contract, and the payments, although made under a mistake of fact, were made by a third party.  In cases that have awarded interest, the courts have found that there was some type

of fraud or misconduct.  See <u>Vernson v. Baker</u>, 124 Kan. 575, 577, 261 P.563 (1927).  Kansas courts are allowed discretion in the awarding of interest damages upon restitution sums. <u>Lightcap v. Mobil Oil Corp.</u>, 221 Kan. 448, 468, 562 P.2d 1 (1977).  "Considerations of fairness and traditional equitable principles are to guide the exercise of this discretion."  <u>Id.</u>, citing <u>Brooklyn Union Gas Co. v. Transcontinental Gas P. L. Corp.</u>, 201 F.Supp. 679 (S.D. Tex. 1960).

This court has found that whether there was a constructive trust is a question for the jury. Ronald does not provide argument as to whether interest should apply to money paid under a constructive trust.  However, all parties are in agreement that if any money has been paid to Michael, it was due to a mutual mistake of the parties.  Therefore, the court finds that Ronald and James Holden are not entitled to interest on any monies mistakenly paid to Michael.

3. <u>Attorney Fees</u>

As stated earlier, the court will not address attorney fees in the Order for Summary Judgment.

4 <u>Validity of Trust</u>

 Ronald asks for summary judgment on the validity of the trust.  Ronald asks the court find that the Dirt Cheap Mine Trust is a valid trust.   The court will not rule on this issue at this time, since at this stage of the litigation, not all parties have had an opportunity to present argument.

VI.  <u>Conclusion</u>

IT IS THEREFORE ORDERED, for the reasons set forth above, that the Plaintiff Michael Leathers' Motion for Summary Judgement (Doc. 53) is GRANTED in part, and DENIED in part.  Specifically, the court finds there is no fiduciary relationship between the

parties, as the mineral interest were not part of the partnership agreement, the partnership

agreement did not establish a fiduciary relationship, and the relationship of the parties did not

establish a fiduciary relationship.  Attorney fees are not awarded, and the additional counter

claims are not properly before the court.  The court further finds there is a genuine issue of

material fact whether a  constructive trust existed, and if Michael was unjustly enriched,

therefore summary judgment is not granted.  The court finds that Ronald did not discharge

Michael from payment of restitution when he transferred his interest to the trust.   The Defendant

Theresa Leathers' Motion for Summary Judgment (Doc. 49) is GRANTED; the deed is reformed

to reflect the intentions of the parties, and the court quiets title as set out in the Order.  Defendant

Ronald Leathers' Motion for Partial Summary Judgment (Doc. 55) is GRANTED in part, and

DENIED in part.  Specifically, Ronald's request for summary judgment on the claims brought by

Theresa is denied.  Ronald's request on Michael's statute of limitations defense and champerty

and maintenance defense is granted.  Ronald and James Holden's request for summary judgment

on interest is denied, as they are not entitled to interest on payments that were made to Michael.

The request for attorney fees is denied.  The court declines to address the issue of the validity of

the trust.

IT IS FURTHER ORDERED that Michael's request for oral argument is denied.

IT IS FURTHER ORDERED that pursuant to the findings set forth in this Order, the case

is referred to the  Magistrate Judge for a pretrial conference and order.  Following the filing of

the pretrial order, the court will set a trial status conference.

IT IS SO ORDERED this 13th day of May, 2010.

s/ Wesley E. Brown
Wesley E. Brown
Senior United States District Court Judge