IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL R. LEATHERS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| -vs- | ]   Case No. 6:08-cv-1213-WEB-KMH |
| | ] |
| RONALD LEATHERS, *et al.*, | ] |
| | ] |
| Defendants. | ] |
| _____ | ] |

## PRETRIAL ORDER

Pursuant to Fed. R. Civ. P. 16(e), a pretrial conference was held in this case on November 5, 2010, before Magistrate Judge Karen M. Humphreys.

This pretrial order shall supersede all pleadings and control the subsequent course of this case.  It shall not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice.  *See* Fed. R. Civ. P. 16(d); D. Kan. Rule 16.2(c).

1.   **APPEARANCES.**

The plaintiff, Michael R. Leathers, appeared at the pretrial conference through counsel Aaron L. Kite of Rebein Bangerter PA.  Defendants Ronald Leathers and James Holden, Trustee of the Dirt Cheap Mine Trust, appeared through counsel, Jack Shultz and Joe Alfred Izen, Jr.  Defendant Theresa Leathers appeared through counsel, Derek S. Casey of Prochaska, Giroux, & Howell.

2.   **NATURE OF THE CASE.**

This is a quiet title case relating to mineral interests and royalties paid thereon located in Haskell County, Kansas.  On November 18, 2008, the court granted the parties' motion for

separate trials for the quiet title issues and the accounting and payment of royalties and taxes. On May 13, 2009, the court entered summary judgment on all claims in the first phase except as to unjust enrichment, restitution and constructive trust relating to royalty payments made to Michael Leathers.  Michael Leathers and Theresa Leathers contend that these are the only issues remaining in this first phase of the litigation.  Ronald Leathers and James Holden, Trustee, assert they have stated claims for conversion and fraud by silence.

In addition to the language contained in this "Nature of the Case," Defendants Ronald Leathers, and James Holden, Trustee, (hereinafter the Ronald Leathers defendants) allege that they submitted claims and causes of action for conversion and fraud by silence in their Requested Additions, Factual Contentions, Legal Claims, and Other Language to be Included in the (Original) Joint Pre-Trial Order on January 12, 2009. Thus, Ronald Leathers  and James Holden are not merely "asserting" they have stated the claims for conversion and fraud by silence, but have previously submitted such claims in writing to this Court to be included in the Joint Pre-Trial Order in reliance on the principle that the pleadings in a Pretrial Order supersede the earlier pleadings of the parties.   Furthermore, these claims and causes of action were addressed at the last Pre-Trial Conference before this Court, but were not ruled on by the District Court because no Pre-Trial Order was ever entered.  As pointed out by the District Court in  its May 13, 2010 Memorandum Opinion granting and denying summary judgment relief:

> Michael argues that Ronald should not be allowed at this stage of the litigation to raise additional counter-claims.  Michael argues that Ronald is now asserting claims of conversion and fraud by silence.  A Pre-trial Order was not issued in this case, but at the pre-trial conference, which was recorded and the Court had an opportunity to review, Magistrate Judge Humphreys recognized that these claims were being raised for the first time in the conference.  Michael's counsel was directed to file a motion to refute the claims or surrender and let the claims go forward.  Michael's counsel stated to the Magistrate Judge that he was concerned that the new claims would not be covered by discovery. Michael's counsel then

2

> stated if it was covered by discovery, then they would surrender.  If it was not
> covered, that they would file a motion.  Michael did not file a motion to refute the
> new claims, but does ask for the Court to dismiss the claims in summary
> judgment.  Michael argues that the statute of limitations bars the claims.  Beyond
> the statute of limitations defense, Michael does not raise any additional arguments
> relating to the silence by fraud claim....In the case at hand, there is not a Pre-Trial
> Order. Therefore, to determine the claims that are properly before the Court, the
> Court can only look at the pleadings filed by the parties.  The pleadings in this
> case do not state a claim for silence by fraud or conversion.  Therefore, the two
> issues are not properly before the Court and the Court can not issue a ruling on
> them.

Memorandum Opinion, ¶ . 35-36.  The Ronald Leathers defendants assert that Plaintiff has no

legitimate objection to such claims, has not and cannot show prejudice, and has waived any

objection.

Any claims disposed of or decided in summary judgment are not included in the pretrial

order as those claims are no longer pending in this action.

The new claims raised by Ronald Leathers and James Holden will be reviewed subject to

the Show Cause Order and any dispositive motions, to be filed pursuant to the time line set forth

in the Show Cause Order and in this Order.

3.      **PRELIMINARY MATTERS.**

     a.      **Subject Matter Jurisdiction.**

         (1)      Subject matter jurisdiction is invoked under 28 U.S.C. §§ 1441 and
         1446(d).

     b.      **Personal Jurisdiction.**  The court's personal jurisdiction over the parties is not

     disputed.

     c.      **Venue.**  The parties stipulate that venue properly rests with this court.

     d.      **Governing Law.**

         (1)      Michael Leathers and Theresa Leathers contend that the claims remaining

3

for determination in this first phase of the litigation are governed by Kansas substantive law.

(2)      The Ronald Leathers defendants dispute any opposing party's claim(s) that only Kansas law governs all issues concerning this action.  The assignment of the chose-in-action for recovery of the mineral interests previously owned by Ronald Leathers mistakenly conveyed to his brother, Michael Leathers, and the royalty payments attributable thereto, are governed by either Colorado law where the assignment took place, or Kansas law where, arguably, the State of Kansas may have more connection with and/or interest in the assignment of a chose-in-action to recover minerals located in Kansas than the State of Colorado.  The State of Colorado, on the other hand, may have more of an interest in the recovery of the royalty payments wrongfully paid as a result of Kansas mineral production by mineral producers to Michael Leathers in the State of Texas, thereby depriving a citizen of the State of Colorado of valuable personal property.  Further, the laws of the United States applicable to priorities of federal tax liens in quiet title litigation and, specifically, with respect to pursuit of choses-in-action, are complex, but applicable to the final resolution of this controversy.  Whether or not the federal tax lien(s) are properly perfected against Ronald Leathers' chose-in-action for recovery of the mineral estate and the royalty payments is an issue which will not be addressed in this Pre-Trial Order because issues concerning the effect of the federal tax lien on any right to recovery herein have been bifurcated and will need to be determined **after** the Court decides and determines the true owner of the mineral estate and royalty payments at issue.

4.      **STIPULATIONS.**

[Certain of the following stipulations contain specific objections by the Ronald Leathers defendants as directed by the Honorable Karen Humphreys.]

a.      The court has previously determined the following facts to be uncontroverted: *See* MEMORANDUM AND ORDER, *filed* May 13, 2010, Doc. 69 at 2-14.

1.      Louise Florence Leathers had two children, Michael Leathers and Ronald Leathers.  (Plaintiff Exh. 1, Affidavit of Michael Leathers).

2.      Prior to December 29, 1973, Louise Leathers owned the following real estate in Haskell County, Kansas: Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. A, General Warranty Deed).

3.       On December 29, 1973, Louise Leathers and her husband, Roy Leathers, conveyed the surface estate of Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, into a general partnership named Leathers Land Company. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. A, General Warranty Deed).

4.      Louise Leathers and Roy Leathers reserved ownership of the mineral interests appurtenant to the land transferred to the Leathers Land Company. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. A, General Warranty Deed).

5.      The Leathers Land Company was a partnership agreement entered into between Louise Florence Leathers and her two children, Michael Leathers and Ronald Leathers.

(Plaintiff Exh. B, Partnership Agreement of Leathers Land Company).

6.      Louise Leathers died on April 2, 1991. (Plaintiff's Exh. 1, Affidavit of Michael Leathers).

7.      At the time of her death, Louise Leathers owned the mineral interests appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. C, Partial Journal Entry of Final Settlement; Plaintiff Exh. D, Journal Entry of Final Distribution of Estate).

8.      Louise Leathers' will was admitted to probate in the District Court of Pottawatomie County, Kansas on July 9, 1991. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

9.      Michael Leathers and Ronald Leathers were co-executors and beneficiaries of the estate.  The brothers were ordered to attend mediation in an attempt to settle the estate. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

10.      A settlement was reached, and Michael Leathers sued Ronald Leathers to enforce the terms of a settlement agreement. (Plaintiff Exh. 1, Affidavit of Michael Leathers; In the Matter of the Estate of Leathers, 19 Kan.App.2d 803, 876 P.2d 619 (1994)).

11.      The mineral interests appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas were distributed to Michael Leathers and Ronald Leathers, each receiving equal shares. (Plaintiff Exh. D, Journal Entry of Final Distribution of Estate).

12.      After the death of Louise Leathers, Michael Leathers and Ronald Leathers each owned 50% of Leathers Land Company, which owned 100% of the surface estate of Section Ten

6

(10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. B, Partnership Agreement; Plaintiff Exh. C, Partial Journal Entry of Final Settlement).

13.     On January 2, 1996, Michael Leathers invoked a mutual buy-out provision of the Leathers Land Company Partnership Agreement and purchased Ronald Leathers' share of the assets of the Leathers Land Company. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. B, Partnership Agreement).

14.      Michael Leather filed suit against Ronald Leathers in Pottawatomie County, Kansas, to enforce the partnership buyout provision in the Leathers Land Company Partnership Agreement. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

15.     Ronald Leathers sued Michael Leathers in Haskell County, Kansas for dissolution of Leathers Land Company. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

16.     Ronald Leathers' lawsuit was transferred to Pottawatomie County and consolidated with Michael Leathers' action. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

17.     The District Court of Pottawatomie County, Kansas, entered summary judgment in Michael Leathers' favor, finding that the terms of the Leathers Land Company Partnership Agreement required Ronald Leathers to sell Michael Leathers his interest in the surface estate of Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Doc, 10-3, p. 154- 1710).

18.     As a result of the court's order, Ronald Leathers signed a quit claim deed which states: "Ronald R. Leathers, of Pottawatomie County, Kansas, Quit Claims to Michael R.

7

Leathers of Austin, Texas, all the following described real-estate in the County of HASKELL and the State of Kansas, to-wit: Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. for the Sum of: One Dollar and other valuable consideration." The Deed is signed by Ronald Leathers, and dated May 11, 1998. (Plaintiff Exh. E, Quit Claim Deed).

19.   The deed was filed in Haskell County, Kansas on May 29, 1998. (Plaintiff Exh. E, Quit Claim Deed).

20.   The Quit Claim Deed does not reserve to Ronald Leathers his share of the mineral interests appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. E, Quit Claim Deed).

21.   Neither party intended the Quit Claim Deed to convey the mineral interests of Ronald Leathers to Michael Leathers regarding the minerals for Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Defendant Theresa Leathers Exh. A, Michael Leathers Depo., ¶ . 25-29, 100-102; Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., ¶ . 96-97).

22.   On June 15, 2000, a Notice of Lis Pendens, relating to a divorce action filed in Pottawatomie County, Kansas by Theresa L. Leathers, wife of Ronald Leathers, was filed with the Register of Deeds in Haskell County, Kansas. (Plaintiff Exh. F, Notice of Lis Pendens Action).

23.   The Notice of Lis Pendens states that the divorce case was filed on June 9, 2000

8

and specifically references Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. F, Notice of Lis Pendens Action).

24.      Rodney Vaeth, a representative from Chesapeake Energy Company, told Michael Leathers in September of 2000 that the Quit Claim Deed did not reserve to Ronald Leathers the subsurface or mineral rights appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers).  [The Ronald Leathers defendants object and refuse to stipulate to this paragraph but admit that Michael Leathers sued Ronald Leathers to enforce that portion of the Leathers Land Company Partnership Agreement which allowed Michael Leathers to "buy out" his partner, Ronald Leathers.]

25.      In this conversation with Rodney Vaeth, Michael Leathers learned that Rodney was contacting everyone included in the petroleum pooling unit he was working on, which  would have included Ronald Leathers. Later in 2000 he told Michael Leathers that Ronald Leathers had not responded to his telephone calls or letters. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Defendant Theresa Leathers Exhibit A, Michael Leathers Depo., p. 71).  [The Ronald Leathers defendants will not stipulate to the content of this Paragraph and object to same on hearsay grounds.]

26.      Michael Leathers received a letter from Anadarko Petroleum Corporation dated October 16, 2001, informing him that a gas well, identified as Weeks Farms A-1, had been completed. (Plaintiff Exh. G, Anadarko letter dated 10-16-2001).

27.      A division order relating to the Weeks Farms A-1 Well was enclosed with the

October 16, 2001 letter, and Anadarko requested in the letter that Michael Leathers make any corrections, sign the division order and return it to them. (Plaintiff Exh. G, Anadarko letter dated 10-16-2001; Plaintiff Exh. 1, Affidavit of Michael Leathers).

28.    The division order shows that the Weeks Farms A-1 Well will produce petroleum from the mineral interests located on Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, which included petroleum from the mineral interests inherited by Michael Leathers and Ronald Leathers from Louise Leathers. (Plaintiff Exh. H, Anadarko Division Order; Plaintiff Exh. 1, Affidavit of Michael Leathers).

29.    The division order reflected that Ronald Leathers had "no interest" in the mineral interests described in the division order and that Michael Leathers owned ½ of the mineral interest described in the division order, and Weeks Farms, L.L.P., which owned the South Half (S/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, owned the other half. (Plaintiff Exh. H, Anadarko Division Order).

30.    Michael Leathers corrected the division order by handwriting on the order his correct share, and Ronald's correct share. (Plaintiff Exh. H, Anadarko Division Order; Plaintiff Exh. 1, Affidavit of Michael Leathers).

31.    Michael Leathers also sent a letter to Anadarko explaining his understanding of Ronald Leathers' ownership interest in the minerals appurtenant to North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. This letter states that Theresa Leathers and Ronald Leathers were in the process of a divorce, and he understood that half of Ronald Leathers' share

10

of the mineral rights were assigned to his wife in the divorce proceedings. (Plaintiff Exh. I, Letter dated October 23, 2001).

32.    The letter to Anadarko included the contact information for Theresa Leathers' attorney.  The letter was also mailed to Theresa Leathers' attorney. (Plaintiff Exh. I, Letter dated October 23, 2001; Plaintiff Exh. 1, Affidavit of Michael Leathers).

33.    Michael Leathers received a letter from Anadarko dated October 25, 2001, acknowledging the information he provided them in his October 23, 2001 letter. (Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001; Plaintiff Exh. 1, Affidavit of Michael Leathers).

34.    The October 25, 2001 letter from Anadarko states that in order to correct the problem with the Quit Claim Deed, Michael Leathers and his wife would need to quit claim ½ of the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas to Ronald Leathers. (Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001).

35.    The letter states that Anadarko sent a copy of the letter to Ronald Leathers to notify him of the effect of the Quit Claim Deed. The letter also stated that Michael Leathers' royalty payments would be placed in a suspense account until Anadarko received the requested documentation. (Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001).

36.    On October 29, 2001 Michael Leathers left a voice mail with Anadarko asking why his share of the royalty payments, which would have been uncontested, needed to be placed in a suspense account. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

37.    On October 30, 2001 Michael Leathers spoke with a representative from Anadarko who indicated that Michael Leathers' share of the royalties from the Weeks Farms A-1 Well

would be paid to him and would not be placed in a suspense account, but that payment on royalties on production from Ronald Leathers' share of the mineral interests would be suspended. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Plaintiff Exh. J, Letter from Anadarko dated October 25, 2001).

38.     Michael Leathers received his first check from the Weeks Farms A-1 Well on January 25, 2002. (Plaintiff Exh. 1, Affidavit of Michael Leathers).   [The Ronald Leathers defendants will not stipulate to the accuracy or truthfulness of this stipulation.]

39.     Ronald Leathers stopped receiving his royalty checks from Chesapeake Energy Company in January of 2002. (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., ¶ . 16-17, 27-28, 44).

40.     Ronald Leathers called Chesapeake Energy Company in February of 2002 and was advised that there was a title problem with his mineral interests. (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., p. 16-17).

41.     On May 15, 2002 Michael Leathers testified in the divorce trial between Ronald Leathers and Theresa Leathers regarding the value and ownership of the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas.

42.     At the trial Michael Leathers testified that Ronald Leathers owned half of the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. K, Testimony of Michael Leathers in Divorce Proceedings, p. 10).

12

43.     Michael Leathers knew at the time of the divorce trial that there was a title problem, but believed that Ronald Leathers was still the owner of half the mineral rights. (Defendant Theresa Leathers Exh. A, Michael Leathers Depo., ¶ . 27-29).  [The Ronald Leathers defendants will not stipulate to the accuracy or truthfulness of this stipulation.]

44.     A Journal Entry and Decree of Divorce was filed with the Clerk of the District Court in Pottawatomie County, Kansas on July 5, 2002. (Defendant Theresa Leathers Exh. F, Journal Entry and Decree of Divorce).

45.     In the Journal Entry and Decree of Divorce, the divorce court awarded Theresa Leathers a one-fourth (1/4) interest (half of Ronald Leathers' interest) in the minerals appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Defendant Theresa Leathers Exh. F, Journal Entry and Decree of Divorce).

46.     Theresa Leathers advised Ronald Leathers in 2003, and again in 2004, that she was not receiving a royalty check from Chesapeake, and that there was a title problem with respect to Chesapeake. (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., p. 40-41).

47.     In March of 2004 Anadarko completed a second producing petroleum well, known as the "Weeks Farms A-2 Well" on the North Half of Section Eleven (11) Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers).

48.     On April 23, 2004, Anadarko sent Michael Leathers the first royalty check for royalties on production from the Weeks Farms A-2 Well, which he deposited into his bank account. (Plaintiff Exh. 1, Affidavit of Michael Leathers).  [The Ronald Leathers defendants will not stipulate to the truthfulness or accuracy of Michael Leathers' affidavit testimony.]

49.     Michael Leathers received a letter from Ronald Leathers dated November 2, 2005 in which Ronald Leathers states that he recently discovered the problem regarding the Quit Claim Deed and that it has come to his attention that Michael Leathers has been receiving royalty payments that should have been paid to Ronald Leathers. (Plaintiff Exh. L, Letter from Ronald Leathers dated November 2, 2005).

50.     On November 11, 2005 Michael Leathers responded to Ronald Leathers' letter, stating they were informed of the quit claim problem in 2001, and that Theresa's attorney was informed later that same year. Michael Leathers also offered to help investigate any problems with his royalty payments if he provided more specific information and to possibly resolve the problem with another deed that would convey to Ronald Leathers and Theresa Leathers in equal shares the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. Michael Leathers also suggested that his attorney would request a release from Ronald Leathers regarding any money that was paid to Michael Leathers in error. (Plaintiff Exh. M, Letter from Michael Leathers, dated November 11, 2005).

51.     Michael Leathers never heard from Ronald Leathers regarding Michael's offer to help Ronald investigate the problems with his royalty payments. (Plaintiff Exh. 1, Affidavit of Michael Leathers).  [The Ronald Leathers defendants will not stipulate to the truthfulness or accuracy of Michael Leathers' affidavit testimony.]

52.     On October 20, 2008, Ronald Leathers and James Holden, Trustee for the Dirt Cheap Mine Trust, filed a lawsuit in Travis County, Texas against Michael Leathers, his wife Nancy Leathers, Anadarko Petroleum Corporation, Pioneer Natural Resources, USA, Inc., OXY

14

USA, Inc., and Coastal Petroleum, Inc., in an attempt to reform the Quit Claim Deed, to recover royalty payments that allegedly should have been paid to Ronald Leathers, and to recover damages from Michael Leathers. (Doc. 10-1, p. 93-107, 118-123; Doc. 10-2, p. 1-9, ).

53.     The entire case in Texas was dismissed. (Plaintiff Exh. N).

54.     On February 26, 2007, OXY USA, Inc. filed an interpleader action in federal court in Houston, Texas, naming Michael Leathers, Nancy Leathers, Ronald Leathers, James Holden, Trustee for the Dirt Cheap Mine Trust, and the Internal Revenue Service as defendants. (Doc. 10-1, p. 111-116)

55.     The OXY USA, Inc. interpleader action related to approximately $25,000.00 in suspended royalty payments relating to production from mineral interests inherited by Ronald Leathers from Louise Leathers and which are appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Doc. 10-4, p. 207-223).

56.     Michael and Nancy Leathers disclaimed any interest in the royalty payments that were the subject of the OXY USA, Inc. interpleader action. (Plaintiff Exh. 1, Affidavit of Michael Leathers;).

57.     Sometime in 2006, Ronald Leathers assigned his interest in all "choses in action" relating to the mineral interests that he had inherited from Louise Leathers to a trust called the "Dirt Cheap Mine Trust." (Defendant Ronald Leathers Exh. 1, Holden Depo., ¶ . 20-23, 29).

58.     James Holden is the trustee of the Dirt Cheap Mine Trust. (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 4).

59.     James Holden drafted the trust documents. (Defendant Ronald Leathers Exh. 1,

15

James Holden Depo., p. 22).

60.     Ronald Leathers is the beneficiary of the Dirt Cheap Mine Trust. (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., p. 124).

61.     The Dirt Cheap Mine Trust was created to get back the title and the mineral rights to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., ¶ . 120-21, 123).

62.     The Dirt Cheap Mine Trust is set up to recover any money that was mistakenly paid to Michael Leathers, and Mr. Holden and the Trust's attorney will be paid a percentage of what is recovered. (Defendant Theresa Leathers Exh. B, Ronald Leathers Depo., ¶ . 64, 121). 63. If the Dirt Cheap Mine Trust succeeds in this litigation and the trust recovers financial payments, James Holden will receive ten percent of what is recovered. (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 24-25).

64.     James Holden is also assisting Ronald Leathers with his problems with the IRS. (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 25-26).

65.     The Dirt Cheap Mine Trust does not have a bank account, does not file tax returns, and is not filed of record anywhere. The Dirt Cheap Mine Trust does not have any income or own any property. (Defendant Ronald Leathers Exh. 1, James Holden Depo., p. 26-27).

66.      In December 2006, Michael Leathers determined that it did not appear that royalty payments were being made by Merit Energy Company to Ronald Leathers or Theresa Leathers for the Weeks Farms A-1 Well or the Weeks Farms A-2 Well. (Plaintiff Exh. 1, Affidavit of Michael Leathers; Defendant Theresa Leathers Exh. A, Michael Leathers Depo., p. 39-41). [The Ronald Leathers defendants will not stipulate to the truthfulness or accuracy of Michael

16

Leathers' affidavit testimony.]

67.     Michael Leathers believes he has received royalty payments that belong to either Ronald Leathers or Theresa Leathers. (Defendant Theresa Leathers Exh. A, Michael Leathers Depo., p. 39-42).

b.     The following documents constitute business records within the scope of Fed. R. Evid. 803(6) and may be introduced in evidence during trial without further foundation, subject to objections based solely on grounds of relevancy:

(1)     All deed, title, mortgage, miscellaneous, and other records filed with the Haskell County Register of Deeds pertaining to or affecting or purporting to affect or attach the real property described as Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, including both surface estate and mineral interests.

(2)     All correspondence and documents (including electronic information) from or directed to or maintained by the petroleum companies who are defendants in this suit that pertain to the Mineral Interests or the South Eubank project or otherwise exchanged during discovery, including division orders, returned division orders, and royalty reports.

(3)     All federal, state, and county tax documents produced by or filed with any government agency or body, including renditions produced by the County of Haskell County, Kansas, that relate to the Mineral Interests, the suspended royalties, or any royalties that may have been paid to Ronald Leathers or Michael Leathers with respect to the Mineral Interests or Michael Leathers' share of mineral interests owned by Louise Florence Leathers at the time of her death.

c.     Copies of exhibits may be used during trial in lieu of originals.

d.      The parties have stipulated to the admission of the following trial exhibits:  All oil and gas tax renditions produced by Haskell County, Kansas relating to royalties paid to Michael Leathers, Ronald Leathers, and Theresa Leathers, on production on the mineral interests located at Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas for the various petroleum companies who are defendants in this action.

e.      At trial, witnesses who are within the subpoena power of the court and who are officers, agents, or employees of the parties need not be formally subpoenaed to testify, provided that opposing counsel is given at least ten business days advance notice of the desired date of trial testimony.  For purposes of this entire pretrial order, the calculation of "business days" does not include Saturday, Sunday, or any legal holiday as defined by Fed. R. Civ. P. 6(a)(4).

f.      By no later than 6:00 p.m. each day of trial, counsel shall confer and exchange a good faith list of the witnesses who are expected to testify the next day of trial.

5.      **FACTUAL CONTENTIONS.**

a.      **Plaintiff's Contentions.**   Michael Leathers makes no claim with respect to ownership of the mineral interests which defendant Ronald Leathers mistakenly quitclaimed to him on March 11, 1998.  Michael contends that any claim for unjust enrichment is limited by the Court's holding that Michael did not have knowledge of a benefit conferred upon him until December 2006.  (Memorandum and Order p. 29).  As such, Michael Leathers' position in this case is that of defending against claims for unjust enrichment, restitution, and/or constructive trust.  Michael Leathers objects to the claims for conversion and fraud by silence asserted by defendants Ronald Leathers and James Holden, Trustee, because defendants did not assert these claims in their pleadings and failed to file an answer to plaintiff's first amended petition.  Michael

18

Leathers contends that the court should bar these claims or, if the claims are not barred, that he should be entitled to assert defenses and affirmative defenses to such claims. Michael Leathers takes no position in any dispute between Ronald Leathers and James Holden, Trustee, and Theresa Leathers or any of the other defendants in this action.

        b.      **Contentions of Defendants Ronald Leathers and James Holden, Trustee.**

The factual contentions of Ronald Leathers and James Holden have been modified to exclude the repetitious statements of facts as set out in the Memorandum and Order for Summary Judgment and in this Pre-trial Order.

(1)      When Defendant and Counter and Cross-Plaintiff, Ronald Leathers, realized that the Quit Claim Deed he had signed had conveyed to his brother, Michael Leathers, the Haskell County, Kansas mineral estate which Ronald Leathers had inherited from his mother, he ultimately became aware that he had not owned any of the severed mineral estate which he inherited from his mother since the date of the delivery of the Quit Claim Deed because that deed failed to reserve the minerals from the conveyance of the surface estate. Defendant, Ronald Leathers, conveyed his chose-in-action to reform the Quit Claim Deed in question, recover the mineral estate, and to recover any royalty payments attributable thereto, which were wrongfully or inequitably paid to other parties, to the Dirt Cheap Mine Trust which was formed for the purpose of pursuing the chose-in-action and recovering the mineral estate and the royalty payments attributable thereto which had been wrongfully or inequitably paid to other parties. Defendant, James Holden agreed to act as Trustee for the trust which was formed for the purpose of receiving a conveyance, by assignment, of the chose-in-action to recover the mineral estate and royalty payments and to procure the services of an attorney to pursue the chose-in-action.

(12)     On January 5, 2007, Plaintiff, Michael Leathers, filed his quiet title action in Haskell County State District Court "for the purposes of clearing title to what had previously been Ronald Leathers' share of the Haskell County Mineral Interests and royalties paid on production therefrom."   The three Original Petitions which Plaintiff, Michael Leathers, filed in three individual cases sought a determination that all of the disputed mineral estate, and the royalty payments attributable thereto, belonged to Plaintiff, Michael Leathers, in fee simple.   Defendant, Ronald Leathers, answered the three Haskell County State District Court suits and filed a Counter-Claim against Plaintiff, Michael Leathers, seeking an award of restitution (based on unjust enrichment); damages for breach of fiduciary duty; and an accounting from the mineral producers of the royalty payments which were attributable to the Mineral Interests Ronald Leathers had inherited from his mother, Louise Leathers, which had been wrongfully or inequitably paid to third parties.   Ronald Leathers also sought other relief.   Defendants, Ronald Leathers, and his assignee, Defendant, James Holden, Trustee of the Dirt Cheap Mine Trust, also filed a Cross Claim against Defendant, Theresa Leathers, as described above.   Both the Counter-Claim and the Cross Claim, as well as the Answer filed in the Haskell County State District Court case made it clear that Defendant and Counter- and Cross-Plaintiff, Ronald Leathers, had assigned his chose-in-action to recover title to the mineral estate mistakenly conveyed to his brother, Michael Leathers, and to recover all damages related to the royalty payments which were assignable under law to Defendant, James Holden, Trustee of the Dirt Cheap Mine Trust.   To the extent that any claims asserted to the mineral estate or to damages for the wrongful and inequitable payment of royalty payments attributable thereto to third parties are held not to be assignable, the pleadings of Defendant and Counter and Cross-Plaintiff, Ronald Leathers, in the Haskell County State District Court case made it clear that Ronald Leathers was pursuing any

20

non-assignable claims in his individual capacity.   Defendants, James Holden, Trustee and Ronald Leathers, assert the same position -- that Defendant and Counter- and Cross-Plaintiff, Ronald Leathers, is pursuing all claims individually, that are held to be non-assignable -- and such position is repeated as their factual and legal position and contention in this Pretrial Order.

(3)     On June 23, 2008 on the record prior to the taking of depositions in the State Court case, counsel for Plaintiff, Michael Leathers, and Defendants, James Holden, Trustee and Ronald Leathers, agreed that Michael Leathers was making "...no claim with respect to ownership of the Mineral Interests which Defendant, Ronald Leathers, apparently mistakenly quit claimed to him...."  Plaintiff, Michael Leathers, through his counsel, stated that his "...position in this case is that of defending against the counter-claims brought by Defendants, James Holden, Trustee and Ronald Leathers, and he takes no position in any dispute between Ronald Leathers and James Holden, Trustee, and Theresa Leathers, or any of the other Defendants in this action."

c.     **Additional Contentions of Defendant James Holden, Trustee.**  Defendant and Counter and Cross-Plaintiff, James Holden, Trustee for the Dirt Cheap Mine Trust, states that he agreed to act as trustee of the Dirt Cheap Mine Trust.  The Trust was formed under a Declaration of Trust Agreement between Defendant, Ronald Leathers, and James Holden, that the trust, Dirt Cheap Mine Trust, would be formed by contract and agreement, that Defendant, Ronald Leathers', chose-in-action to recover the mineral estate and royalty payments would be conveyed thereto, and that an attorney would be employed by the trust and Ronald Leathers to pursue Ronald Leathers' chose-in-action conveyed to the Dirt Cheap Mine Trust. After formation of the Dirt Cheap Mine Trust, Ronald Leathers executed a formal written assignment  and conveyed his chose-in-action to recover the mineral estates, the royalty payments, and any damages, related to the wrongful conversion or withholding thereof, to the Dirt Cheap Mine Trust.  Thereafter, the

21

Dirt Cheap Mine Trust and Ronald Leathers, employed Joe Alfred Izen, Jr. to pursue the chose-in-action which Ronald Leathers conveyed by assignment to the Dirt Cheap Mine Trust. Ronald Leathers also employed attorney Joe Alfred Izen, Jr. to pursue any claims or portions of the chose-in-action which were ultimately held to be non-assignable.

        d.     **Contentions of Defendant Theresa Leathers.**   Defendant Theresa Leathers adopts the court's findings of uncontroverted facts and additionally contends:

        (1)     The court's summary judgment reformed the March 11, 1998, quit claim deed to restore one-half of the mineral interests in the Haskell County property to defendant Ronald Leathers effective March 11, 1998.

        (2)     The court's summary judgment quieted title to one-half of Ronald Leathers' mineral interest in the Haskell County property to Theresa Leathers as of July 5, 2002.

        (3)     Michael Leathers holds approximately $29,418.01 in royalty payments from Weeks Farm A-1 and Weeks Farm A-2 (wells working the Haskell County mineral interests involved in this case) paid to Michael Leathers from November 20, 2005 to October 20, 2008, pursuant to the errant March 11, 1998, quit claim deed, that belongs to Theresa Leathers.

        (4)     Michael Leathers disclaims any interest in these funds.

        (5)     To avoid unjust enrichment to Michael Leathers, the court should order restitution of $29,418.01 from Michael Leathers to Theresa Leathers.

Ms. Leathers' remaining claims relate to the accounting and distribution of royalties in the second phase of the trial and she reserves those claims and issues for the second trial.

6.     **THEORIES OF RECOVERY.**

[After supplemental pretrial conference and further telephonic conference with Aaron Kite, (attorney for Michael Leathers), The Ronald Leathers defendants as counter and cross plaintiffs submit the following Theories of Recovery.]

    a.    **List of Defendant Ron Leathers and James Holden, Trustee's Theories of Recovery.**

    (1)    Unjust Enrichment

    (2)    Declaratory Judgment or Equitable Decree

    (3)    Fraud by Silence

    (4)    Conversion

    (5)    Statutory Interest (on conversion or fraud by silence damages)

    b.    **Essential Elements of Defendant Ron Leathers and James Holden, Trustee's Theories of Recovery.**  Subject to the Court's determination of what law applies to this case, Defendants, believe that in order to prevail on their theories of recovery, James Holden, Trustee and Ronald Leathers, have the burden of proving the following essential elements:

    1.    Unjust Enrichment:

    a.    A benefit conferred.

    b.    An appreciation or knowledge of the benefit by the one receiving the benefit and

    c.    Acceptance or retention of the benefit under such circumstances as to make it inequitable to retain the benefit without payment of its value.

Source:   *In Re: Estate of Sauder*, 283 Kan. 694 (2007); *J. W. Thompson Co. v. Wells Products Corp.*, 243 Kan. 503 (1988) (Restitution part of the remedy of unjust enrichment.)

    2.    Declaratory Judgment.

      a.      Proof in an actual controversy exists.  Proof that the Court has the power to make a binding adjudication of right.

Source:  *Ratley v. Sheriff=s Civil Service Board*, 7 Kan. App.2d 638 (1982).

3.      Fraud by Silence.

      a.      That the Defendant had knowledge of material facts which Plaintiff did not have and which Plaintiff could not have discovered by the exercise of reasonable diligence.

      b.      That Defendant was under an obligation to communicate the material facts to the Plaintiff.

      c.      That Defendant intentionally failed to communicate to Plaintiff the material facts.

      d.      That Plaintiff justifiably relied on Defendant to communicate the material facts to Plaintiff.

      e.      That Plaintiff sustained damages as a result of Defendant's failure to communicate the material facts to the Plaintiff.

Source:  *Flight Concepts, Ltd. Partnership v. Boeing Co.*, 819 F. Supp. 1535, 1545 (D. Kan. 1993), *aff'd*. 38 F.3d 1152 (10th Cir. 1994); *Eckholt v. American Business Information*, 873 F. Supp. 510, 519-520 Kan. (1994).

4.      Conversion

      a.      Unauthorized assumption and exercise of the right of ownership over goods or personal chattels (special fund) belonging to another to the exclusion of the owner's rights.

      b.      The intention (by  Counter-Defendant, Michael Leathers) to use or dispose

24

of the Counter-Plaintiff, Ronald Leathers', goods (royalty payments).

    c.      The actual value of the goods (money) converted.

    d.      An intentional action constituting conversion or acts of conversion displaying a gross neglect of duty so as to evince a reckless indifference of the rights of Counter-Plaintiff, Ronald Leathers, on the part of wrongdoer, Counter-Defendant, Michael Leathers, supporting exemplary damages.

Source: *Watkins v. Layton*, 182 Kan. 702 (1958).

    5.      Decree of Accounting (reserved for later trial.)

    a.      Proof that Cross-Defendant, Michael Leathers, received property or benefits under circumstances so as to give rise to the equitable obligation to account for same.  Proof of the existence of some specific legal principle or situation which equity has established or recognized so as to bring a case within the scope of the doctrine.

Source:  *Short v. Wise*, 239 Kan. 171 (1986); *Shutts, Executor, v. Phillips Petroleum Co*., 222 Kan. 527, 559, 567 P.2d 1292 (1977) 66 Am. Jur.2d, Restitution and Implied Contracts, Section 3.

    6.      Attorney's Fees (reserved for later trial.)

    c.      **List of Defendant Theresa Leathers' Theories of Recovery**.  Unjust enrichment and restitution.

    d.      **Essential Elements of Defendant Theresa Leathers' Theories of Recovery**.

    (1)      A benefit must have been conferred upon the defendant;

    (2)      The defendant must have retained the benefit; and

    (3)      Under the circumstances, the defendant's retention of the benefit must be

unjust.

Source:  *Estate of Draper v. Bank of Am., N.A.*, 288 Kan. 534, 205 P.2d 698 (2009).

7.      **DEFENSES.**

        a.      **List of Plaintiff's Defenses and Affirmative Defenses.**   Plaintiff asserts the following defenses and affirmative defenses to the counterclaims alleged by Defendants Ronald Leathers and James Holden, Trustee (subject to added defenses based on any amendments to pleadings):

        (1)      Restitution (Unjust Enrichment).

        (a)      Said defendants have waived their right to recover the amounts they claim were wrongly paid to Plaintiff.

        (b)      Said defendants should be estopped from recovering the amounts they claim were wrongly paid to Plaintiff.

        (c)      Said defendants should be prevented by the doctrine of laches from recovering the amounts they claim were wrongly paid to Plaintiff.

        (d)      Said defendants should be barred by the statute of limitations from recovering the amounts they claim were wrongly paid to Plaintiff.

        (e)      Said defendants cannot recover the amounts claimed due to their unclean hands, or their wrongful and fraudulent attempt to convey their alleged claims into the hands of James Holden, which may have been undertaken solely for the purpose of avoiding tax liability or the effect of prior divorce decrees.

        (f)      Said defendants have failed to state a cause of action upon which relief can be granted, as "restitution" relates to an element of a judgment in a criminal case designed to recompense a victim of a crime, and is not a civil claim.  However, it is presumed that said

defendants desire to make a claim for unjust enrichment.

(g)     Said defendants' claims are not of the nature or extent alleged.

(h)     Said defendants have failed to state a claim upon which relief can be granted as said defendants have failed to plead their damages.

(I)     Said defendants cannot successfully prove the elements of unjust enrichment.

(j)     Said defendants cannot now assert a claim for punitive or exemplary damages, and cannot show that a case for such a claim exists.

(k)     Said defendants' claims for unjust enrichment are limited in terms of attachment by the date plaintiff obtained knowledge of the appreciation of any benefit, as stated by the court in its Memorandum and Order.

(2)     Accounting.  Plaintiff re-alleges all affirmative defenses previously raised, and asserts that the accounting claim will be considered by the Court in the second half of this bifurcated case or, in the alternative, that said defendants have failed to state a claim upon which relief can be granted.

(3)     Claims for Conversion and Fraud by Silence.  Defendants Ronald Leathers and James Holden, Trustee, now assert these new claims, which are not contained in their pleadings, nearly two (2) years after their initial counterclaim was filed.  Plaintiff objects to the assertion of these claims and requests that the Court bar these claims from being raised at this time.  Plaintiff would assert the following defenses:  (1) legal or equitable setoff of income taxes paid on any amounts which the court may determine should not have been paid to Michael Leathers; (2) statute of limitations (2 years – KSA 60-513(a)(2) and (3)); and (3) failure to state a claim upon which relief can be granted FRCP 12(b)(6).

(4)     Claims for Punitives/Exemplaries.   Defendants Ronald Leathers and James

27

Holden, Trustee, must follow the applicable Kansas statute in presenting a request for punitive or exemplary damages to the Court.

b.      **Essential Elements of Plaintiff's Affirmative Defenses.**  Subject to the Court's determination of the law that applies to this case, Plaintiff believes that, in order to prevail on this affirmative defense, plaintiff has the burden of proving the following essential elements:

(1)      Waiver.  Plaintiff must show that defendants have voluntarily and intentionally renounced or given up a known right, or have caused or done some positive act or positive inaction which is inconsistent with their rights.  *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 158, 959 P.2d 894 (1998).

(2)      Estoppel.   Plaintiff must show that he was induced by defendants' acts representations, admissions, or silence when defendants had a duty to speak, to believe certain facts existed. Plaintiff must also show he rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.  *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 927, 157 P.3d 1109 (2007).

(3)      Laches.  Plaintiff must show that defendants inexcusably delayed instituting suit and that defendants' delay caused prejudice to Plaintiff.   *Hodgdon Powder Co. v. Alliant Techsystems, Inc.*, 497 F.Supp. 2d 1221, 1235 (D. Kan 2007).

(4)      Unclean Hands; Illegality.  Plaintiff must show that defendants are not entitled to equity because they have not acted equitably or with clean hands and are not acting equitably with respect to the transaction(s) at issue.  *United States Gas Co. v. Brock Exploration Co.*, 995 F. Supp. 1284, 1296 (D. Kan 1998).

c.      **List of Defendants Ronald Leathers and James Holden, Trustee's Defenses and Affirmative Defenses.**  Defendants assert the following defenses and affirmative defenses:

28

**Defendants' Defenses to Michael Leathers' Claims of Unclean Hands**.

[**BASIS OF OBJECTION**  If  this Court applies Kansas law in determining the legality of any assignment that took place between Ronald Leathers and James Holden, Trustee for the Dirt Cheap Mine Trust,  in the State of Colorado, the State of Kansas definitely recognizes the legality of assignments of claims to recover property. *Missouri Bank and Trust Co. v. Gas-Mart Development Co.*, 35 Kan. App.2d 291, 300, 130 P.3d 128 (Court of Appeals of Kansas, 2006). The only lingering question would be whether or not the law of the State of Kansas would bar the enforceability of an assignment of a tort claim arising out of conversion or wrongful payment of royalty payments attributable to minerals located in the State of Kansas. That question would have to be resolved based on the most "substantial contacts" test and conflicts of law doctrine taking into account that the assignment took place in the State of Colorado, the assignee and assignor were residents of the State of Colorado, the royalty payments were paid to the State of Texas, the Plaintiff, Michael Leathers, resides in the State of Texas, and the only contact which the State of Kansas has with the royalty payments is that such payments were made based on the production from Mineral Interests located in the State of Kansas.

Valid assignments of claims cannot serve as a basis for application of the equitable defense of unclean hands.  Mere assertion of legal rights by a party can not constitute proof supporting unclean hands.

    d.    **Essential Elements of Defendant Ronald Leathers and James Holden, Trustee's Affirmative Defenses.**

Subject to the court's determination of the law that applies to this case, the defendants believe that, in order to prevail on their affirmative defenses against Plaintiff  Michael Leathers' claims, Defendants have the burden of proving the following essential elements:

1.     **UNJUST ENRICHMENT.**   Michael Leathers received over $200,000.00 in royalty payments which by "equity, justice, and right" should have been received by Defendant and Counter-Plaintiffs, Ronald Leathers and/or his assignee, Defendant, James Holden, Trustee for the Dirt Cheap Mine Trust.  The law of the State of Kansas applicable in this case "abhors unjust enrichment."  Michael Leathers paid nothing for the mineral interests in question or the royalty payments they received attributable thereto.  If they are allowed to retain same, they will be unjustly enriched as defined by the laws of the State of Kansas.

2.     **UNCLEAN HANDS**

a.     Proof of Wilful Conduct which is fraudulent, illegal, or unconscionable.

b.     The objectionable misconduct must also be related misconduct (rather than collateral misconduct which arises outside the specific transaction which is the subject-matter of the litigation before the Court).

Source:  *Green v. Higgins*, 217 Kan. 217 (1975).

3.     **EQUITABLE ESTOPPEL**.

a.     Ronald Leathers was induced to believe certain facts existed by Michael Leathers' acts representations, admissions, or silence when Michael Leathers had a duty to speak.

b.     Ronald Leathers relied and acted upon such belief; and

c.     Ronald Leathers would be prejudiced if Michael Leathers were allowed to deny the existence of such facts.    Source: *Fleetwood v. Coleman Co.*, 37 Kan. App.2d 850 (2007).

4.     **FAILURE OF CONSIDERATION**

a.     Proof of mutual or unilateral mistake or fact which resulted in a conveyance of property (Failure of Consideration by Reason Thereof.)

Source:  *Sloop v. Armstrong*, 189 Kan. 111 (1962).

30

a.      Note:  Where the remedy at law is inadequate a Court of equity may compel a party to an (express or implied) contract to do that which ought to be done.

Source: *Staught v. Brown*, 241 Kan. 1 (1987).

ESSENTIAL ELEMENTS TO DEFENDANTS' ADDITIONAL DEFENSES:

EQUITY FOLLOWS THE LAW

a.      Proof that a statute fixes a limitation period for a claim asserted in a Court of law bars any equitable relief sought which is brought after expiration of the statutory period of limitations.

Source:  *Jennings v. Jennings*, 211 Kan. 515 (1973).

e.      **List of Defendant Theresa Leathers' Defenses and Affirmative Defenses.**  The claims against Ms. Leathers were resolved by the court's summary judgment.

f.      **Essential Elements of Defendant Theresa Leathers' Affirmative Defenses.**  Not applicable as there are no remaining claims against Ms. Leathers.

8.     **FACTUAL ISSUES.**

One or more of the parties believe that the following material issues will need to be resolved at trial by the trier of fact if summary judgment is not granted:

a.      What is the nature and extent of any benefit conferred to Michael Leathers by the payment of royalties to him that were owed to  Theresa Leathers?

b.      Whether Michael Leathers has retained the benefit conferred upon him by payment of royalties owed to defendant Theresa Leathers?

c.      Whether Michael Leathers' retention of the benefit conferred upon him by payment of royalties owed to defendant Theresa Leathers, under the circumstances, would be unjust?

31

d.      The nature and extent of any restitution owed by Michael Leathers to defendant Theresa Leathers?

e.      The extent of the alleged benefit in light of the court's finding that Michael was unaware of any benefit conferred until December 2006.

f.      Whether the inaction of defendants Ronald Leathers and James Holden, Trustee or the delivery of the Quit Claim Deed were a renunciation of a known right to receive the allegedly wrongfully paid royalties.

g.      Whether plaintiff Michael Leathers was induced by defendants Ronald Leathers and James Holden, Trustee's silence with respect to royalty payments and division orders to rely on the manner in which royalties were paid to plaintiff by the petroleum companies, and whether plaintiff would be prejudiced if said defendants are allowed to rely on such silence.

h.      Whether defendants' Ronald Leathers and James Holden, Trustee, delay in filing suit was inexcusable and prejudiced plaintiff?

I.      Whether, under the circumstances,  Ronald Leathers and James Holden, Trustee, have done equity?

j.      The knowledge and intent of Michael Leathers with respect to the purported payment of royalties on production from the Mineral Interests, any retention by him of these royalty payments, the date and time of each such royalty payment, and the content and execution by the petroleum companies of division orders, and comparison of the production declared by the petroleum companies in division orders with the production from the Mineral Interests declared by the Petroleum companies to Haskell County, Kansas or the State of Kansas.

k.      Where did the assignment of Ronald Leathers' chose-in-action for recovery of mineral royalty payments and the Mineral Interests take place?

32

l. Was the assignment written or oral?

m. What was the date and time the assignment was made?

n. What was the geographic source of the royalty payments received by Michael Leathers from the Mineral Interests in dispute in this case?

o. Where did Michael Leathers receive the royalty payments on the Mineral Interests which are in dispute in this case?

p. What was the residence of Ronald Leathers at the time the royalty payments on the Mineral Interests in dispute in this case were received by Michael Leathers?

q. Whether Michael Leathers refused to repay royalties he received which belonged to Ronald Leathers within a reasonable time after a demand for same by Ronald Leathers?

r. Whether Michael Leathers concealed information concerning royalties owned by Ronald Leathers when Michael Leathers had a duty to speak?

s. What damages did Ronald Leathers suffer from Michael Leathers' acts of conversion or fraud by silence?

t. Has Michael Leathers accurately accounted for the royalty payments owned by Ronald Leathers that he received and/or retained?

9. **LEGAL ISSUES.**

One or more of the parties believe that the following are the significant legal or evidentiary issues that will need to be resolved by the court in this case, whether on summary judgment motion or at trial:

a. As to unjust enrichment and restitution: Whether this claim applies; its elements; whether a claim may be brought or a cause of action exists under Kansas law for "restitution" and whether the alleged benefit or damages have been properly pleaded?

33

b.      Whether the doctrine of waiver applies to unjust enrichment and breach of fiduciary duty claims?

c.      Whether the doctrine of estoppel applies?

d.      Whether the doctrine of laches applies if the delay of defendants in bringing suit was inexcusable and prejudiced plaintiff?

e.      Whether the doctrine of "unclean hands" applies?

f.      Whether Ronald Leathers and James Holden, Trustee, have waived their right to assert claims for unjust enrichment, restitution, constructive trust, conversion, or fraud by silence by failing to file an answer to plaintiff's first amended petition and, therefore, being in default?

g.      Whether Ronald Leathers and James Holden, Trustee, have waived their right to assert claims for conversion or fraud by silence due to their failure to raise these claims prior to the pretrial conference?

h.      Whether Michael Leathers has been unjustly enriched?

I.      Whether Michael Leathers owes restitution to Ronald Leathers?

j.      Whether Michael Leathers can be held liable for conversion under the facts of this case?

k.      If Michael Leathers is held liable for conversion or fraud by silence, under the facts of this case, the facts would support an award of exemplary damages?

l.      Whether Michael Leathers was guilty of conversion by failing to turn over royalty payments belonging to Ronald Leathers based on "advice of counsel" he anticipated receiving?

m.      Whether reliance on advice or anticipated advice of counsel is a defense to conversion?

34

n.     Whether Michael Leathers' failure to inform Ronald Leathers of the receipt or spending of royalty payments belonging to Ronald Leathers and the amount of such royalty payments received constitutes fraud by silence under the facts of this case?

10.    **DAMAGES.**

a.     **Plaintiff's Damages.**  None claimed.

b.     **Defendants Ronald Leathers and James Holden, Trustee's Damages.**

(1)    All royalty payments attributable to the Mineral Interests at issue in this case paid to Michael Leathers.  (Amount as yet unknown)

(2)    All royalty payments attributable to the Mineral Interests at issue in this case paid to Theresa Leathers.  (Amount as yet unknown)

(3)    Recovery of 100% fee simple title in the Mineral Interests at issue in this case from Plaintiff, Michael Leathers.

(4)    Attorney's fees and costs necessary to obtain an accounting.

(5)    The prejudgment interest on the royalty payments described in Paragraphs 10(1) and  10(2) above which represents an award for loss of use of the funds in question and which may be utilized to offset interest charged by non-participating Defendant, United States of America, on any taxes ultimately ruled to be owed by Ronald Leathers. Interest should be allowed on the royalty payments withheld by Michael Leathers from the date of conversion. Alternatively, interest should be allowed on all royalty payments which constitute actual damages under Ronald Leathers or James Holden, Trustee's, claims against Michael Leathers for fraud by silence.

(6)    Actual damages for conversion and fraud by silence which exceed recovery of the royalty payments in question and recovery of interest for loss of  use of the monies reflected by

such royalty payments.

(7)     Exemplary damages for conversion and fraud by silence against Michael Leathers.

c.     **Damages of Theresa Leathers.**   Restitution of royalty payments from Michael

Leathers.  Ms. Leathers' other damages are reserved for the accounting phase of the litigation.

11.     **NON-MONETARY RELIEF REQUESTED, IF ANY.**

a.     **Plaintiff's Requested Non-monetary Relief:**  None.

b.     **Defendants Ronald Leathers and James Holden, Trustee's Requested Non-monetary Relief:**

(1)     Declaratory judgment and/or declaratory relief including a decree binding against

all parties that the Dirt Cheap Mine Trust is a valid trust and legal entity under the laws of the

State of Colorado where it was created and must be recognized as such in the State of Kansas

under full faith and credit.

(2)     Imposition of a constructive trust against Michael Leathers and Theresa Leathers

for all royalty payments wrongfully withheld by them from Ronald Leathers and/or all properties

derived by Michael Leathers and Theresa Leathers from such royalty payments.

(3)     An accounting of all mineral royalty payments received by Michael Leathers

which were attributable to the mineral interest previously owned by Ronald Leathers.

c.     **Defendant Theresa Leathers' Requested Non-monetary relief:**  None, other

than that granted in the court's summary judgment including reformation of the March 11, 1998

quit claim deed and quieting title in the mineral interests.

12.     **AMENDMENTS TO PLEADINGS.**

Michael Leathers and Theresa Leathers have no amendments, although they reserve the

right to raise factual or affirmative defenses in the event that the other parties are allowed to

amend their pleadings.

Ronald Leathers and James Holden, Trustee, move this Court to allow filing of the previously-submitted Answer to Cross-Plaintiff, Theresa Leathers', Cross-Claim which Theresa Leathers' counsel sent to the District Clerk of Haskell County after this federal case had already been removed from State Court. Alternatively, Defendants and Cross-Defendants, Ronald Leathers and James Holden, Trustee for the Dirt Cheap Mine Trust, assert the defenses raised therein (in the Answer submitted for this Court's consideration) in the Pretrial Order.

13. **DISCOVERY.**

The parties intend to continue to make third party inquiries for documents from the IRS and the petroleum companies in this case, and will cooperate in exchanging any such documents that may be received pursuant to such efforts.

Ronald Leathers and James Holden, Trustee, agree to cooperate with Michael Leathers, in obtaining proof from the Internal Revenue Service of any payments made by the mineral producers to Ronald Leathers after the erroneous Quit Claim Deed at issue in this case was delivered and/or filed for record. Counsel for Michael Leathers, Ronald Leathers and James Holden, Trustee, have reached an agreement for "unopposed discovery" in this regard.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions, or other pretrial preparations. Under these circumstances, the parties may conduct discovery beyond the deadline for completion of discovery if all parties are in agreement to do so, but the court will not be available to resolve any disputes that arise during the course of this extended discovery.

14. **WITNESSES AND EXHIBITS.**

a.      **Final Witness and Exhibit Disclosures Under Rule 26(a)(3).**  The parties' final witness and exhibit disclosures pursuant to Fed. R. Civ. P. 26(a)(3)(A) shall be filed no later than 21 days before trial.  With regard to each witness disclosed under Fed. R. Civ. P. 26(a)(3)(A)(I), the disclosures also shall set forth the subject matter of the expected testimony and a brief synopsis of the substance of the facts to which the witness is expected to testify. Witnesses expected to testify as experts shall be so designated. Witnesses and exhibits disclosed by one party may be called or offered by any other party.  Witnesses and exhibits not so disclosed and exchanged as required by the court's order shall not be permitted to testify or be received in evidence, respectively, except by agreement of counsel or upon order of the court.  The parties should bear in mind that seldom should anything be included in the final Rule 26(a)(3)(A) disclosures that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto; otherwise, the witness or exhibit probably will be excluded at trial. *See* Fed. R. Civ. P. 37(c)(1).

b.      **Objections.**  The parties shall file any objections under Fed. R. Civ. P. 26(a)(3)(B) no later than 14 days before trial.  The court shall deem waived any objection not timely asserted, unless excused by the court for good cause shown.

c.      **Marking and Exchange of Exhibits.**  All exhibits shall be marked no later than 5 business days before trial.  The parties shall exchange copies of exhibits at or before the time they are marked.  The parties shall also prepare lists of their expected exhibits, in the form attached to this pretrial order, for use by the courtroom deputy clerk and the court reporter.  In marking their exhibits, the parties shall use pre-assigned ranges of numbered exhibits.  Exhibit Nos. 1-400 shall be reserved for plaintiff(s); Exhibit Nos. 401-800 shall be reserved for defendant(s); Exhibits 801 and higher shall be reserved for any third party.  Each exhibit that the parties <u>expect</u> to offer shall

be marked with an exhibit sticker, placed in a three-ring notebook, and tabbed with a numbered tab that corresponds to the exhibit number.  The parties shall prepare exhibit books in accordance with the requirements of the judge who will preside over trial.  The parties shall contact the judge's courtroom deputy clerk to determine that judge's specific requirements.

        d.      **Designations of Deposition Testimony.**

        (1)      **Written Depositions.**   Consistent with Fed. R. Civ. P. 26(a)(3)(A)(ii), any deposition testimony sought to be offered by a party other than to impeach a testifying witness shall be designated by page and line in a pleading filed no later than 21 days before trial.  Any counter-designation in accordance with Fed. R. Civ. P. 32(a)(6), and any objections to the designations made by the offering party, shall be filed no later than 14 days before trial.  Any objections to counter-designations shall be filed no later than 5 business days before trial.  Before filing any objections, the parties shall have conferred in good faith to resolve the dispute among themselves.  No later than 3 business days before trial, to facilitate the court's ruling on any objections to designations or counter-designations, the party seeking to offer the deposition testimony shall provide the trial judge a copy of each deposition transcript at issue.  Each such transcript shall be marked with different colored highlighting.  Red highlighting shall be used to identify the testimony that plaintiff(s) has designated, blue highlighting shall be used for defendant(s), yellow highlighting shall be used for any third party, and green highlighting shall be used to identify the objections to any designated testimony.  After receiving and reviewing these highlighted transcripts, the court will issue its rulings regarding any objections.  The parties shall then file the portions of the depositions to be used at trial in accordance with D. Kan. Rule 32.1.

        (2)      **Videotaped Depositions.**  The paragraph immediately above applies to videotaped depositions as well as written deposition transcripts.  After the court issues its rulings on the

objections to testimony to be presented by videotape or DVD, the court will set a deadline for the parties to submit the videotape or DVD edited to reflect the designations and the court's rulings on objections.

15.    **MOTIONS.**

    a.    **Pending Motions.**

        Motion for summary judgment (Doc. 81) filed by Therea Leathers.

    b.    **Additional Pretrial Motions.**  After the pretrial conference, the parties intend to file the following motions:

Michael Leathers anticipates a dispositive motion in regards to any claims added by amendment of the pleadings.

Ronald Leathers and James Holden, Trustee, will file any responsive motion necessary to contest Michael Leathers and Theresa Leathers' efforts to prevent Ronald Leathers and James Holden, Trustee, from including claims of fraud by silence and conversion against Michael Leathers, as claims and causes of action in the Supplemental Pretrial Order.  Defendants assert their rights to liberal amendment and rights to include causes of action and claims in their portion of any Pretrial Order.

Defendant Theresa Leathers does not intend to file any additional motions.

The dispositive motion deadline is **21 days following the entry of the pretrial order.**

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda submitted in connection with all further motions or other pretrial matters shall not exceed 30 pages, absent an order of the court.

    c.    **Motions Regarding Expert Testimony.**  All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, shall be filed by 28 days before trial.

     d.    **Motions in Limine.**  All motions in limine, other than those challenging the propriety of an expert witness, shall be filed no later than 14 days before trial.  Briefs in opposition to such motions shall be filed within the time period required by D. Kan. Rule 6.1(d)(1), or at least 5 business days before trial, whichever is earlier.  Reply briefs in support of motions in limine shall not be allowed without leave of court.

16.    **TRIAL.**

     a.    This case will be set for trial after resolution of dispositive motions.

     b.    Trial will be by the court sitting without a jury.

     c.    Estimated trial time is **five days**.

     d.    Trial will be in Wichita, Kansas, or such other place in the District of Kansas where the case may first be reached for trial.

     e.    Not all of the parties are willing to consent to the trial of this case being presided over by a U.S. Magistrate Judge, even on a backup basis if the assigned U.S. District Judge determines that his or her schedule will be unable to accommodate any trial date stated above.

     f.    Because of constraints on the judiciary's budget for the compensation of jurors, in any case in which the court is not notified of a settlement at least 1 full business day prior to the scheduled trial date, the costs of jury fees and expenses will be assessed to the parties, or any of them, as the court may order.  *See* D. Kan. Rule 40.3.

17.    **SETTLEMENT.**

     a.    **Status of Settlement Efforts.**  There have been limited settlement discussions which have not been productive.

b.      **Mediation and/or Other Method of Alternative Dispute Resolution.**  Mediation is not ordered.

18.      **FURTHER PROCEEDINGS AND FILINGS.**

a.      **Status and/or Limine Conference.**   Relatively close to the date of trial, the trial judge may schedule a status and/or *limine* conference.

b.      **Trial Briefs.**  A party desiring to submit a trial brief shall comply with the requirements of D. Kan. Rule 7.6.  The court does not require trial briefs but finds them helpful if the parties anticipate that unique or difficult issues will arise during trial.

c.      **Voir Dire.**  Due to substantially differing views among judges of this court concerning the extent to which counsel will be allowed to participate in voir dire, counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine what, if anything, actually needs to be submitted by way of proposed voir dire questions.  Generally, proposed voir dire questions only need to be submitted to address particularly unusual areas of questioning, or questions that are likely to result in objections by the opposing party.

19.      **OTHER.**

a.      **Conventionally Filed Documents.**  The following documents shall be served by mail and by fax or hand-delivery on the same date they are filed with the court if they are filed conventionally (*i.e.*, not filed electronically): final witness and exhibit disclosures and objections; deposition designations, counter-designations, and objections; motions in limine and briefs in support of or in opposition to such motions; trial briefs; proposed voir dire questions and objections; proposed jury instructions and objections; and proposed findings of fact and

42

conclusions of law.  In addition, a party filing a trial brief conventionally shall deliver an extra copy to the trial judge's chambers at the time of filing.

   b.  **Miscellaneous.**

   With regard to pleadings filed shortly before or during trial (*e.g*., motions *in limine*, trial briefs, proposed jury instructions, *etc.*), this pretrial order reflects the deadlines that the court applies as a norm in most cases.  However, the parties should keep in mind that, as a practical matter, complete standardization of the court's pretrial orders is neither feasible nor desirable. Depending on the judge who will preside over trial, and what adjustments may be appropriate given the complexity of a particular case, different deadlines and settings may be ordered. Therefore, from the pretrial conference up to the date of trial, the parties must comply with any orders that might be entered by the trial judge, as well as that judge's trial guidelines and/or exhibit instructions as posted on the court's Internet website:

   IT IS SO ORDERED.

   Dated this 12th  day of July, 2011, at Wichita, Kansas.


           s/ Wesley E. Brown
          WESLEY E. BROWN
          U.S. DISTRICT JUDGE