IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Michael R. Leathers,
                         Plaintiff,

vs.                                            Case No.   08-1213-KMH-WEB

Ronald Leathers, *et. al.*,
                         Defendants.

**MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION TO DISMISS,
MOTION FOR PARTIAL SUMMARY JUDGMENT,
<u>AND MOTION TO STRIKE</u>**

COMES NOW plaintiff Michael R. Leathers ("<u>Plaintiff</u>") and submits the following Memorandum in Support of Plaintiff's Motion to Dismiss, Motion for Partial Summary Judgment, and Motion to Strike.

**I.   STATEMENT OF THE CASE**

Plaintiff brought this case as three separate quiet title lawsuits in the District Court of Haskell County, Kansas.  These cases were removed to federal court and consolidated into a single case.  The substantive facts of the case have been well developed, and are set forth by the Court in its Memorandum and Order entered herein on May 13, 2010 (Doc. 69) and in the Pretrial Order entered herein on July 12, 2011 (Doc. 89).

The Court has previously addressed dispositive motions in this case, granting Plaintiff's request for summary judgment on a number of claims and leaving partially intact the defendants' unjust enrichment claim.  Plaintiff also requested summary judgment or dismissal of conversion and fraud by silence claims that defendants Ronald Leathers and James Holden, Trustee of the Dirt Cheap Mine Trust attempted to add through a motion to amend the pleadings raised at the initial pretrial conference.  Because a pretrial order had not yet been entered, the Court declined to rule on these claims.  See Memorandum and Order, Doc. 69, p. 35-37.

1

The Court has since entered an order allowing defendants Ronald Leathers and James Holden, Trustee of the Dirt Cheap Mine Trust ("James Holden"), to amend their original counterclaim and cross-claim (Doc. 97). These defendants have filed a pleading which raises the aforementioned claims of conversion and fraud by silence and which also re-states various other claims for relief (the "Amended Counterclaim"). By its Motion and this supporting Memorandum Plaintiff requests that the Court strike, dismiss, or rule in Plaintiff's favor (as the case may be) on the conversion and fraud by silence claims. Plaintiff does not again address the unjust enrichment claim as it was left intact for trial by the original Memorandum and Order. See Memorandum and Order, Doc. 69, p. 32.

## II. STATEMENT OF MATERIAL FACTS

1. Rodney Vaeth, a representative from Chesapeake Energy Company, told Michael Leathers in September of 2000 that the Quit Claim Deed did not reserve to Ronald Leathers the subsurface or mineral rights appurtenant to Section Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. (Memorandum and Order, Doc. 69, Statement of Facts ¶ 24).

2. In this conversation with Rodney Vaeth, Michael Leathers learned that Rodney was contacting everyone included in the petroleum pooling unit he was working on, which would have included Ronald Leathers. Later in 2000 he told Michael Leathers that Ronald Leathers had not responded to his telephone calls or letters. (Memorandum and Order, Doc. 69, Statement of Facts ¶ 25).

3. Michael Leathers received a letter from Anadarko Petroleum Corporation dated October 16, 2001, informing him that a gas well, identified as Weeks Farms A-1, had been completed. (Pretrial Order, Doc. 89, Page 9 of 43, Stipulation ¶ 26).

4. A division order relating to the Weeks Farms A-1 Well was enclosed with the October 16, 2001 letter, and Anadarko requested in the letter that Michael Leathers make any corrections, sign the division order and return it to them. (Pretrial Order, Doc. 89, Page 9-10 of 43, Stipulation ¶ 27).

5. The division order shows that the Weeks Farms A-1 Well will produce petroleum from the mineral interests located on Section Eleven (11), all in Township Thirty South (30S) Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, which included petroleum from the mineral interests inherited by Michael Leathers and Ronald Leathers from Louise Leathers. (Pretrial Order, Doc. 89, Page 10 of 43, Stipulation ¶ 28).

6. The division order reflected that Ronald Leathers had "no interest" in the mineral interests described in the division order and that Michael Leathers owned ½ of the mineral interest described in the division order, and Weeks Farms, L.L.P., which owned the South Half (S/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas, owned the other half. (Pretrial Order, Doc. 89, Page 10 of 43, Stipulation ¶ 29).

7. Michael Leathers corrected the division order by handwriting on the order his correct share, and Ronald's correct share. (Pretrial Order, Doc. 89, Page 10 of 43, Stipulation ¶ 30).

8. Michael Leathers also sent a letter to Anadarko explaining his understanding of Ronald Leathers' ownership interest in the minerals appurtenant to North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas. This letter states that Theresa Leathers and Ronald Leathers were in the process of a divorce, and he understood that half of Ronald Leathers' share of the mineral rights were assigned to his wife in the divorce proceedings. (Pretrial Order, Doc. 89, Page 10 of 43, Stipulation ¶ 31).

9. The letter to Anadarko included the contact information for Theresa Leathers' attorney. The letter was also mailed to Theresa Leathers' attorney. (Pretrial Order, Doc. 89, Page 11 of 43, Stipulation ¶ 32).

10. Michael Leathers received a letter from Anadarko dated October 25, 2001, acknowledging the information he provided them in his October 23, 2001 letter. (Pretrial Order, Doc. 89, Page 11 of 43, Stipulation ¶ 33).

11. The October 25, 2001 letter from Anadarko states that in order to correct the problem with the Quit Claim Deed, Michael Leathers and his wife would need to quit claim ½ of the mineral interests appurtenant to Sections Ten (10) and Fourteen (14) and the North Half (N/2) of Section Eleven (11), all in Township Thirty South (30S), Range Thirty-Four West (34W) of the Sixth (6th) P.M. in Haskell County, Kansas to Ronald Leathers. (Pretrial Order, Doc. 89, Page 11 of 43, Stipulation ¶ 34).

12. The letter states that Anadarko sent a copy of the letter to Ronald Leathers to notify him of the effect of the Quit Claim Deed. The letter also stated that Michael Leathers'

4

royalty payments would be placed in a suspense account until Anadarko received the requested documentation. (Pretrial Order, Doc. 89, Page 11 of 43, Stipulation ¶ 35).

13. On October 29, 2001 Michael Leathers left a voice mail with Anadarko asking why his share of the royalty payments, which would have been uncontested, needed to be placed in a suspense account. (Pretrial Order, Doc. 89, Page 11 of 43, Stipulation ¶ 36).

14. On October 30, 2001 Michael Leathers spoke with a representative from Anadarko who indicated that Michael Leathers' share of the royalties from the Weeks Farms A-1 Well would be paid to him and would not be placed in a suspense account, but that payment on royalties on production from Ronald Leathers' share of the mineral interests would be suspended. (Pretrial Order, Doc. 89, Page 11-12 of 43, Stipulation ¶ 37).

15. Michael Leathers received his first check from the Weeks Farms A-1 Well on January 25, 2002. (Pretrial Order, Doc. 89, Page 12 of 43, Stipulation ¶ 38).

16. Ronald Leathers stopped receiving his royalty checks from Chesapeake Energy Company in January of 2002. (Pretrial Order, Doc. 89, Page 12 of 43, Stipulation ¶ 39).

17. Ronald Leathers called Chesapeake Energy Company in February of 2002 and was advised that there was a title problem with his mineral interests. (Pretrial Order, Doc. 89, Page 12 of 43, Stipulation ¶ 40).

18. In December 2006, Michael Leathers determined that it did not appear that royalty payments were being made by Merit Energy Company to Ronald Leathers or Theresa

Leathers for the Weeks Farms A-1 Well or the Weeks Farms A-2 Well. (Memorandum and Order, Doc. 69, Statement of Facts ¶ 67).

19. Michael Leathers believes he has received royalty payments that belong to either Ronald Leathers or Theresa Leathers.  (Pretrial Order, Doc. 89, Page 17 of 43, Stipulation ¶ 67)

### III.    QUESTIONS PRESENTED

1. Should the Court dismiss the conversion and fraud by silence claims because defendants Ronald Leathers and James Holden have failed to state claims upon which relief can be granted?  In the alternative, should the Court grant summary judgment on those claims?

2. Should the Court grant Plaintiff summary judgment on defendants' conversion and fraud by silence claims based on the applicable statutes of limitations?

3. Should the Court strike all claims raised by the defendants in their corrected first amended counter-claim and cross-claim other than the claims of conversion and fraud by silence?

4. Should the Court strike the defendants' conversion and fraud by silence claims as the defendants have violated the Court's orders by raising claims which may require additional discovery and by failing to specifically indicate the portions of the record which support such claims?

### III. ARGUMENT AND AUTHORITIES

**A.    The Court should dismiss the conversion and fraud by silence claims as defendants Ronald Leathers and James Holden have failed to state claims upon which relief can be granted or, in the alternative, grant summary judgment on those claims.**

1. <u>Applicable Standard</u>.

A court should dismiss any complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When a court considers a motion to dismiss under Rule 12(b)(6), "[a]ll of the plaintiff's factual allegations are presumed to be true and construed in the light most favorable to the plaintiff." *Carter v. Martinez*, No. 93-1093, 1994 WL 413319, at *1 (10th Cir. Aug. 5, 1994). However, the foregoing tenet "'is inapplicable to legal conclusions.

6

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (citations omitted). Accordingly, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

"A Rule 12(b)(6) dismissal is appropriate if, taking all well-pleaded facts as true and construing them in the light most favorable to the plaintiff, it is clear that the plaintiff can prove no set of facts which would entitle him to relief." *Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128 (10th Cir. 1994).

If matters outside the scope of the pleadings are presented in a motion filed under Fed. R. Civ. P. 12(b)(6), the motion must be treated as one for summary judgment under Rule 56. Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2009). The moving party's burden is met by showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-movant to "identify specific facts that show the existence of a genuine issue of material fact." *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 484 (10th Cir. 1995). The non-movant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant can only avoid summary judgment by establishing "at a minimum, an inference of the existence of each

essential element to the case." *Foster v. AlliedSignal Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002). In this case, matters outside the pleadings are presented to the Court (e.g., the uncontroverted material facts), and the Court is invited – to the extent it deems necessary – to consider the motion to dismiss as a motion for summary judgment.

    2. <u>Conversion</u>.

In article III of the Amended Counterclaim, defendants Ronald Leathers and James Holden" state that they "allege and will prove" that the failure of Plaintiff to pay over all royalty payments "belonging to Ronald Leathers" which Michael Leathers had received from the various mineral companies "constituted the tort of conversion under the Kansas common law." Amended Counterclaim, Doc. 98, pp. 3-4. Said defendants go on to make arguments regarding the tolling of the statute of limitations.

Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattel belonging to another. *Doll v. Chi. Title Ins. Co.*, 246 F.R.D. 683, 692 (D. Kan. 2007) (citing *Carmichael v. Halstead Nursing Ctr.*, 237 Kan. 495, 500, 701 P.2d 934, 938 (1985)). However, the Amended Counterclaim fails to allege or reference facts which would support: (1) the allegation that Plaintiff received goods or personal chattel belonging to defendant Ronald Leathers or James Holden without authorization; or (2) the allegation that Plaintiff exercised the right of ownership over any such property. It is undisputed in this litigation that Michael Leathers believed he received payments belonging to either Ronald Leathers or Theresa Leathers. (Pretrial Order, Doc. 89, Stipulations P. 17, ¶ 67) In order to support their conversion claim, however, the defendants must plead and reference facts in the record which show that Plaintiff received goods or personal chattel belonging to them; how Plaintiff's mere belief that he received those payments was "unauthorized;" and whether and how Plaintiff exercised the right

8

of ownership over such payments. Instead, said defendants merely allege that they will prove that the alleged "failure to pay" back royalty payments "constituted the tort of conversion…"

The Amended Counterclaim is comprised of nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements…" *Hall v. Witteman*, 584 F3d 859, 863 (10th Cir. 2009). The facts (if they can be called facts) alleged in the Amended Counterclaim are conclusory and speculative, and in such case in order for such facts to amount to a viable claim must be sufficient to raise a right to relief above the speculative level. *Hall*, 584 F.3d at 863 (citing *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009)). These claims are not plausible on their face and do not suggest any entitlement to relief. *Hall*, 584 F.3d at 863 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-1951, 173 L. Ed. 2d 868 (2009)).

The conclusory nature of allegations in the Petition are insufficient to support the conversion claim. This claim should be dismissed or, in the alternative, summary judgment should be granted in Plaintiff's favor on this claim.

3. <u>Fraud by Silence</u>.

The Fourth Cause of Action set forth in the Amended Counterclaim purports to state a claim for fraud by silence. Amended Counterclaim, Doc. 98, pp. 4-5. In this claim, defendants Ronald Leathers and James Holden allege that Plaintiff committed fraud by knowingly receiving payments belonging to Ronald Leathers yet intentionally failing to tell him of this material fact.

To prove fraud by silence in Kansas, a plaintiff (or counter-claimant) must show: (a) The defendant has knowledge of material facts which plaintiff did not have and which the plaintiff could not have discovered by the exercise of reasonable diligence; (b) The defendant was under an obligation to communicate the material facts to the plaintiff; (c) The defendant intentionally failed to communicate to plaintiff the material facts; (d) The plaintiff justifiably relied upon the

9

defendant to communicate the material facts to the plaintiff; and (e) The plaintiff sustained damages as a result of the defendant's failure.  PIK 4th 127.41, Fraud Through Silence – Elements; *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 260, 978 P.2d 922 (1999).

With respect to the first element, defendants Ronald Leathers and James Holden have not pleaded, cannot show, and cannot prove that Plaintiff had knowledge of material facts regarding receipt of Ronald Leathers' royalty payments which Ronald Leathers did not have.  It has been established that both parties knew there was a problem with the quitclaim deed as early as the year 2000 and no later than 2002.  (Pretrial Order, Doc. 89, Pages 9-12 of 43, Stipulations ¶¶ 24-40)  It has been established that Plaintiff sought to correct a division order error regarding royalties in 2001, believing Ronald and/or Theresa owned half of the royalty interests in question.  (Pretrial Order, Doc. 89, Pages 10-11 of 45, Stipulation ¶¶ 28-33)  It has been established that he thought he was receiving only his share of the royalty payments, and that he first discovered otherwise in December of 2006.  (Memorandum and Order, Doc. 69, Statement of Facts ¶ 67)  All material facts known to Plaintiff regarding were known to Ronald Leathers in 2001 or discoverable by the exercise of reasonable diligence.

Secondly, said defendants fail to explain in their Amended Counterclaim why Plaintiff had an obligation to communicate the fact that he was receiving royalty payments.  Both Chesapeake and Anadarko copied Ronald Leathers on their correspondence with Plaintiff.  (Pretrial Order, Doc. 89, Pages 9 of 43, Stipulation ¶¶ 25, 35; Memorandum and Order, Doc. 69, Statement of Facts ¶ 25)  Furthermore, Plaintiff thought he was only receiving his share.  (Memorandum and Order, Doc. 69, Statement of Facts ¶ 67)  More importantly, said defendants

fail to come forward with an explanation as to why such duty would exist, instead preferring to re-state the second element of the fraud by silence claim.

Third, defendants Ronald Leathers and James Holden fail to plead and cannot prove that any failure to advise Ronald Leathers of the receipt of any of Ronald's royalty payments. The pleading itself is bereft of any mention of an intent to commit fraud by failing to disclose material facts. See Amended Counterclaim, Doc. 98, pp. 4-5. Furthermore, the facts themselves belie such an allegation – it has been established that Plaintiff thought he was only receiving his share of the royalties. (Memorandum and Order, Doc. 69, Statement of Facts ¶ 67)

Fourth, the Amended Counterclaim is also lacking any allegation that Ronald Leathers was relying on Plaintiff to provide him with material facts or that such reliance would have been justifiable. *Id.* In fact, the established facts would indicate that Ronald Leathers was actually in communication with oil companies regarding these matters. (Pretrial Order, Doc. 89, Page 12 of 43, Stipulation ¶ 40) Arguably, such reliance would not have been justifiable as Ronald Leathers could have learned the relevant facts directly from the oil companies themselves rather than from Plaintiff, with whom he shares a long and litigious past.

Fifth, the Amended Counterclaim lacks any specificity whatsoever regarding damages incurred.

The rules require that fraud claims be pleaded with specificity. Fed. R. Civ. P. Rule 9(b). As with the claim for conversion, the fraud claim must also be plausible on its face, and should not be a mere threadbare recital of the elements of the claim. *Hall v. Witteman*, 584 F3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-1951, 173 L. Ed. 2d 868 (2009)). Furthermore, in addition to the "who, what, and where" of the alleged fraud, the pleadings must – even with respect to a claim for fraud by silence – set out in general terms the "when" as to the

11

alleged fraud, and the Amended Counterclaim fails to do so with any specificity. *See Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 49442, #22 (D. Kan., June 11, 2009) (unpublished).

Defendants Ronald Leathers and James Holden have failed to adequately plead a claim for fraud by silence. Furthermore, the established facts of this case indicate that there is simply an absence of facts supporting the elements of such a claim. For this reason, the claim should be dismissed or, in the alternative, the Court should enter summary judgment in Plaintiff's favor on the fraud by silence claim as matters outside of the pleadings have been presented and are established in this litigation.

**B. The Court should grant Plaintiff summary judgment on defendants' conversion and fraud by silence claims as those claims are barred by the applicable statutes of limitations.**

1. Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (2009). The moving party's burden is met by showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-movant to "identify specific facts that show the existence of a genuine issue of material fact." *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 484 (10th Cir. 1995). The non-movant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant can only avoid summary judgment by establishing "at a minimum, an inference of the existence of each essential element to the case." *Foster v. AlliedSignal Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002).

If a motion for summary judgment is based on an affirmative defense, the movant, who bears the burden of proof, must demonstrate that no disputed material fact exists regarding the affirmative defense. *Johnson v. Riddle*, 443 F.3d 723, 724-725, fn. 1, (10th Cir. 2006); *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the movant meets his initial burden, the non-movant must demonstrate with specificity the existence of a disputed material fact. *Hutchinson*, 105 F.3d at 564. If the non-movant fails to make such a showing, the affirmative defense bars the claim and the movant is entitled to summary judgment. *Id*.

2. <u>Conversion</u>.

In Kansas, the statute of limitations for conversion is two years. K.S.A. § 60-513(a)(2); *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629-630 (D. Kan. 2008). Under the so-called "discovery rule," a cause of action for conversion accrues when the "fact of injury becomes reasonably ascertainable to the injured party." K.S.A. § 60-513(b); *N. Natural Gas Co.*, 526 F.3d at 630 (citing *Dreiling v. Davis*, 38 Kan. App. 2d 997, 176 P.3d 197, 201 (2008) (describing § 60-513(b) as the discovery rule); *Clark Jewelers v. Satterthwaite*, 8 Kan. App. 2d 569, 662 P.2d 1301, 1304 (1983) ("[A] cause of action in tort for conversion or for the recovery of personal property accrues when substantial injury first appears or when it becomes reasonably ascertainable.")). "The phrase 'reasonably ascertainable' means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the [injury] and its wrongful causation." *N. Natural Gas Co.*, 526 F.3d at 630 (citing *Kelley v. Barnett*, 23 Kan. App. 2d 564, 932 P.2d 471, 474 (1997). Moreover, "'reasonably ascertainable' does not mean 'actual knowledge.'" *N. Natural Gas Co.*, 526 F.3d at 630 (citing *Davidson v. Denning*, 259 Kan. 659, 914 P.2d 936, 948 (1997).

As the Court pointed out in the memorandum and Order in addressing Plaintiff's statute of limitations argument with respect to the defendants' unjust enrichment claim:

13

> An individual from Chesapeake Energy Company attempted by telephone and by letter to notify Ronald that there was a problem with his deed in 2000. Ronald testified that in February 2002 he determined that there was a title problem. However, with the exception of the lawsuit filed in Texas, which was dismissed, Ronald has not attempted in any manner to correct the deed, or to resolve the problem with his mineral interests, until Michael filed this lawsuit.

Memorandum and Order, (Doc. 69), p. 32.

In other words, the conversion claim would have commenced in 2000 or 2002, when the fact of the alleged injury became "reasonably ascertainable" to defendant Ronald Leathers. As such, the two-year statute of limitations for this claim would have expired in 2004.

The statute of limitations issues in this case are similar to those presented to the 10th Circuit in *Northern Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F. 3d 626 (10th Cir. 2008). In that case, Northern Natural Gas Company ("Northern") injected previously extracted natural gas into a depleted underground natural gas formation near gas wells operated by Nash Oil & Gas, Inc. ("Nash") for storage purposes. *Id* at 628. In 1999 or 2000, Northern sent Nash correspondence expressing concern that Nash might be producing some of Northern's storage gas from Nash's wells. *Id* at 628-629. Nash asked Northern if it had evidence of this, and Northern responded that it had no such evidence except that some of Nash's gas "resembled" storage gas. *Id.*

In 2004 Northern sued Nash for, among other things, conversion and unjust enrichment based on Nash's production of Northern's storage gas from the Nash gas wells. *Id* at 628-630. Nash was still producing natural gas from the formations at the time, and while the case was in District Court Northern requested the right to test the natural gas in the formations used by Nash. *See Northern Natural Gas Co. v. Nash Oil & Gas, Inc.*, 506 F. Supp. 2d 520, 524 (D. Kan. 2007).

Nash raised the statute of limitations as a defense. *Northern Natural Gas Co.*, 526 F.3d at 628-630. The 10th Circuit examined the facts in light of the discovery rule and found that while

14

Northern may not have known to a certainty that Nash was producing storage gas, that fact was certainly "capable of being known" when the letters were exchanged and thus the correspondence from 2000 would be the date upon which the statutes of limitation began to run. *Id*. This meant that Northern's cause of action was barred by the statute of limitations. *Id*.

Northern also alleged that Nash's production of the gas was a continuing tort, and that Northern's claims were not time barred because the production of storage gas continued during the two or three year period immediately preceding the filing of the lawsuit. *Northern Natural Gas*, 526 F.3d at 630. However, the 10th Circuit upheld Judge Marten's grant of summary judgment at the trial court level, finding that Kansas courts only apply the continuing tort exception in nuisance cases, and holding that the continuing tort exception to the statute of limitations does not apply to claims for unjust enrichment or conversion. *Id* at 631-632.

As in *Northern Natural Gas*, the Court in this case is confronted with both unjust enrichment and conversion claims. The cases are similar because of the continuing nature of the property which allegedly came into the possession of the defendant/counterclaim defendant (e.g., continuing royalty payments vis-a-vis the continuing extraction of migrating natural gas). Like *Northern*, if the date the alleged conversion of property occurred is more than two years prior to the date defendants Ronald Leathers and James Holden raised their claims (e.g., 2007), then the conversion claim is barred by the statute of limitations.

In the Memorandum and Order, the Court chose not to apply the statute of limitations to cut off defendants' unjust enrichment claims as a matter of law. (Memorandum and Order, Doc. 69, pp. 31-32). In doing so, the Court reviewed *Northern* and the Kansas Supreme Court's decision in *Estate of Draper v. Bank of America, N.A.*, 288 Kan. 510, 205 P.3d 698 (2009). However, the holding in *Draper* was confined to the date of accrual of an unjust enrichment

claim and does not address the tort of conversion.  *See id*.  Thus, *Draper* is inapplicable with respect to this claim.

The material facts relevant to this issue are not in dispute, and *Northern Natural Gas* is controlling with respect to the timing of the accrual of the alleged conversion claim for statute of limitations purposes and any alleged continuing tort.  The act giving rise to Ronald Leathers' alleged injury was reasonably ascertainable in the year 2000 or, at the latest, the year 2002.  As such, the conversion claim was raised late.  The Court should grant Plaintiff his requested summary judgment and rule that this claim is barred by the two year statute of limitations.

3. <u>Fraud by Silence</u>.

The statute of limitations for fraud by silence in Kansas is two years.  K.S.A. 60-513(a)(3).  However, the cause of action does not accrue and the statute of limitations is not triggered until the fraud is discovered.  *Wolf v. Brungardt*, 215 Kan. 272, 280-281, 524 P.2d 726 (1974).  In order for this "discovery rule" to apply, the fraud must not only have not been discovered, but it could not have been discovered with reasonable diligence.  *Wolf*, 215 Kan. At 281.  The discovery by the person defrauded of facts indicating he had been defrauded as would cause a reasonably prudent person to investigate, and which, if investigated with reasonable diligence, would lead to knowledge of the fraud, are sufficient to trigger the statute of limitations.  *Id*.

Unfortunately, defendants Ronald Leathers and James Holden, Trustee, do not specifically state in the First Amended Counter-claim and Cross-claim the date of Plaintiff's first "intentional failure" to communicate material facts except to indicate that the alleged fraud occurred when Plaintiff "did not tell" defendant Ronald Leathers that he had received royalty payments belonging to Ronald Leathers.  The established facts indicate that Plaintiff knew as early as 2000 that there was a problem with the quitclaim deed. (Pretrial Order, Doc. 89, Page 9

of 43, Stipulation ¶ 24)  The facts also reflect that Plaintiff received a division order in 2001 for a new well drilled by Anadarko, and that Plaintiff corrected the division order to protect Ronald's share of the royalty payments.  (Pretrial Order, Doc. 89, Page 10 of 43, Stipulation ¶ 30)  Later, believing he was only receiving "his share," Plaintiff began receiving royalty payments from the new well.  (Pretrial Order, Doc. 89, Pages 11-12 of 43, Stipulation ¶¶36-38)  Although the established facts indicate otherwise, presumably the "fraudulent act" upon which defendants Ronald Leathers and James Holden base their fraud by silence claim were the alleged failure to advise Ronald of the problem with the deed, the new well, or the receipt of royalties from the new well.  While the claim, as pleaded, lacks for specificity in this regard, this alleged "fraudulent activity" would have occurred in 2001.

It has been established in this case that Ronald was aware as early as 2002 that there was a problem with the quitclaim deed and that he was not receiving royalty payments.  (Pretrial Order, Doc. 89, Page 12 of 43, Stipulation ¶¶ 39-40)  These are facts which, assuming any actual fraud or fraudulent failure to disclose existed, would have put a reasonable person on notice as to the existence of the title problem, the mis-payment of royalties by the oil companies, or any other allegedly fraudulent activity which defendants are alleging.  Despite knowing in 2002 about the title problem and cessation of royalty checks, Ronald inexplicably chose not to further pursue his inquiry.

Based on the material facts of this case as recited by the Court, Ronald Leathers would have discovered the existence of any fraudulent activity or failure to disclose material facts in 2002 had he undertaken to reasonably investigate the cessation of his royalty checks.  The fraud by silence cause of action would have commenced to run in 2002 and expired prior to the filing

of the counterclaim in February of 2007.  This claim is therefore barred by K.S.A. 60-513(a)(3), and summary judgment should be granted in Plaintiff's favor on this claim.

**C.     The Court should strike all claims raised by the defendants in their corrected first amended counter-claim and cross-claim other than the claims of conversion and fraud by silence.**

Defendants Ronald Leathers and James Holden have included claims in the Amended Counterclaim which have already been adjudicated in this action.  This Court ordered that they amend their pleadings to include claims for fraud by silence and conversion.  (Order to Show Cause, Doc. 90)  This additional information is redundant, immaterial, and potentially confusing and should, pursuant to Fed. R. Civ. P. 12(f), be stricken from the Amended Counterclaim.

**D.     The Court should strike the defendants' conversion and fraud by silence claims as the defendants have violated the Court's orders by raising claims which require additional discovery and by failing to specifically indicate the portions of the record which support such claims.**

The Court requested that defendants Ronald Leathers and James Holden refrain from alleging claims which would require additional discovery.  The Court also requested that said defendants specifically indicate which portions of the record they intend to rely upon to support the fraud by silence and conversion claims.  Said defendants have failed to do this, instead providing a set of fraud by silence and conversion allegations in the Amended Counterclaim which fail to reference the existing record and which may require Plaintiff to commence further discovery.  For this reason, the new claims should be stricken as they have not complied with the Court's orders with respect to the filing of their amended claims.

### IV. CONCLUSION

WHEREFORE plaintiff and counter-defendant Michael Leathers respectfully requests that this Court grant summary judgment in its favor with respect to, or dismiss or strike the fraud by silence and conversion claims of defendants and counter-claimants Ronald Leathers and

James Holden, Trustee of the Dirt Cheap Mine Trust; strike the remaining claims in the Amended Counterclaim; award plaintiff Michael Leathers the costs he incurred in defending this matter; and award plaintiff Michael Leathers such other and further relief as the Court deems just and equitable.

                                                Respectfully Submitted,

                                                /s/ Aaron L. Kite
                                                Aaron L. Kite, #18765
                                                REBEIN BANGERTER PA
                                                810 Frontview, PO Box 1147
                                                Dodge City, Kansas 67801
                                                Telephone: 620.227.8126
                                                Fax: 620.227.8451
                                                Email: Aaron@rbr3.com
                                                *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

     I hereby certify that on August 2, 2011, I electronically filed the foregoing **Plaintiff's Memo in Support of Motion to Dismiss, Motion for Partial Summary Judgment, and Motion to Strike** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                /s/ Aaron L. Kite
                                                Aaron L. Kite, #18765
                                                *Attorney for Plaintiff*