IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MICHAEL LEATHERS,                    )
                                     )
                    Plaintiff,       )       **CIVIL ACTION**
                                     )
v.                                   )       No.  08-1213
                                     )
RONALD LEATHERS, et al.,             )
                                     )
                    Defendants.      )
_____)

### MEMORANDUM AND ORDER

This matter is before the court on the following:

Cross-Claimant Internal Revenue Service's (IRS) Motion for Summary Judgment against Ronald Leathers (Doc. 135) and Memorandum in Support (Doc. 136);

Ronald Leathers' and James Holden's Response (Doc. 148) and Memorandum in Support (Doc. 149); and

IRS's Reply (Doc. 150).

## I. Background

Louise Leathers owned certain real properties in Haskell County, Kansas. During her lifetime, Louise transferred the surface rights in these properties to the Leathers Land Company, which was a partnership between Louise and her two sons, Michael and Ronald Leathers. Louise retained the mineral rights.

Louise died in 1991. Pursuant to her will – and subsequent litigation – the mineral interest in the Haskell County properties was distributed equally to Michael and Ronald, who each received an undivided one-half interest in the mineral estate.

By virtue of Louise's death, Michael and Ronald also each owned 50% of the Leathers Land Company. Subsequent litigation over a buy-out

provision established that Michael had the right to buy out Ronald's interest in the partnership. As a result, Ronald signed a quit claim deed in May 1998 transferring the Haskell County properties to Michael. The deed said nothing about reserving to Ronald his share of the mineral interest. But neither Michael nor Ronald intended or believed that the quit claim deed transferred Ronald's share of the mineral interest to Michael. They only intended it to transfer the surface interest.

This mistake contributed to a number of complications. There were several productive oil and gas wells on the properties, and some royalty payments that might otherwise have gone to Ronald were either sent to Michael or were placed in suspense. A divorce proceeding between Ronald and his former wife, Theresa, resulted in a decree awarding Theresa one-half of Ronald's share of the mineral interest. Additionally, the U.S. Internal Revenue Service (IRS) claimed tax liens on certain royalties due to income taxes allegedly owed by Ronald amounting to more than $900,000. Finally, Ronald purportedly conveyed "all right, title and interests ... related to 'mineral rights' and 'chose(s) of action'" pertaining to the mineral rights to the Dirt Cheap Mine Trust, which is allegedly a trust established to reacquire Ronald's mineral interest and royalty payments. All of the foregoing coalesced in the current litigation, where the parties asserted numerous claims and cross-claims against one another.

In a summary judgment ruling on May 13, 2010, Judge Wesley Brown granted equitable reformation of the quit claim deed based on the doctrine of mutual mistake. (Doc. 69). The court reformed the deed to reflect the intention of Ronald and Michael to reserve to Ronald his

one-half share of the mineral interest. The court further found that Theresa, pursuant to the divorce decree, was entitled to one-half of Ronald's interest in the mineral estate. Accordingly, the court declared that Michael owned a one-half interest, Ronald owned a one-fourth interest, and Theresa owned a one-fourth interest in the mineral estate of the Haskell County properties. Michael retained all surface rights to the properties. (Doc. 69 at 20-21).

Judge Brown also ruled on other claims. He granted judgment to Michael on Ronald's claim for breach of fiduciary duty. (Doc. 69 at 26). He found that Ronald (and/or James Holden, the trustee of the trust) might have a claim against Michael for unjust enrichment, which could result in a constructive trust on royalty payments, but that any such claim would not include interest. Moreover, any such claim would be limited by the fact that Michael did not learn until December of 2006 that he may have received payments belonging to Ronald, and by evidence from which a factfinder could conclude that Ronald acted with unclean hands. The court additionally rejected Ronald's motion for judgment on Theresa's claim and affirmed her right under the divorce decree to one-fourth of the mineral interest.

The case was reassigned in February of 2012 to the undersigned judge. In May 2012 this court ruled on a second round of dispositive motions. (Doc. 114). The court denied Theresa's motion for judgment on her unjust enrichment claim against Michael because of genuine issues about when Theresa (and Ronald) first learned of the title problem and what they did about it. The court granted summary judgment to Michael on Ronald and Holden's claim for conversion, finding the claim barred by the statute of limitations. The court also granted

-3-

judgment to Michael on Ronald and Holden's claim for fraud by silence. These rulings left at least two issues for trial: whether Michael was unjustly enriched, and whether the royalty payments received by Michael gave rise to a constructive trust in favor of Theresa and Ronald. (Doc. 114 at p. 13).

In a hearing with the parties on August 20, 2012, the court set a schedule for the oil and gas companies who pay royalties on the Haskell County properties to provide an accounting of the royalties. Those documents have since been filed. (Docs. 129-134). The court also set a briefing schedule on the IRS's motion for summary judgment against Ronald. After some delays, the IRS's motion is now ripe and the court is prepared to rule.

## II. IRS Motion for Summary Judgment (Doc. 135).

The IRS moves for summary judgment on its cross-claim against Ronald Leathers and for dismissal of a claim for attorney's fees by the attorney for the Dirt Cheap Mine Trust. The cross-claim seeks to reduce to judgment federal tax assessments against Ronald. (Doc. 74). The IRS contends it has met its burden of establishing the existence and amounts of assessments against Ronald between 1997 and 2005, and it argues Ronald has no admissible evidence to rebut the presumed validity of those assessments. It seeks a judgment in its favor and an order "that all sums found in the quiet title portion of this case to be payable to Ronald Leathers are subject to the Government's preexisting tax liens." (Doc. 135 at 1). It also contends Ronald and the trust are collaterally estopped by a related Fifth Circuit judgment from claiming a priority over the IRS's liens. Moreover, it argues that any claim for attorney's fees is either barred by

sovereign immunity or is contrary to federal statute.

Ronald Leathers' response brief asserts that the IRS failed to properly mail deficiency notices to his last known address as required by statute. (Doc. 149 at 7). Moreover, it contends the IRS's calculations were arbitrary and erroneous in numerous respects, and that a pattern of errors defeats any presumption of correctness that might otherwise attach to the assessments. Insofar as Ronald's failure to file returns and pay penalties is concerned, the response claims it is up to a jury to determine whether Ronald had the state of mind required to support penalties.

Finally, the Dirt Cheap Mine Trust and its attorney Joe Izen contend that under 26 U.S.C. § 6323(b)(8), Izen's contingent fee contract gives him a super-priority on any recovery by the trust over and above any IRS tax lien. Moreover, the trust and Ronald dispute the IRS's suggestion that the related Fifth Circuit case has any preclusive effect.

**III Facts**

The court previously ordered Ronald's summary response stricken for failure to comply with the federal and local rules and with the court's standing order. (Doc. 146 at 4). His more recent attempt (Doc. 149) fares little better. It does not refer to or address many of the IRS's factual allegations. This failure makes it impossible to tell with certainty which facts defendant seeks to controvert and which are uncontested. The memorandum also contains several conclusory allegations and blanket citations (e.g., citing to a declaration at pages "7-18"), apparently leaving it to the court to scour the record for evidence supporting defendant's position.

But the response's most glaring deficiency is that Ronald's declaration – which is cited as support throughout the response – is unsigned. And a December 17, 2012 affidavit of Joe Izen, attorney for Ronald and the Dirt Cheap trust, makes clear this was no accident. Izen states that he prepared the declaration and sent it to Ronald, but shortly thereafter Ronald ceased communicating with counsel and "the current whereabouts of ... Ronald Leathers [] is unknown to his counsel." (Doc. 149-34). Izen's affidavit is among the numerous exhibits attached to the summary judgment response, although the brief itself does not mention or otherwise discuss Ronald's failure to sign the declaration or his disappearance.[1]

This unsigned, unsworn declaration in the name of Ronald Leathers is not properly considered on summary judgment. See Fed. R. Civ. P. 56(c)(4); 28 U.S.C. § 1746 (requirements for unsworn declarations). See also Fed. R. Civ. P. 56, Adv. Comm. Notes, 2010 Amendments ("A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration ... subscribed in proper form as true under penalty of perjury to substitute for an

---

[1] The memoranda previously stricken by the court (Docs. 143, 144) similarly contained an unsigned declaration in the name of Ronald Leathers. (Doc. 144-24). Defendant's prior memoranda filed November 14, 2012 cited Ronald's declaration without disclosing to the court the fact of or the reason for Ronald's failure to sign.

Because of the deficiencies in Ronald's submissions, the court has given serious consideration to striking them and imposing sanctions. Because of the age of this case, the court has decided not to strike the submissions but rather to consider them for what they are worth. However, Texas and Kansas counsel are advised that the court will revisit the issue of sanctions at the conclusion of the case. Fed. R. Civ. P. 11. Ronald's Kansas counsel is specifically admonished that it is his responsibility to ensure that Texas counsel's submissions comply with the applicable rules. Finally, Ronald's Kansas counsel will be required to attend all hearings and trial proceedings and, if necessary, to conduct them as lead counsel.

affidavit."); <u>Howell v. New Mexico Dept. of Aging & Long-Term Services</u>, 398 Fed.Appx. 355, 359, 2010 WL 3965927 (10th Cir. 2010) (unsigned document "'was not within the range of evidence the district court should consider' on summary judgment").

With the foregoing constraints, the court finds the following facts to be uncontroverted for purposes of the summary judgment motion.

Defendant Ronald R. Leathers (hereinafter "Ronald") is a citizen of the State of Colorado, with his last known place of residence in Colorado Springs, Colorado. Ronald resided in Kansas for at least some of the years at issue in this suit. He also claims an interest in land located in Kansas.

A history of Ronald's interactions with the IRS is set forth in the declaration of IRS Revenue Officer Ginger Wray. (Wray Decl., Doc. 136-1).

The IRS assessed federal income taxes against Ronald for tax years 1997 through 2005 after Ronald failed to file any returns and then either failed to respond to IRS correspondence or recited constitutional arguments against the payment of federal income tax that the IRS considered legally frivolous. (Wray Decl. ¶4-5 and supporting exhibits). The IRS has certified that a search was conducted and no 1040 forms for Ronald were filed for the tax years 1997 to 2005.

Ronald's tax liabilities for 1997 to 2002 are based on assessments made by the "Automated Substitute for Return group" at an IRS Service Center. His liability for the 2003 to 2005 tax years was computed in examination by a revenue agent, who determined Ronald's

taxable income based upon the same kinds of records used by the IRS Service Center, including information obtained through IRS summonses directed at third parties who had paid Ronald income in the past. These payors included the mineral companies now holding royalties in suspense. (Wray Decl. ¶5).

The IRS determined Ronald's taxable income for the foregoing tax years by reviewing Information Reporting Program (IRP) transcripts. These are retrievable computer records maintained by the IRS that reflect data reported by third parties on various IRS forms, including W-2 Forms (employee wages), 1099 (non-employee compensation), and 1098 (home mortgage interest). IRP transcripts are obtained by running searches under the individual's social security number in the computer file system maintained by the IRS.

The IRS also prepared examination reports showing its calculation of Ronald's tax indebtedness for the tax years 1999 to 2005. (Wray Decl. ¶12, Exh. E).

As established by the Certified Forms 4340 appended to the Wray declaration, a duly authorized delegate of the Secretary of the Treasury has made assessments for individual income taxes, plus statutory penalties and interest accruing to the date of assessment, against Ronald for the nine tax years (1997 to 2005) in which he failed to file income tax returns. (Wray Decl. ¶¶7-8 and Exh. B).[2]

---

[2] Ronald's contention that the Wray declaration or the 4340 forms cannot be considered because these matters are not based on Wray's personal knowledge is rejected. See Pollinger v. I.R.S. Oversight Bd., 362 Fed.Appx. 5 (11th Cir. 2010) (certifying official not required to have personal knowledge of how taxes were assessed; taxpayer presented nothing to overcome the presumption of correctness of assessments in Form 4340); Hughes v. United States, 953 F.2d 531, 540 (9th Cir. 1992) (certified Form 4340 admissible as self-authenticating public

Since the date of these assessments, additional interest has accrued by law. As of September 21, 2012, the total amount due and owing on the assessments, including interest, was $1,561,117.06.

The IRS has been attempting to collect Ronald's unpaid taxes for over ten years. He has failed or refused to pay the assessments and has not filed returns for any of the relevant years. He has responded to some IRS notices, but in doing so has set forth arguments that the IRS reasonably considered to be frivolous. For example, in October 2000 Ronald sent a ten-page letter to the IRS which said he was "refusing for [entrapment] and computer fraud" the IRS's assessment. The letter contained page after page of bogus demands characteristic of "tax protesters," including a demand for "proof of your claim that you maintain a security interest, in or against my person/property to substantiate that you are a Holder, authorized to make a presentment" and "assurances as to your delegation of authority to operate in a Union State, in a municipal capacity," as well as a reminder that "I, Ronald R. Leathers, have previously declared and affirmed my status that I am a man unenfranchised nonresident alien, and not a 'person' described in 26 U.S.C. § 7343." In June of 2005 he sent the IRS a letter declaring that "I am not a U.S. citizen-federal subject and that I have no deficient tax 'accounts' with your principal." The letter complained about the federal Government's "deceitful and deceptive acts, e.g. failing to disclose the underlying and covert objectives, i.e. clothing me with the status of 'U.S. citizenship',

records).
    The court finds the contention especially disingenuous in view of Ronald's counsel's submission of an unsigned declaration of his client.

and making that status dominant over my natural born American (state) Citizenship." (Doc. 136-7, -8).

In March of 2008, Agent Wray received a letter from Joe Alfred Izen, Jr., stating that his office had been retained to represent Ronald Leathers, and demanding a collection due process hearing on behalf of Ronald relating to the tax years 2003 to 2005. Izen completed and included a Form 12153 (Request for a Collection Due Process or Equivalent Hearing). Izen signed the form and hand-wrote next to his signature, "Power of Attorney (Form 2848) Attorney" with his Texas Bar number. The form was not signed by Ronald. Izen did not otherwise complete or send a Form 2848 signed by Ronald.

Because the IRS had not received a Form 2848 authorizing Izen to represent Ronald before the IRS, Wray sent Ronald a letter explaining that such a form would have to be completed before Izen could represent Ronald and before she could process Izen's request for a due process hearing. Wray attempted to contact Izen by phone and left a request with his office to send the form. Her letter to Ronald stated that he had 20 days to reply. The IRS received no reply to the letter or in response to its message for Izen. (Doc. 136-11). Izen has offered no explanation for his failures to respond.

Wray sent another letter to Ronald on July 10, 2008. The letter again recounted the failure to submit a Form 2848 authorizing Izen to represent Ronald. It noted that although the time for the requested due process hearing had expired, Ronald was still eligible to appeal certain issues and that he could do so by signing a form himself or by having Izen submit one if a Form 2848 were included. (Doc. 136-12). No additional request was sent to the IRS.

-10-

This action originally began as a state court lawsuit to quiet title. It was filed by Michael Leathers in Haskell County, Kansas, in the 26th Judicial District of Kansas. In June of 2008, Michael amended his petition to add the United States as a party, alleging that its tax liens filed in Haskell County for Ronald's unpaid assessments gave it a potential interest in the mineral rights that were the subject of the action. The United States removed the action to this court in July 2008. It added a cross-claim in June 2010 seeking to reduce its tax assessments to judgment. (Doc. 74).

In February of 2007, co-defendant OXY, USA ("OXY") brought an interpleader action in U.S. District Court for the Southern District of Texas. The action named Michael, Ronald, James Holden, and the IRS, and it sought a determination of who was entitled to approximately $25,000 in royalty payments held by OXY. The district court determined that the IRS was entitled to the money. The Fifth Circuit Court of Appeals affirmed. The circuit opinion noted the district court had determined that Holden was a "fake trustee," that there was no substance to the trust, that Ronald was "the real ... non-taxpayer," and that the parties had acquiesced in those findings in the district court. OXY USA, Inc. v. Holden, 306 Fed.Appx. 69, 2009 WL 27477 (5th Cir. 2009); (Doc. 136-13).

**IV Summary Judgment Standard**

The rules governing summary judgment are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(a) directs the entry of summary judgment in favor of a party who "shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P.

56(a). A dispute is "genuine" if the evidence is such that a rational trier of fact could resolve the issue either way, and a fact is "material" if under the substantive law it is essential to the proper disposition of the claim. See <u>Adamson v. Multi Community Diversified Svcs., Inc</u>., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

**V Discussion**

The district courts of the United States have jurisdiction to issue orders and render judgments for the enforcement of the internal revenue laws. 26 U.S.C. § 7402(a).

The uncontroverted facts show that Ronald failed to file income tax returns for a nine-year period although he was required to do so by law. <u>See</u> 26 U.S.C. § 6012 (persons required to file returns).

When a taxpayer fails to make a timely return, the Secretary of the Treasury (i.e., the IRS) is authorized to execute a substitute return "from his own knowledge and from such information as he can obtained through testimony or otherwise." §6020(b)(1). Such a return "shall be prima facie good and sufficient for all legal purposes." §6020(b)(2). The IRS prepared substitute returns for Ronald using information including data reported by third parties. This information showed that Ronald received significant income in the form of oil and

-12-

gas royalty payments and from sales of real estate. For example, in 1997 he was paid royalties of almost $300,000 and he received over $200,000 on sales of real property. (Doc. 136-5).

The IRS is required to assess all income taxes imposed by law under methods provided by law or regulation. §§ 6201-6203. The IRS has produced Form 4340 Certifications of Assessments for Ronald Leathers for the tax years 1997 to 2005 (Doc. 136-3) showing the assessment of taxes, penalties and interest against Ronald. These forms are "are presumptive proof of a valid assessment." March v. I.R.S., 335 F.3d 1186, 1188 (10th Cir. 2003); Long v. United States, 972 F.2d 1174, 1181 (10th Cir. 1992) ("For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by §6203 and Treas.Reg. 301.6203-1).

The government generally establishes a prima facie case when it shows a timely assessment of the tax due, supported by a minimal evidentiary foundation. United States v. McMullin, 948 F.2d 1188, 1192 (10th Cir. 1991). Once the IRS produces substantive evidence demonstrating that the taxpayer received unreported income, a presumption of correctness attaches to the Commissioner's assessment. This presumption "will permit judgment in the Commissioner's favor unless the opposing party produces substantial evidence overcoming it." McMullin, 948 F.2d at 1192; Guthrie v. Sawyer, 970 F.3d 733, 737-38 (10th Cir. 1992) (Form 4340 certificates are "presumptive proof of a valid assessment" and if a taxpayer does not present evidence indicating to the contrary, "a district court may properly rely on the forms to conclude that valid assessments were made."). Ronald has

-13-

failed to come forward with any admissible evidence to contradict these assessments.

Notices of Deficiency. The law requires the IRS to give notice before it may assess or collect any tax deficiency. Armstrong v. C.I.R., 15 F.3d 970, 973 (10th Cir. 1994); 26 U.S.C. § 6213(a). A notice of deficiency is valid, even if it is not received by the taxpayer, if it is mailed to the taxpayer's last known address.

Ronald's brief challenges whether proper notices of deficiency were sent to his last known address. (Doc. 149 at 7-8). To the extent this argument is based upon factual assertions in Ronald's declaration, it is unsubstantiated by any admissible evidence. To the extent it claims a lack of any proof that deficiency notices were actually mailed by the IRS, the Form 4340 entries showing that statutory notices were sent are sufficient, absent any contrary evidence, to meet the Government's burden to show that notices were in fact sent by certified or registered mail. See e.g. United States v. Goodman, 2012 WL 3155824 (D. Colo., Aug. 12, 2012) ("The 'notice' entries on the Forms 4340 demonstrate that adequate notice and demand was made and carry a presumption of correctness.") [citations omitted]. The court also notes that the IRS reply brief includes copies of certified mail deficiency letters for the tax years 2001 to 2005. (Doc. 150). The IRS has met its burden of showing that deficiency notices were in fact mailed.

Ronald further contends the IRS failed to comply with the statutory requirement to send deficiency notices to his "last known address." "The term 'last known address' has been defined by case law to mean 'that address to which the IRS reasonably believes the

-14-

taxpayer wishes the notice sent.'" <u>Armstrong</u>, 15 F.3d at 973. The address on the taxpayer's most recent tax return is ordinarily deemed to be his last known address. The taxpayer may otherwise provide clear and concise notice of his current address to the IRS, such as by filing a subsequent tax return with a new address.

The record shows the IRS had two potential addresses for Ronald during the period in question: one on Lake Elbo Road in Manhattan, Kansas, and one on Vincent Drive in Colorado Springs. (Doc. 136-5 at 3-6). Ronald's complaint appears to be that notices were sent to his Kansas address (at least prior to 2001) when he wanted them sent to his Colorado address. (Doc. 149 at 7). The IRS had 1099's showing that payors made payments to Ronald at both of these addresses for the tax year 1997. More importantly – although the IRS does not mention this fact – Ronald used the Kansas address in filing his 1996 federal income tax return. (Doc. 149-28). Because that was his most recently-filed return, the IRS was entitled to send deficiency notices to the Kansas address absent clear and concise notice from Ronald that he wanted the mailings sent to a different address. The notices the IRS initially sent to Ronald's Kansas address were therefore not defective. And even accepting Ronald's contention that his October 2000 correspondence gave the IRS notice that he wanted future mailings sent to his Colorado address,[3] the record shows that the IRS in fact sent subsequent notices to his Colorado address. <u>See</u> Doc. 136-1. The IRS has cited copies of deficiency letters pertaining to tax years

_____

[3] Ronald's letter made no such request; it merely listed his Colorado address. (Doc. 136-7). Ronald additionally cites an undated letter he allegedly sent to the IRS (Doc. 149-30 at 1), but no foundation for that letter has been established.

2001 to 2005 that were sent to Ronald at his Colorado address. (Doc. 150, Attachments).

The record as a whole, including the certified Form 4340's with a summary of the IRS's records and actions, provides the required "minimal evidentiary foundation" necessary to justify a presumption that proper notices and assessments were made. The court cannot consider Ronald's inadmissible declaration as somehow creating a genuine issue of fact on that score.

Claim of arbitrary assessment. Ronald next claims the IRS calculation of assessments was arbitrary and erroneous. Once the IRS shows an evidentiary foundation for the assessment, as it has done here, the taxpayer may overcome the presumption of correctness that attaches to it by citing proof that the assessment is arbitrary and erroneous. See United States v. Gosnell, 961 F.2d 1518, 1520 (10th Cir. 1992); Jones v. C.I.R., 903 F.2d 1301, 1304 (10th Cir. 1990) (citing United States v. Janis, 428 U.S. 433, 442 (1976)); Doyal v. Comm'r, 616 F.2d 1191, 1192 (10th Cir. 1980) (the only exception to the general rule concerning the burden of proof is when the taxpayer shows the IRS's deficiency determination is arbitrary and excessive).

Among other things, Ronald claims the IRS arbitrarily assessed self-employment taxes on royalty income, failed to deduct the cost basis of property in determining capital gain, improperly imposed penalties for failing to pay estimated taxes, improperly failed to apply a carry-forward loss from a prior return, and improperly assessed short-term instead of long-term capital gain rates. (Doc. 149 at 9-11). All of these claimed errors, however, depend in material part upon allegations in Ronald's inadmissible declaration, which the

court cannot consider as evidence. Ronald has failed to cite any admissible evidence to raise a genuine issue concerning the foregoing assessments.

Ronald also challenges the IRS's assessment of penalties for failure to file returns and failure to pay taxes due. He argues that whether a taxpayer had the state of mind to support such penalties is necessarily a genuine issue of fact precluding summary judgment. (Doc. 149 at 12). But as the IRS points out, these civil penalties are required by law for failure to file a required return or to timely pay the required tax after notice and demand "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." (26 U.S.C. § 6651(a)). Ronald offers no admissible evidence of reasonable cause. (Even if the court considered his inadmissible declaration and its bare-bones explanation that he "had a good-faith belief that he was not a person required to file under the Internal Revenue Code" it would not be sufficient to create a genuine issue.) "Reasonable cause" requires the taxpayer to show that he exercised ordinary business care and prudence but was unable to file the return within the prescribed time. United States v. Boyle, 469 U.S. 241, 246 (1985). No evidence is cited which could possibly satisfy that standard. Ronald's prior correspondence to the IRS claiming not to owe any federal taxes because he was "a state Citizen, a natural born American Citizen" (Doc. 136-8) is more indicative of willful neglect than reasonable cause. See Yoder v. Commissioner, T.C. Memo. 1990-116, 1990 WL 20137 (U.S. Tax Ct. 1990) (taxpayer's reliance on misguided interpretations of the Constitution does not constitute reasonable grounds for failure to file return). In sum, the record before the

court shows no genuine issue of fact with respect to assessment of these penalties.

The court concludes that Ronald has cited evidence to show a genuine issue of fact with respect to the assessment for the tax year 1998. He has cited a Form 668(Z) "Certificate of Release of Federal Tax Lien" (Doc. 149-26), dated August 26, 2012, which purports to certify that Ronald "has satisfied the taxes listed ... and all statutory additions" for that year. The certificate lists the entire sum ($96,619.39) claimed by the IRS to be owing for tax year 1998. (See Doc. 136-3 at 21). Although Ronald has arguably failed to establish a proper foundation for this document (See Izen affidavit, Doc. 149-2 at 13), the IRS reply does not address the genuineness or the significance of this certificate. In view of this document, the court will not grant summary judgment unless the IRS first addresses the certificate and shows that Ronald's assessment for 1998 has not been satisfied. Because it has not made that showing, its motion for summary judgment is denied with respect to tax year 1998. Otherwise, for the reasons stated above, the IRS motion to reduce to judgment the assessments for tax years 1997 and 1999-2005 will be granted.

Determination regarding IRS liens. In addition to seeking a judgment for the tax assessments, the IRS motion for summary judgment requests an order "that all sums found in the quiet title portion of this case to be payable to Ronald Leathers are subject to the Government's preexisting tax liens" (Doc. 135 at 1). Its memorandum in support of the motion seems to go a step farther, asking for an order "that all royalty sums [Ronald] is found to be entitled to in this quiet title action be paid directly to the Government." (Doc. 136

-18-

at 10).

It is not entirely clear here what the government is seeking. If it only seeks a declaration that it has a lien on any property in which Ronald retains an interest, that unremarkable request can be granted. Such a lien rises by operation of law as of the time of the assessment, 26 U.S.C. §§ 6321, 6322, and applies to any property in which Ronald retains an interest. Cf. Drye v. United States, 528 U.S. 49, 57 (1999) (language in §§6321 and 6331 shows that Congress meant to reach every interest in property that a taxpayer might have). Moreover, Ronald's purported transfer of rights to the trust does not affect the lien. The government's lien continues to attach to Ronald's mineral interest and the royalties therefrom, regardless of whether the royalties are in the hands of the energy companies or in the hands of the trust. See United States v. Bess, 357 U.S. 51, 57 (1958) ("The transfer of the property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere [with the burden].'") But if the government is seeking an order declaring that its liens have priority over any interest claimed by the Dirt Cheap Mine Trust, that is a different question.

In apparent recognition that its request for an order to turnover suspended royalties might involve a determination of the validity and priority of any interest claimed by the Dirt Cheap Mine Trust, the government's memorandum argues that any claim by Ronald[4]

_____

[4] The government discusses "Ronald's claims" and the collateral estoppel effect of the judgment on Ronald without really addressing the fact that the trust is – at least nominally – a party separate from Ronald. Its motion jumps back and forth between suggesting on the

that the trust holds a superior interest is foreclosed by the collateral estoppel effect of the judgment reviewed in <u>OXY USA, Inc.</u> <u>v. Holden</u>, 306 Fed.Appx. 69, 2009 WL 27477 (5th Cir. 2009). (Doc. 136 at 10-11). It notes that the district court in that related case found "there is no substance to the trust," that Ronald "is the real ... non-taxpayer," and that Holden was a "fake trustee." These declarations were made by the Texas district court judge at a conference between the parties and, according to the Fifth Circuit opinion, they were not disputed and were "acquiesced" in by Holden and Ronald's counsel. (Doc. 136-13 at 3).

A prior judgment in federal court may preclude a subsequent action under principles of collateral estoppel. <u>See</u> <u>Murdock v. Ute</u> <u>Indian Tribe</u>, 975 F.2d 683, 687 (10th Cir. 1992), <u>cert. den.</u>, 507 U.S. 1042 (1993). But the doctrine attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment. <u>B-S Steel of Kansas, Inc. v. Texas Industries, Inc.</u>, 439 F.3d 653, 662 (10th Cir. 2006) [citations omitted]. It will preclude reconsideration of an issue decided in a prior action where: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. <u>B-S Steel</u>, 439

one hand that it "seeks to preclude Ronald Leathers only," while at other times asserting that "[t]he Trust's assertion that it has priority ... has been resolved and need not be litigated again." (Doc. 136 at 11-12).

F.3d at 662.

The court cannot conclude that the findings of the Texas district court represent an adjudication on the merits of the validity of this trust. "Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion." United States v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002). There is no indication here that the parties pleaded, briefed or presented evidence to the Texas district court concerning the validity of the trust. The court's conclusions about the trust were apparently based on a concession or stipulation by the defendants. As the Restatement notes:

> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

Restatement(Second) of Judgments § 27, comment e. The prior action involved a dispute in Texas over approximately $25,000 in royalties held by one producer in that state. For undisclosed reasons, Holden and the trust conceded the facts supporting the IRS's claim to that fund. Absent a showing that the validity of the trust was actually

litigated, the Texas district court's findings extend only to resolution of the claim before it and do not preclude the defendants from now claiming the trust is valid or that it has some interest in the royalties at issue here. Cf. United States v. International Bldg. Co., 345 U.S. 502, 505 (1953) ("As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration.").

The IRS goes on to make confusing representations about the scope of its motion. Its reply brief seems to say any dispute about priority of the trust's claimed interest is irrelevant at this point because the IRS cross-claim "seeks only to reduce to judgment its tax assessments against [Ronald] Leathers – not to foreclose on any existing tax liens" and, as such, the matter does not turn on whether the IRS liens "are enforceable against Leathers, the 'Dirt Cheap Mine Trust,' or any other party." (Doc. 150 at 7).

As noted above, the court finds the IRS has a lien on all royalty proceeds in which Ronald retains an interest. Otherwise, the court rejects the IRS's contention that collateral estoppel precludes the trust from claiming an interest in the royalties. (The court expresses no opinion here on the validity of the trust or the purported assignment by Ronald. Those issues have not been presented here or briefed).[5] Moreover, as the IRS is apparently not seeking to foreclose its tax liens, any dispute about the priority of its liens

_____

[5] Cf Holman v. United States, 505 F.3d 1060, 1065 (10th Cir. 2007) (tax lien applies to property held by third party if it is determined that the third party is holding the property as a nominee of the delinquent taxpayer). The court notes that even assuming the validity of this particular trust, Ronald apparently retained a 45% beneficial interest in the trust proceeds. (Doc. 149-18).

versus any interest claimed by the trust is not before the court.

Claim for attorney's fees. At a pretrial conference on August 24, 2012, Joe Izen – attorney for James Holden and Ronald Leathers - asserted that he has a claim for attorney's fees. When the government challenged whether Izen had properly raised such a claim, the court directed Izen to brief his position by the end of August 2012 (Doc. 128 at 22), with the government agreeing it would address the merits and forego any objection that Izen did not properly plead the claim. (Doc. 128 at 24). Izen failed to brief the issue by the end of August, however, prompting the government to renew a procedural objection in its summary judgment motion and to now argue that Izen "should be deemed to have waived the opportunity to assert this claim entirely." (Doc. 150 at 9). Notwithstanding these procedural issues, both sides have addressed the merits of the claim in their summary judgment briefs. The government contends any lien claim by Izen is premature absent a judgment for Ronald (Doc. 150 at 9), and also that Izen has not established the requirements for an attorney's lien under §6323(b)(8).

The court is not persuaded that Izen's failure to meet the briefing deadline warrants what would effectively be a sanction of dismissal of his claim. Cf. Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992) (factors relevant to sanction).

With respect to the merits, Izen claims an entitlement to attorney's fees by virtue of a contingency-fee contract "with Cross-Defendants." (Doc. 149 at 5). He cites 26 U.S.C. § 6323(b)(8) as allowing an award and argues that the statute gives his claim a super-priority over any of the government's alleged tax liens. (Doc. 149 at

12). As the government points out, however, any charging lien Izen could conceivably claim first requires a judgment or settlement fund for the benefit of his client.[6] There is no such judgment or settlement at this point. Moreover, Izen has cited no proof that he has a lien or contract enforceable against any judgment for Ronald. He cites a contingency-fee contract that names James Holden, the trustee of the Dirt Cheap Mine Trust, as his client, and in which the trust promises to pay him 45% of any amount collected on the trust's behalf. (Doc. 149-18). If it is determined in this action that royalties are payable to Ronald rather than to the trust, Izen's agreement with the trust would provide no basis for a lien or claim against those funds.

Under the circumstances, the court will grant the United States' summary judgment motion with respect to the claim by Izen for attorney's fees under 26 U.S.C. § 6328(b)(8). This ruling is without prejudice to reassertion of the claim, however, if the basis for it is subsequently established.

## VI Conclusion

The IRS's Motion for Summary Judgment (Doc. 135) is granted in part and denied in part.

The court determines that Ronald Leathers is indebted to the United States for federal income tax liabilities in the amount of

---

[6] Any claim is further limited to "reasonable compensation for obtaining such judgment or procuring such settlement." 26 U.S.C. § 6323(b)(8).

$1,464,497.67,[7] plus interest and statutory additions from the dates of assessment (set forth in Doc. 136-1 at Pp. 3-5) until the judgment and the costs of this action are paid.

The court further determines that all sums found to be payable to Ronald Leathers in this action are subject to the tax liens of the United States as of the date of its respective assessments against Ronald Leathers for tax years 1997 and 1999-2005.

Attorney Joe Alfred Izen's claim for attorney fees under authority of 26 U.S.C. § 6323(b)(8) is denied without prejudice.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F.Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed five pages. No reply shall be filed.

_____

[7] This figure represents the total amount due as of September 21, 2012 ($1,561,117.06) (Doc. 136-1) less the balance of $96,619.39 allegedly owing for tax year 1998 (Doc. 136-2 at 21). As noted previously, the IRS has not shown it is entitled to summary judgment on the assessment pertaining to 1998.

IT IS SO ORDERED.

Dated this 3rd day of May 2013, at Wichita, Kansas.

                                        s/Monti Belot

                                        Monti L. Belot

                                        UNITED STATES DISTRICT JUDGE