IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
MICHAEL LEATHERS,              )
                               )
                 Plaintiff,    )   CIVIL ACTION
                               )
v.                             )   No.  08-1213-MLB
                               )
RONALD LEATHERS, et al.,       )
                               )
                 Defendants.   )
                               )
```

**MEMORANDUM AND ORDER**

This protracted litigation came before the court on September 17, 2015, for a bench trial on the remaining claims. Appearing at the hearing were Martin Shoemaker, on behalf of the United States, and Joe Izen, attorney for the Dirt Cheap Mine Trust and Ronald Leathers. Defendant James Holden was also present. The record shows that Ronald Leathers was given notice of the trial but did not appear at the hearing. The parties presented arguments and decided to submit the matter without calling any witnesses, relying instead on deposition testimony, exhibits, and the uncontroverted facts found by the court in prior summary judgment orders.

In October of 2014, the court began a bench trial to resolve the following three issues: 1) a claim for unjust enrichment by Ronald Leathers and/or James Holden against Michael Leathers; 2) a claim by the Internal Revenue Service against Ronald for unpaid taxes for the year 1998; and 3) the validity of the Dirt Cheap Mine Trust and of Ronald's purported transfer to the trust. In the course of that hearing, the court was notified that Ronald had filed for bankruptcy in the District of Colorado. Doc. 223. As a result the court

terminated the October 2014 hearing. The bankruptcy case was subsequently dismissed, Doc. 224, and the bench trial was rescheduled.

On September 2, 2015, the court approved a stipulated order of partial judgment resolving the unjust enrichment claim by Holden against Michael Leathers. Doc. 230. This resolves the unjust enrichment claim in its entirety.[1]

Accordingly, the remaining issues to be decided are: 1) the IRS's claim against Ronald for unpaid taxes for the year 1998; 2) the validity of the Dirt Cheap Mine Trust and Ronald's October 2006 transfers to it (or, as stated by the United States, whether Ronald's transfer of his mineral interest rights to the trust were fraudulent as to the IRS, making the property subject to the IRS's federal tax liens for the years 2003-2005); and 3) a motion for attorney's fees under 26 U.S.C. § 6323(b)(8) by attorney Joe Izen.

**1. 1998 Taxes - Ronald Leathers.**

In a prior summary judgment ruling, the court determined there was a question of fact remaining on the IRS's cross-claim that Ronald Leathers owed unpaid taxes for the tax year 1998. Doc. 151 at 18. The issue resulted from an IRS tax lien release dated August 26, 2012, filed in Haskell County, Kansas, stating that Ronald Leathers had satisfied his tax obligations for that year.

The IRS has now produced a certificate declaring that it has

---

[1] Ronald Leathers has waived or is estopped from challenging Holden's settlement of the unjust enrichment claim with Michael Leathers, based on Ronald's representation that Holden was his assignee on this claim. See Doc. 98 at 1-2. See also Restatement (Third) of Trusts 5 (2003) (the obligor of a chose in action that has been assigned by the obligee discharges the liability by paying the assignee).

revoked the lien release and reinstated its tax lien. Govt. Exh. 506. The document asserts that a notice of federal tax lien was mistakenly listed as a certificate releasing the lien. The IRS has also produced a certified Form 4340 showing that Ronald Leathers was assessed a total of $96,659.39 in taxes for 1998 which remains unpaid (Govt. Exh. 501) and that he filed no income tax return for that year (Govt. Exh. 502). The IRS also cites transcripts showing how Ronald's tax obligation was calculated. (Govt. Exh. 503). Finally, the IRS has provided a certified statement showing that as of September 17, 2015, and including interest and penalties, Ronald Leathers now owes a total of $192,205.24 for tax year 1998. Govt. Exh. 514.

The record before the court shows by a preponderance of evidence that the IRS mistakenly filed the tax lien release relating to Ronald's 1998 taxes, and that Ronald's tax liability for the year 1998 remains unsatisfied. As of September 17, 2015, the amount due and owing for tax year 1998, including interest and penalties, is $192,205.24. The United States is entitled to judgment in that amount against Ronald Leathers on its claim pertaining to unpaid taxes for 1998.

**2. Transfers to the Dirt Cheap Mine Trust**.

The relevant background facts were discussed in prior summary judgment orders and are set forth here only as necessary to explain the court's ruling.

Michael Leathers and Ronald Leathers inherited certain property from their mother, including mineral interests in several sections of land in Haskell County, Kansas. The brothers engaged in litigation over surface rights to the property and Michael obtained a judgment

allowing him to buy out Ronald's interest in the surface. As a result of that judgment, Ronald executed a quit claim deed on May 11, 1998, disclaiming his interest in the property in favor of Michael. The quit claim deed, however, failed to reserve Ronald's interest in the minerals, although neither brother intended the deed to convey Ronald's mineral interest.

Ronald and his wife Theresa got divorced in 2002. Michael testified in the course of that proceeding that Ronald owned ½ of the mineral interests in the Haskell County property. The divorce decree awarded Theresa half of Ronald's share of the minerals, or a ¼ interest in the minerals.

Several productive wells were completed on the Haskell County properties. Michael communicated to one or more producers that despite the quit claim deed, Ronald owned a ½ share of the minerals (and subsequently a ¼ share, with Theresa owing a ¼ share). Due to the quit claim deed, however, Ronald and Theresa did not receive their full share of royalties. Anadarko, for example, paid Michael his share of the royalties on one of the wells but placed Ronald's share in suspense. Some royalties that should have been paid to Ronald and Theresa were instead paid to Michael. Ronald knew by early 2002 that there was a problem with the title and with the payment of royalties because of the quit claim deed. The record shows clearly that Ronald was dilatory and failed to take reasonable steps to clear up the title and the royalty problem despite having notice of it for several years.

Over three years later, in November 2005, Ronald wrote Michael a letter stating that he had recently discovered the problem concerning the quit claim deed and asserting that Michael had been

-4-

receiving royalties that should have been paid to Ronald. Michael suggested that he could execute a quit claim deed as to Ronald's share to clear up the title, but that his attorney would want a release for any royalties previously paid to Michael in error. There were no further discussions between the brothers.

Ronald, meanwhile, did not file any personal income tax returns or pay any income taxes beginning in the tax year 1997 and continuing through 2005. The IRS made assessments against Ronald and asserted tax liens for taxes due, plus penalties and interest. By the fall of 2006, facing significant tax liabilities, Ronald met with James Holden, whom Ronald understood was "a legal strategist" who "stands for people, and help[s] them with issues at the IRS." Ronald Depo. at 117-18. Ronald testified that Holden is "an American" but is "not a U.S. citizen." Holden talked to Ronald about forming a trust, the purpose of which -- at least initially according to Ronald -- was "to deal with the [IRS] notices of lien and notices of levy," Ronald Depo. at 120, although Ronald later testified that the purpose was simply to get back the title to the minerals. Id. at 121. Ronald had told Holden about the mineral dispute with Michael and how Michael ended up with the title.

Jimmy Holden describes himself as a consultant on litigation. He previously had a tax accounting business "finding loopholes for people." He is not a lawyer and has no college degree. At his deposition, Holden testified that he created the trust at issue as a "simple contract trust, non-statutory, purely discretionary, because it has to be, otherwise you have attachable things." Holden Depo. at 20. The trust was set up "to protect future income, and for his [Ronald's] own benefit and that of his children."

-5-

Holden drafted the Dirt Cheap Mine Trust Agreement, dated October 6, 2006. It stated among other things that Holden was the trustee; that the trust may issue up to 100 "Certificates of Participation (units) as this Trustee may determine" in exchange for contributions to the trust corpus; that all distributions from the trust were purely discretionary with the trustee; that the purpose of the trust was to "provide a retirement vehicle for Ronald Roy Leathers"; that Ronald intends to convey "a certain chose in action" to the trust in exchange for 45 units of participation; and that the certificates issued to Ronald were "non-assignable, non-assessable and non-transferable" except that Ronald may bequeath them to his children. The trust document was signed only by Holden. On the same date, Ronald Leathers signed an "Irrevocable Assignment of Chose(s) in Action" purporting to irrevocably convey to the trust "all right, title and interests to related to [sic] 'mineral rights' and 'chose(s) of action' flowing from said 'mineral rights' of which I might have, known and or unknown." Def. Exh. 201, 202. These documents were signed in Colorado.

Holden testified that he would get 10% of any recovery by the trust on the chose in action (i.e., on a suit to recover Ronald's mineral interest and royalties from Michael) although such compensation was not provided for in the trust agreement.

On October 23, 2006 Holden executed an "Appointment of Attorney" stating that attorney Joe Izen was appointed to represent the financial interests of the trust in exchange for 45 units of participation in the trust. On October 27, 2006, Holden signed an attorney consultation and fee agreement retaining Izen to represent

-6-

the Dirt Cheap Mine Trust on all claims arising out of the actions of Mike Leathers (and his wife) and Theresa Leathers. The agreement called for a 45% contingency fee on any recovery. Def. Exh. 203, 204.

In his deposition, Holden testified:

> The whole purpose of the trust was one thing, and that was to provide some kind of protection regarding the IRS for future payments, et cetera. It's very complex, as I'm sure you know, but once an assignment is done, then it changes IRS's reach, and that was the purpose. The purpose of the trust was not to sue Mike Leathers. He [Ronald] could have done that directly with Joe [Izen]. That wasn't the purpose. The purpose was to afford some protection for any recovery that did occur for Mr. Ron Leathers and his three children.

Holden Depo. at 29.

The Dirt Cheap Mine Trust does not have a bank account, does not file tax returns, and is not filed of record anywhere.

Under federal law, a transfer made by a debtor is considered fraudulent as to a debt to the United States if the debtor makes the transfer with "actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A). The statute provides a list of factors to consider in judging intent. § 3304(b)(2). Kansas law similarly provides that transfers made with intent to hinder, delay or defraud creditors are considered fraudulent as to present and future creditors. K.S.A. § 33-204(a)(1).

The court finds that Ronald's transfer of the chose-in-action involving his mineral rights to the trust (as well as the transfer of the mineral rights, to the extent he purported to transfer them) constituted a fraudulent transfer with respect to his tax debt to the IRS. The circumstances surrounding the transfer and the deposition

testimony of Ronald and Holden show that Ronald's intent in making the transfer was to hinder the IRS from collecting Ronald's tax debt. As the testimony of Holden in particular makes clear, the whole purpose of the trust was to attempt to remove from the reach of the IRS the mineral interest and any royalties to which Ronald was or would be entitled. As Holden himself pointed out, if Ronald's purpose had been merely to sue Michael to obtain a share of the mineral rights and royalties, he could have simply retained Izen to pursue the claim on a contingency fee basis and wouldn't have needed any sort of trust or transfer of property. The court finds that Ronald's transfer of the chose in action and/or mineral interest was fraudulent as to the IRS debt.

The appropriate remedy under these circumstances is for the court to declare Ronald's transfer to the trust to be null and void. 28 U.S.C. § 3306(a); K.S.A. § 33-207(a). The court makes that declaration, and further finds that the federal tax liens arising from Ronald's unpaid taxes for the years 1997 through 2005 attach to the royalties now held in suspense in Ronald's name or for his benefit by the defendant energy companies. Moreover, the federal tax liens are senior to any interest in the property claimed by Ronald Leathers, the Dirt Cheap Mine Trust, or James Holden.

Finally, based on the evidence showing the current tax obligation of Ronald Leathers for the years 1997 to 2005 (Govt. Exh. 514), the court concludes that a final judgment should be entered in favor of the United States and against Ronald Leathers in the amount of $1,545,779.36.

**3. <u>Izen Motion for Attorney's Fees (Doc. 197)</u>**.

Section 6323(b)(8) of Title 26 provides in part that an IRS lien is not valid against certain attorneys' liens. With some exceptions, an IRS lien is not valid against an attorney who under local law holds a lien enforceable against a judgment or settlement, to the extent of the attorney's reasonable compensation for procuring the judgment or settlement. By awarding such a "superpriority" to attorneys whose efforts have created an asset from which the government can recover delinquent taxes, the statue encourages attorneys to bring suits that may ultimately benefit the United States Treasury. <u>See</u> <u>Spencer v. Kirkpatrick</u>, 883 F. Supp. 588, 590 (W.D. Okla. 1995).

Section 7-108 of the Kansas Statutes provides that, in any action in which an attorney is employed, the attorney has a lien for compensation upon money in the attorney's hands due to the client and money due to the client and in the hands of the adverse party. K.S.A. § 7-108. Izen cites a 45% contingency fee contract he had with the Dirt Cheap Mine Trust in support of his claim of a lien, and also asserts that Ronald Leathers "adopted the written contingent fee agreement I had with James Holden and Dirt Cheap Mine Trust in his deposition testimony...." Doc. 198-1 at 8. The latter claim is unsupportable. Any "oral adoption" by Ronald Leathers at his deposition does not meet the Kansas requirement that "[a] contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer ...." Kansas Rule of Professional Responsibility 1.5. As to Ronald, Izen has established no binding contingent fee arrangement, although it is clear that Ronald

-9-

authorized Izen to act as his attorney in this matter.

The United States makes several arguments against any lien in Izen's favor against the suspended royalties held by defendant energy companies, including that Izen's efforts did not result in the court's finding that Ronald has an interest in the suspended royalties; that the court's determination of Ronald owning a ¼ interest in the minerals was not due to Izen's efforts; that Izen improperly seeks compensation for work done in other cases; and that most of Izen's work went toward attempts to defeat the IRS's claims against Ronald. See Doc. 201 at 3-5.

The United States further asserts: "Since the Court's quiet title ruling in May 2010, Izen's efforts have been on attempting to show that the federal tax liens do not attach to any of the property at issue in this litigation, either because Ronald owes no taxes or because the Dirt Cheap Mine Trust has a superior claim to the property." Doc. 201 at 3. The record supports this assertion. The vast majority of work cited by Mr. Izen was not undertaken to obtain a judgment for Ronald from which his tax obligation could be satisfied. As the United States points out, Michael's resistance to reformation of the quit claim deed and to Ronald's ownership of the royalties held in suspense in his name was fleeting and perfunctory. Michael conceded the point on summary judgment and the court reformed the deed in May 2010 to reflect Ronald's ¼ share of the minerals.[2] Rather, the vast

---

[2] In June 2008, Michael filed suit against Ronald and Holden in Haskell County, Kansas, seeking to quiet title to the minerals. The complaint sought a declaration that Michael was the 100% owner of the minerals. The case was removed to this court in July 2008 after the United States was made a party. In pleadings filed in early 2009 and thereafter, Michael conceded that Ronald and Theresa each owned a ¼

majority of Mr. Izen's efforts have centered on attempts to <u>defeat</u> the claims of the IRS by asserting that the Dirt Cheap Mine Trust owned the royalties and/or minerals, or that Ronald did not actually owe the taxes claimed by the IRS. Those types of efforts are not compensable under § 6323(b)(8). Nor are Mr. Izen's unsuccessful attempts to defeat Theresa Leathers' legitimate interest in the minerals and royalties, or his unsuccessful assertion of conversion, fraud, and constructive trust claims. Efforts representing the interests of James Holden and the Dirt Cheap Mine Trust -- a trust whose purpose was to hinder the IRS's collection of Ronald's tax debt -- are also not compensable under § 6323(b)(8). Likewise, his unsuccessful efforts in "the Austin Case" -- a Texas case that was dismissed for lack of jurisdiction -- and the OXY case -- where Izen unsuccessfully opposed the IRS's claim to royalties deposited in federal court in Houston[3] -- were not attorney actions "procuring [a] judgment" benefitting the Treasury. <u>Cf</u>. <u>W.T. Mechanical Inc. v. Heatmasters, Inc.</u>, 2011 WL 4345474, *3 (N.D. Ill., Sept. 15, 2011) (§ 6323(b)(8) encourages attorneys to obtain judgments that enable their clients to pay their tax liabilities; it does not permit attorneys to tack on fees for other

---

share of the minerals and were entitled to an accounting of royalties, although he asserted that they were barred by the statute of limitations, equitable defenses, or other reasons from recovering past royalty payments from him.

[3] The OXY suit involved a little over $25,000 in royalties that OXY paid into federal court in Houston, Texas. Michael disclaimed any interest in the funds. Relying on Ronald's purported transfer to the Dirt Cheap Mine Trust, Izen argued that the trust rather than the IRS was entitled to the funds. In a ruling affirmed by the Fifth Circuit, the district court held that the IRS was entitled to the funds on account of Ronald's tax debt. <u>OXY USA, Inc. v. Holden</u>, 306 Fed. Appx. 69, 2009 WL 27477 (5th Cir., Jan. 5, 2009).

matters).

The United States also asserts: "Izen has made no efforts on behalf of Ronald that have resulted in funds available for IRS collection." Doc. 201 at 4. That is not completely true. Izen's efforts helped to some degree to obtain reformation of the quit claim deed and to establish Ronald's right to a corresponding share of the royalties, and thus did help produce a judgment that made funds available for IRS collection. But as the court already noted, Michael barely contested those matters and they were resolved on summary judgment years ago. Since then, Izen's efforts have largely focused on attempts to defeat the IRS's claims to those same royalties. The latter efforts are not compensable under § 6323(b)(8).

The burden is on the attorney in these circumstances to show that his services were reasonably incurred for obtaining a judgment. This includes an obligation to segregate the fees mentioned above that do not qualify for superpriority status under under § 6323(b)(8). The billing records submitted by Mr. Izen largely fail to do so. The court has reviewed the record and notes the following. For the period from commencement of the Kansas cases over the mineral rights until the court's ruling on summary judgment in May 2010, Mr. Izen has presented itemized bills of approximately $86,375, representing approximately 288 hours at $300 per hour. Doc. 198-3. The court determines that the reasonable compensation for Izen's efforts in procuring the judgment establishing Ronald's ¼ ownership of the mineral interest and in the corresponding royalties amounts to 40% of that figure, or 115 hours at $300 per hour, for a total of $34,500. This reduced figure excludes Izen's efforts that did not serve to procure the judgment in Ronald's

favor (and in fact hindered it), including the unsuccessful efforts regarding the interests of the trust, pursuing unsuccessful claims against Michael, and challenging the interest of Theresa Leathers. Beyond that amount, the record does not show that the fees listed were incurred for a purpose that would give them superpriority status under § 6323(b)(8). In making this finding the court has considered all of the relevant factors related to reasonableness. See <u>Kansas Rules of Profession Conduct (KRPC)</u> 1.5(a).

The court has also reviewed the $32,780.54 in expenses claimed by Izen in connection with this case. Doc. 198-3 at 12-13. The list includes $21,590.66 in payments or retainers to local counsel Jack Shultz. These "expenses" in reality appear to be additional legal fees. Izen has failed to show that such payments are entitled to priority under § 6323(b)(8) as reasonable attorney's fees incurred in procuring a judgment from which the IRS can collect Ronald's taxes. The list also includes a $6,000 payment "to Jimmy Holden for Ron Leathers to procure income tax preparation services." None of the foregoing have been shown to be reasonable expenses incurred in connection with Izen's procuring a judgment in favor of Ronald. With the foregoing items (totaling $27,590.66) excluded, the court finds reasonable the remaining expenses of $5,189.88.

In sum, the court finds that Izen has a lien for professional services in the amount of $39,689.88, and that his lien is entitled to priority over the IRS liens from Ronald's tax debt against the royalties currently held in suspense for Ronald by the defendant energy companies.

**Conclusion**.

The court finds that as of September 17, 2015, the amount due and owing by Ronald Leathers for tax year 1998, including interest and penalties, is $192,205.24. The United States is entitled to judgment in that amount against Ronald Leathers on its claim pertaining to unpaid taxes for 1998.

Based on the current tax obligation of Ronald Leathers for the years 1997 to 2005 (Govt. Exh. 514), the United States is entitled to final judgment in its favor against Ronald Leathers in the amount of $1,545,779.36.

The court finds that Ronald Leather's purported transfer of a chose-in-action involving his mineral rights in Haskell County, Kansas, to the Dirt Cheap Mine Trust (as well as a transfer of the mineral rights, to the extent he purported to transfer them) constituted a fraudulent transfer with respect to Ronald's tax debt to the IRS. Accordingly, the transfer is null and void as it concerns the IRS and the collection of Ronald's tax debt.

With respect to royalties currently held in suspense in the name of Ronald Leathers by the defendant energy companies, the federal tax liens established by the IRS totaling $1,545,779.36 are senior to any interest in that property claimed by Ronald Leathers, the Dirt Cheap Mine Trust, or James Holden.

The motion for an award of attorney's fees under 26 U.S.C. § 6323(b)(8) by attorney Joe Izen (Doc. 197) is granted in part. The court finds that Izen has a lien for attorney's fees and expenses in the amount of $39,689.88 against the royalties currently held in suspense in the name of Ronald Leathers by the defendant energy

companies. This lien is superior to the lien of the IRS in the same property.

    IT IS SO ORDERED.

    Dated this 25th day of September 2015, at Wichita, Kansas.

                                    s/Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE